EILEEN R. RIDLEY, CA Bar No. 151735
eridley@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507

JOHN J. ATALLAH, CA Bar No. 294116
jatallah@foley.com
COLE K. WALDHAUSER, CA Bar No. 345928
cwaldhauser@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

Attorneys for Defendant Mindvalley, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE COURTHOUSE**

KIMBERLY THORNTON, Individually and on Behalf of Others Similarly Situated,

Plaintiff,

vs.

MINDVALLEY, INC.,

Defendant.

Case No. 5:24-cv-00593-BLF

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*[Request for Judicial Notice, Declarations of Janja Živko and John J. Atallah, and [Proposed] Order Filed Concurrently Herewith]*

Date: August 15, 2024
Time: 9:00 a.m.
Ctrm: 3

Complaint Filed: January 31, 2024
Corrected Complaint Filed: February 6, 2024

District Judge: Hon. Beth Labson Freeman

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 15, 2024 at 9:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of Judge Beth Labson Freeman at the United States District Court for the Northern District of California, Courtroom 3, 5th Floor at the San Jose Courthouse located at 280 South 1st Street, San Jose, CA 95113, Defendant Mindvalley, Inc. ("Mindvalley") will and hereby does move this Court for an order dismissing, with prejudice, the Corrected Complaint ("Complaint") filed by Plaintiff Kimberly Thornton ("Plaintiff"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and striking the class allegations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, on the following grounds:

1. Plaintiff fails to state a claim for relief under the Video Privacy Protection Act, 18 U.S.C. § 2710, ("VPPA");

2. Plaintiff lacks Article III standing to pursue any of her asserted claims because she is not a "consumer" within the meaning of the VPPA and has not suffered any form of cognizable harm;

3. Plaintiff lacks Article III standing to pursue her asserted claims on behalf of the putative class, as defined;

4. Plaintiff's entire class claim is barred by the binding Class Action Waiver to which Plaintiff previously agreed, and her putative class definition necessarily includes persons who lack standing; and

5. Plaintiff's claim for equitable relief under the VPPA is barred because an adequate remedy at law exists, and because she fails to plead with sufficient particularity the form of injunctive relief sought.

Mindvalley's Motion is further based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the Declarations of John J. Atallah and Janja Živko filed in support, the Proposed Order, all filings and pleadings in this action, and on such other and further matters as the Court may consider.

///

///

///

///

///

DATED: April 8, 2024

**FOLEY & LARDNER LLP**
Eileen R. Ridley
John J. Atallah
Cole K. Waldhauser

*/s/ John J. Atallah*
JOHN J. ATALLAH
Attorneys for Defendant Mindvalley, Inc.

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARDS ..... 4

A. MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(F). ..... 4

B. DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM. ..... 6

C. DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF STANDING. ..... 7

IV. ARGUMENT ..... 8

A. PLAINTIFF'S CLASS CLAIMS MUST BE STRICKEN UNDER RULE 12(F). ..... 8

1. Plaintiff is Bound by the Class Waiver in Defendant's Terms & Conditions. ..... 8

a. Mindvalley Provided Sufficiently Conspicuous Notice of the Class Waiver ..... 9

2. The Class Definition Should Be Stricken as Improperly Including Persons Who Lack Standing Under the VPPA. ..... 11

B. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE VPPA PURSUANT TO RULE 12(B)(6). ..... 12

1. Plaintiff Has Not Plausibly Alleged That She Is a "Consumer" Under the VPPA. ..... 12

2. Plaintiff Fails to Plausibly Allege the Disclosure of Her Personal Data. ..... 14

3. Plaintiff Consented to the Disclosure of Her Personal Identifiable Information. ..... 15

C. PLAINTIFF LACKS ARTICLE III STANDING. ..... 16

1. Plaintiff Lacks Standing to Pursue Her Individual Claims. ..... 16

2. Plaintiff Lacks Standing to Sue on Behalf of All Mindvalley Accountholders. ..... 16

D. PLAINTIFF CANNOT RECOVER IN EQUITY. ..... 18

E. PLAINTIFF HAS NOT ALLEGED CONDUCT ENTITLING HER TO PUNITIVE DAMAGES. ..... 19

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*10E, LLC v. Travelers Indem. Co. of Connecticut*,
500 F. Supp. 3d 1070 (C.D. Cal. 2020) ..... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 6

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ..... 4

*Capps v. JPMorgan Chase Bank, N.A.*,
No. 2:22-cv-00806-DAD-JDP, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) ..... 10

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) ..... 16

*Clark v. LG Elecs. U.S.A., Inc.*,
No. 13-CV-485 JM JMA, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ..... 5, 6

*Cousin v. Sharp Healthcare*,
No. 22-CV-2040-MMA (DDL), 2023 WL 4484441 (S.D. Cal. July 12, 2023) ..... 13, 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ..... 7

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ..... 17

*Doe I v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) ..... 6

*Doe v. Amgen, Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ..... 13

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) ..... 12, 13, 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
528 U.S. 167 (2000) ..... 7

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..... 5

*Hooper v. Jerry Ins. Agency, LLC*,
No. 22-CV-04232-JST, 2023 WL 3992130 (N.D. Cal. June 1, 2023) ..... 10

*Hovsepian v. Apple, Inc.*,
No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ..... 6

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..... 7

*IntegrityMessageBoards.com v. Facebook, Inc.*,
No. 18-CV-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ..... 18

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ..... 5, 11

*Karim v. Best Buy Co.*,
No. 22-CV-04909-JST, 2023 WL 3801909 (N.D. Cal. June 2, 2023) ..... 10

*Khoros LLC v. Lenovo (United States), Inc.*,
No. 3:20-CV-03399-WHO, 2020 WL 12655516, at *1 (N.D. Cal. Oct. 5, 2020) ..... 15

*Kinkade v. Trojan Express LLC*,
No. SACV 08-1362 AG (ANx), 2009 WL 799390 (C.D. Cal. Mar. 23, 2009) ..... 19

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ..... 11

*Lejbm v. Transnat'l Foods, Inc.*,
No. 17-CV-1317-CAB-MDD, 2018 WL 1258256 (S.D. Cal. Mar. 12, 2018) ..... 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..... 7

*Manning v. Bos. Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ..... 5

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ..... 18

*Mort v. United States*,
86 F.3d 890 (9th Cir. 1996) ..... 18

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..... 10

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..... 18

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ..... 5

*Prizler v. Charter Commc'ns, LLC*,
No. 3:18-CV-1724-L-MSB, 2019 WL 2269974 (S.D. Cal. May 28, 2019) ........ 16

*Quezada v. California*,
No. 1:20-cv-00959-DAD-SAB, 2021 WL 2417119 (E.D. Cal. June 14, 2021) ........ 19

*Roberts v. Wyndham Int'l, Inc.*,
No. 12-CV-5083-PSG, 2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) ........ 5, 6

*Rodriguez v. JP Boden Servs. Inc.*,
No. 23-CV-00534-L-VET, 2024 WL 559228 (S.D. Cal. Feb. 12, 2024) ........ 16

*Route v. Mead Johnson Nutrition Co.*,
No. CV 12-7350-GW JEMX, 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ........ 5

*Sanders v. Apple, Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ........ 4, 8, 12, 17

*Schroeder v. United States*,
569 F.3d 956 (9th Cir. 2009) ........ 18

*Sellers v. Bleacher Rep., Inc.*,
No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) ........ 11

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 7

*Spreewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 6

*Stubbs v. McDonald's Corp.*,
224 F.R.D. 668 (D. Kan. 2004) ........ 4

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
No. C-13-1803 EMC, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014) ........ 6

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021) ........ 7

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........ 7

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ........ 5

*Yeager v. Corrs. Corp. of Am.*,
No. 1:12-cv-00162 AWI JLT, 2012 WL 1067209 (E.D. Cal. Mar. 28, 2012) ........ 19

**State Cases**

*B.D. v. Blizzard Entm't, Inc.*,
76 Cal. App. 5th 931 (2022) .......... 10, 11

*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*,
176 Cal. App. 4th 697 (2009) .......... 11

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 9, 11

**Federal Statutes**

18 U.S.C. § 2710 .......... 1

18 U.S.C. § 2710(a)(1) .......... 12

18 U.S.C. § 2710(a)(3) .......... 16

18 U.S.C. § 2710(b)(2)(B)(i) .......... 15

18 U.S.C. § 2710(c)(1) .......... 16

**State Statutes**

Cal. Civ. Code § 3294 .......... 19

**Federal Rules**

Fed. R. Civ. P. 8(a)(2) .......... 6, 12

Fed. R. Civ. P. 12(b)(1) .......... 7

Fed. R. Civ. P. 12(b)(6) .......... 6

Fed. R. Civ. P. 12(f) .......... 5, 8

Fed. R. Civ. P. 23 .......... 5

Fed. R. Civ. P. 23(c)(1)(A) .......... 5

Fed. R. Civ. P. 23(d)(1)(D) .......... 5, 6

Fed. R. Evid. 106 .......... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Mindvalley, Inc. ("Mindvalley") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint filed by Plaintiff Kimberly Thornton ("Plaintiff") and to Strike the Complaint's Class Allegations.[1]

## I. INTRODUCTION

This putative class action brought under the Video Privacy Protection Act, 18 U.S.C. § 2710, ("VPPA") seeks relief for the alleged disclosure of protected data through the website tracking tool, Meta Pixel. Plaintiff claims that Mindvalley wielded the Meta Pixel to track and disclose her personally identifiable information ("PII") without her consent, in violation of the VPPA. These allegations are plagued with ambiguity and insufficient detail. In some cases, they are roundly contradicted by the judicially noticeable evidence of Plaintiff's consent. In all cases, they fail to state a claim under the VPPA.

Plaintiff is barred from bringing her claim as a matter of law because she does not have standing to maintain this private right of action. Nor can she do so on behalf of the putative class members, who lack standing in their own right. Plaintiff's class allegations are also eclipsed by the binding class waiver to which she previously assented, and must accordingly be stricken. Plaintiff's allegations further invite dismissal for a failure to plausibly allege core elements of her claim. For example, Plaintiff claims to be a "consumer" under the statute without alleging facts to support that she paid Mindvalley or subscribed to its services. She claims that Mindvalley disclosed her protected information using the Meta Pixel, but does not actually allege which of Mindvalley's webpages she visited or what of her protected data the Meta Pixel tracked on those specific webpages. Moreover, Plaintiff cannot plausibly allege a lack of consent to Mindvalley's data privacy practices in the face of the open privacy disclosures and consent forms on Mindvalley's website.

For all of the above reasons, and as set forth more fully below, Mindvalley respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice, and/or strike her class claims.

///

///

[1] Plaintiff filed her Complaint on January 31, 2024 (Dkt. 1) but later filed a "corrected" Complaint on February 6, 2024 (Dkt. 7) to address non-substantive formatting issues. All references to the "Complaint" in this Motion are to the February 6, 2024 corrected version.

## II. RELEVANT FACTUAL BACKGROUND

Defendant Mindvalley is a private, global company and personal transformation learning platform that offers online and application-based video courses in self-growth, skill mastery, self-care, motivation, and mind and body. Users can browse Mindvalley programs through its website or downloadable application on the Google Play or Apple App Stores. Select programs are available at no cost, while others are accessible on an *á la carte* basis or through a paid membership. Central to Plaintiff's dispute is Mindvalley's use of the Meta Pixel, a common segment of website code that Plaintiff alleges Mindvalley used to "track and disclose" her video viewing history. (Compl. ¶ 13.)

The Complaint describes the Meta Pixel as a "web beacon . . . configured to capture a substantial amount of information by default." (*Id.* ¶¶ 36, 50.) It explains that the Meta Pixel is ordinarily "embedded in a website as a first-party cookie" and collects "Pixel-specific Data," allowing Meta to "link data to a particular Meta account with a user ID" known as a Meta ID or Facebook ID. (*Id.* ¶¶ 46, 52–53.) The Complaint sets forth some of the Meta Pixel's capabilities, describing how website developers "can [] choose to track actions taken on their website with the Meta Pixel, called an 'Event'" and "can [] create 'Custom Audiences' based on Events and can target ads on Meta's platforms." (*Id.* ¶¶ 58–59.)

The Complaint then alleges that Mindvalley integrated the Meta Pixel "throughout its website" to track users' video viewing history and then "knowingly disclosed [that information] to Meta and other third parties." (*Id.* ¶¶ 62, 65–66, 69.) Plaintiff, a Georgia resident, claims to have purchased a Mindvalley subscription and alleges that Mindvalley disclosed her personally identifiable information without her consent. (*Id.* ¶¶ 15, 89–92.) Outside of a broad reference to her "video viewing history," Plaintiff does not explain what, if any, "personally identifiable information" Mindvalley disclosed. Plaintiff does not specify when or how she first subscribed to Mindvalley, to which paid membership she subscribed, the duration or cost of her paid subscription, or other details of her enrollment process or the nature of her membership. Nor does she make any distinction in her Complaint between Mindvalley's default domain (mindvalley.com) and its members-only domain (home.mindvalley.com)—each of the images in the Complaint contains the latter (*see id.* ¶¶ 34, 64–65), but the class definition references the former (*see id.* ¶ 71). Plaintiff also does not specify whether she watched videos on a web browser or through Mindvalley's phone application. (*See id.* ¶ 15 (Plaintiff "watched videos on Mindvalley").) There are

similarly no allegations regarding how she navigated Mindvalley's website, what pages she visited, which of those pages used the Meta Pixel, what of her protected data the Meta Pixel tracked, and whether the Meta Pixel was active during all operative time periods of Plaintiff's alleged membership.

The Complaint makes a point to reference Mindvalley's terms and displays cropped images of Mindvalley webpages without introducing the *content* of those terms or providing the full picture of those webpages or the user experience. (*See id.* ¶¶ 34, 64–65, 79.) The Complaint also walks through the general steps taken to create a Mindvalley account and to subscribe to Mindvalley's paid offerings but meticulously omits certain of the prompts and disclosures shown to users along the way. (*See id.* ¶¶ 34, 64–65, 79.) The *complete* webpages, user prompts, and terms on which Plaintiff relies in her Complaint—shown to users in various stages of their account and membership registrations—include a class action waiver ("Class Waiver"), a data privacy disclosure and consent provision ("Privacy Policy"), and a cookie consent banner ("Cookie Banner").[2] Where Plaintiff alleges she did not know about the disclosure of her viewing conduct, the Privacy Policy and Cookie Banner show otherwise. For example, a version of the Privacy Policy in effect during the relevant timeframe stated the following:

> We also may use a standard feature found in browser software called a "cookie" to enhance your experience with the Site, ***and web beacons***, to access cookies, count users who visit the Site, or open HTML-formatted email messages.
>
> ***We use the information we collect from you while you are using the Site*** in a variety of ways, including using the information to customize features; advertising that appears on the Site; and, making other offers available to you via email, direct mail or otherwise. ***We also may provide your information to third parties***, such as service providers, contractors and third-party publishers and ***advertisers*** for a variety of purposes.

(Atallah Decl. ¶ 3, Ex. A at 1 (emphasis added).) A version of the Cookie Banner in effect during the relevant timeframe stated the following:

> This website uses cookies to enhance user experience and to analyze performance and traffic on our website. We also ***share information about your use of our site with our social media, advertising and analytics partners***.

[2] The referenced documents are attached as exhibits, alongside other supporting materials, to the Declaration of John J. Atallah in Support of Motion to Dismiss ("Atallah Decl."), which is also the subject of Mindvalley's Request for Judicial Notice filed concurrently herewith.

(*Id.* ¶ 6, Ex. D (emphasis added).) Further, the express terms of the Privacy Policy in effect at all relevant times directly contradict Plaintiff's allegations regarding lack of consent. The version of the Privacy Policy in effect before June 23, 2023 stated:

> Unless you inform us in accordance with the process described below, we reserve the right to use, and ***to disclose to third parties, all of the information collected from and about you while you are using the Site in any way and for any purpose***, such as to enable us or a third party to provide you with information about products and services.

(*Id.* 3, Ex. A at 1 (emphasis added).) Similarly, the current version reads, in pertinent part:

> **Right to opt-out.** You have the right to opt out of the sale of your personal information. We do not sell personal information. However, the service providers we partner with (for example, our advertising partners) may use technology on the Service that "sells" personal information as defined by the CCPA. If you wish to opt out of the use of your personal information for interest-based advertising purposes and these potential sales as defined under CCPA law, you may do so by following the instructions below. Please note that any opt out is specific to the browser you use. You may need to opt out on every browser that you use.

(*Id.* 4, Ex. B at 4 (emphasis in original).)

Finally, despite consenting to a Class Waiver, Plaintiff attempts to assert claims on behalf of a broadly defined putative class of persons who "have a Mindvalley account" and "requested or viewed videos on mindvalley.com or through the 'Mindvalley' application." (*Id.* ¶ 71.) Of note, all persons who "have a Mindvalley account" encompasses all Mindvalley *accountholders*—without specifying paid or unpaid subscription or membership status—and includes individuals who either do not have a Facebook account or are not signed into a Facebook account.

## III. <u>LEGAL STANDARDS</u>

### A. Motion to Strike Class Allegations Under Rule 12(f).

Federal courts are empowered to use motions to strike to "test the viability of a class at the earliest pleading stage of the litigation." *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (collecting cases); *see also Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (granting motion to strike warranty and fraud-based claims); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166–67 (N.D. Cal. 2008).

The Court need not wait until a motion for class certification is submitted before deciding whether

a matter can be maintained as a class action, particularly in cases where it is "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . ." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also, e.g.*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (Rule 12(f) motions help to avoid the unnecessary "expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . .") (quotation omitted); *Kamm v. California City Dev. Co.*, 509 F.2d 205, 212–13 (9th Cir. 1975) (affirming order striking allegations at the pleading stage); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("where the matter is sufficiently obvious from the pleadings, a court may strike class allegations" without first permitting class discovery); *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at *16 (S.D. Cal. Oct. 29, 2013).

Rule 12(f) of Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc.*, 618 F.3d at 973 (internal quotation marks omitted). The Supreme Court has recognized that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *General Telephone Co. of Southwest*, 457 U.S. at 160. Under the authority of Federal Rule of Civil Procedure 12(f), "a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained." *Clark*, 2013 WL 5816410, at *16; *see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations.") (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

Similarly, Rule 23 of Federal Rules of Civil Procedure authorizes the Court to eliminate defective class allegations at the outset of the action. *See* Fed. R. Civ. P. 23(c)(1)(A) (the court should determine "at any early practicable time" whether to "certify the action as a class action"); Fed. R. Civ. P. 23(d)(1)(D) (the court may order that pleadings be amended to remove class allegations); *see also Roberts v. Wyndham*

*Int'l, Inc.*, No. 12-CV-5083-PSG, 2012 WL 6001459, at *3 (N.D. Cal. Nov. 30, 2012) ("Pursuant to Rule 23(d)(1)(D), the court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained.") (citing *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009)). Courts have also dismissed nationwide class claims under Rule 12(b)(6) or 12(b)(1). *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014); *Lejbm v. Transnat'l Foods, Inc.*, No. 17-CV-1317-CAB-MDD, 2018 WL 1258256, at *4 (S.D. Cal. Mar. 12, 2018). Under each of the foregoing rules, the analysis is the same, and turns upon whether the Complaint demonstrates, as a matter of law, that the proposed class is not viable. *See Clark*, 2013 WL 5816410, at *16; *Roberts*, 2012 WL 6001459, at *3; *Tasion Communications, Inc.*, 2014 WL 1048710, at *3.

**B. Dismissal Under Rule 12(b)(6) for Failure to State a Claim.**

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Carpenter. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility requirement" requires the allegations in the complaint to "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must plead "factual content that allows the court" to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, in evaluating a motion to dismiss for failure to state a claim for relief that is plausible on its face, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*; *see also Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th

Cir. 2009) (courts "need not accept Plaintiff's unwarranted conclusion in reviewing a motion to dismiss"); *Iqbal*, 556 U.S. at 678-679 (modern pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Similarly, the Court is not required to accept as true allegations that are so plainly contradicted by reality as to render them implausible. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court need not accept as true "allegations that contradict matters properly subject to judicial notice."); *10E, LLC v. Travelers Indem. Co. of Connecticut*, 500 F. Supp. 3d 1070, 1074 (C.D. Cal. 2020) (dismissing complaint where the Plaintiff's claims were "implausible and contradicted in the [complaint] itself.").

**C. Dismissal Under Rule 12(b)(1) for Lack of Standing.**

"To have Article III standing to sue in federal court, Plaintiff must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). Article III limits the jurisdiction of federal courts to "cases" and "controversies" for which a plaintiff has standing to pursue his or her claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must first have suffered an "injury in fact" which is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant . . . ." *Id.* (citations and alterations omitted). Finally, it must be "likely" that the "injury will be redressed by a favorable decision." *Id.* (citations omitted). The plaintiff has the burden to establish these elements. *Id.* Further, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)). As the Supreme Court observed, a "Plaintiff's injury in fact" must be "concrete—that is, real, and not abstract." *TransUnion* 141 S. Ct. at 2204 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "Every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* at 2208 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)).

///

///

## IV. ARGUMENT

### A. Plaintiff's Class Claims Must Be Stricken Under Rule 12(f).

#### 1. Plaintiff is Bound by the Class Waiver in Defendant's Terms & Conditions.

Through her alleged engagement with Mindvalley, Plaintiff agreed to the company's Terms & Conditions, which included waiver of her ability to bring claims on a class basis. At the time Plaintiff allegedly first engaged with Mindvalley, the following language appeared in Mindvalley's Terms & Conditions:

> **Class Action Waiver.** You acknowledge and agree that You may only resolve disputes with us on an individual basis and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed. The arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, consolidated action or private attorney general action) unless all relevant parties specifically agree to do so following initiation of the arbitration.

(Atallah Decl. ¶ 5, Ex. C at 15.)

Because courts may properly determine at the Rule 12 stage that a class action cannot be maintained on the facts alleged, Mindvalley moves to strike Plaintiff's class allegations under Rule 12(f) on the grounds that they are barred by the applicable terms of service to which Plaintiff agreed. *Sanders*, 672 F. Supp. 2d at 990.

Plaintiff alleges that she was a paying Mindvalley subscriber. (Compl. ¶¶ 15, 89.) Mindvalley disputes this assertion in light of the judicially noticeable fact that Plaintiff has never had a paid account with Mindvalley. (*See* Declaration of Janja Živko ("Živko Decl.") ¶¶ 5–7.) As set forth in greater detail below, Plaintiff's claims should be dismissed by virtue of the fact that she was never, in fact, a paying subscriber on the Mindvalley platform. But even if the Court takes Plaintiff's allegations—thin and unsupported as they may be—at face value, Plaintiff's claim nevertheless fails because it is barred by the Class Waiver. For the sake of argument, the following analysis therefore assumes the truth of Plaintiff's allegations that she paid for a Mindvalley membership within the two years preceding the filing of this action.

Mindvalley's Terms & Conditions were presented to Plaintiff when she allegedly enrolled in

Mindvalley's service.[3] Immediately beneath the "Complete My Order" button on Mindvalley's Checkout Page reads the message "By placing your order, you agree to Mindvalley's privacy policy and terms of use." (Atallah Decl. ¶ 7, Ex. E.) The policy and terms are each underlined and hyperlinked for users to readily click and read before completing their order. (*Id.*) By clicking the "terms of use" link, users are directed to the operative version of Mindvalley's Terms & Conditions, which directs users to read the terms carefully before using Mindvalley's website and states that the use of the website constitutes an acknowledgment and acceptance of the terms. The terms include in large, bold font the heading "**Class Action Waiver**" and the corresponding class waiver language excerpted above.

Plaintiff assented to the Class Waiver on three separate occasions: (1) when she allegedly began using Mindvalley's website; (2) when she contends she originally created a Mindvalley account (which affirmatively requires a user's agreement to the same terms of service and privacy policy); and (3) when she allegedly entered her billing information and clicked "Complete My Order" for the purchase of a Mindvalley membership. (*See* Atallah Decl. ¶¶ 5, 7, Exs. C, E.) Plaintiff therefore had ample notice of the Class Waiver and is bound by its terms. Moreover, as explained below, the provision was sufficiently conspicuous and is thus enforceable, rendering this action unfit for class treatment and dismissible as a matter of law.

**a. Mindvalley Provided Sufficiently Conspicuous Notice of the Class Waiver.**

Mindvalley provided sufficiently conspicuous notice of the Class Waiver so as to bind Plaintiff under *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) and its progeny. According to *Sellers*, the provider of an internet contract must present its contractual terms "to the consumer in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking on a button." *Id.* at 461. The line of federal cases following *Sellers* makes clear that notice is sufficient where the checkout page contains disclosures above or below the call to action stating, as they have here, that the consumer accepts and agrees to the terms. (*See* Atallah Decl. ¶¶ 7-8, Exs. E-F) ("By placing your order,

---

[3] Plaintiff does not state when she allegedly subscribed to Mindvalley's services. Mindvalley accordingly assumes for the purposes of this Motion that, if she did in fact subscribe to Mindvalley's paid offerings, she did so during the relevant limitations period (after January 31, 2022) and before she alleges to have canceled her subscription (October 2023). During this approximately 22-month period, Mindvalley's Checkout Page contained the disclosures reflected in Exhibit E and described in this Motion.

you agree to Mindvalley's privacy policy and terms of use." / "By signing up, you agree to our terms of services and privacy policy."); *see also, e.g.*, *Karim v. Best Buy Co.*, No. 22-CV-04909-JST, 2023 WL 3801909, at *5 (N.D. Cal. June 2, 2023); *Hooper v. Jerry Ins. Agency, LLC*, No. 22-CV-04232-JST, 2023 WL 3992130, at *4-5 (N.D. Cal. June 1, 2023); *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-00806-DAD-JDP, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023).

Perhaps most analogous is the Ninth Circuit's recent decision in *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023), where the Court found a website's terms sufficiently conspicuous because, as here, they were: (i) distinguished in bright blue from the surrounding text, (ii) located directly adjacent to the action button, and (iii) the underlying transaction required a full registration process before the transaction would proceed. Like the agreement in *Oberstein*, Mindvalley's Class Waiver is a sign-in wrap agreement, meaning it includes a textual notice indicating that the user will be bound by the terms, though it does not affirmatively require the consumer to review those terms or to separately manifest their assent to those terms. "Instead, the user is purportedly bound by clicking *some other* button that they would otherwise need to click to continue with their transaction or their use of the website[.]" *B.D. v. Blizzard Entm't, Inc.*, 76 Cal. App. 5th 931, 946 (2022) (emphasis in original). Thus, "the consumer's assent is largely passive, and the existence of a contract turns on whether a reasonably prudent offeree would be on inquiry notice of the terms at issue." *Id.* (cleaned up).

Here, Mindvalley's agreement provides sufficiently conspicuous notice of its Class Waiver to consumers, including Plaintiff. It requires an affirmative click by consumers like Plaintiff signing up for an ongoing account. (*See* Atallah Decl. ¶ 8, Ex. F.) It is thus "reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship governed by the terms and conditions." *B.D.*, 76 Cal. App. 5th at 951 (finding "no trouble concluding" that the defendant's agreement provided sufficiently conspicuous notice that a user who clicked a "continue" button at the bottom of a pop-up would be bound by its terms) (cleaned up). The notice in *B.D.* was also a sign-in wrap agreement and included an underlined hyperlink to the defendant's dispute resolution policy just as Mindvalley does for its Terms & Conditions. *Id.* at 952. The *B.D.* court found that this made the terms "easily available" to consumers and that the "clear and unequivocal reference to the extrinsic document and the contemporaneous availability of its terms shows that, at the time of

contracting, the parties consented to those terms." *Id.* at 953 (citing *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 714 (2009)). In distinguishing from *Sellers*, which found notice insufficient because it required users to "ferret out hyperlinks to terms and conditions," *B.D.* noted that defendant's policy was only "one click away" as opposed to the two clicks in *Sellers*. *Id.* at 953.

As in *B.D.*, Mindvalley's notice was not "extremely small print, lacking contrast, or outside the area where the consumer's attention would necessarily be focused." *Id.* (cleaned up). To the contrary, it was immediately below the webpage's call to action, was set off by underlined text, and provided the unmistakable warning to consumers that "[b]y placing your order, you agree to Mindvalley's privacy policy and terms of use." (*See* Atallah Decl. ¶ 7, Ex. E.) From this notice, users could make one click to read Mindvalley's Terms & Conditions, which boldly displayed the heading "**Class Action Waiver**" with the applicable policy. Mindvalley is aware of only one case applying California law to analyze the application of a class waiver to a VPPA class action. In *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *7 (N.D. Cal. July 28, 2023), the court declined to strike class allegations on the basis of a class waiver because the website at issue failed to put users on notice of the terms of use containing the waiver. Critically, the *Bleacher* court distinguished from *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) because, unlike in *Ticketmaster*, the notice in dispute was "buried at the bottom of the page and did not prevent the user from accessing the site" and "Plaintiff was not required to affirmatively acknowledge the agreement in any way." *Bleacher Rep., Inc.*, 2023 WL 4850180, at *7. In making this distinction, the court acknowledged that the notice in *Ticketmaster*—like here—was "sufficient to put users on notice" because it "was placed in close proximity to a button the user had to click on to sign in or buy tickets." *Id.*

The notice of class waiver is sufficiently conspicuous and thereby enforceable. As such, Mindvalley's Class Waiver forecloses Plaintiff's class claims.

### 2. The Class Definition Should Be Stricken as Improperly Including Persons Who Lack Standing Under the VPPA.

Class definitions that are plainly not ascertainable or otherwise deficient may be stricken on the pleadings. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 207 (9th Cir. 1975) (striking class allegations because state action with respect to the same controversy had already commenced and relief

had been obtained such that the alleged class action would not meet the superiority requirement). This includes where, as here, the class definition necessarily includes those lacking standing to pursue claims under the claims alleged. *Sanders*, 672 F.Supp.2d at 990–91 (N.D. Cal. 2009) (striking class allegations because class was not ascertainable in a fraud claim where class definition included people who lacked standing).

For the reasons set forth below in Section C. 2., the proposed class members lack standing to pursue claims under the VPPA. The Court should thus exercise its discretion under Rule 12(f) to strike the nationwide class allegations, or, in the alternative, the class definition as alleged in Plaintiff's Complaint.

**B. The Complaint Fails to State a Claim Under the VPPA Pursuant to Rule 12(b)(6).**

The elements of Plaintiff's VPPA claim are negated by the very contents of the Complaint and the judicially noticeable facts. Plaintiff cannot plausibly allege that she is a "consumer" under the VPPA or that Mindvalley disclosed her personal data. Nor can she plausibly allege lack of consent in light of the Privacy Policy and the various disclosures she had to have read and agreements to which she assented by allegedly having an account/membership. Dismissal is appropriate on these grounds alone.

**1. Plaintiff Has Not Plausibly Alleged That She Is a "Consumer" Under the VPPA.**

Plaintiff's allegations are devoid of the factual support required to support a claim for relief under Rule 8(a)(2) of the Federal Rules of Civil Procedure. In particular, she has not alleged with sufficient detail facts to support the assertion that she is a "consumer" under the VPPA. Under some statutes, the term "consumer" is defined to include practically every member of the general public. By contrast, the VPPA defines a "consumer" more narrowly to include only "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff is not a renter or purchaser of goods or services from Mindvalley, and being a subscriber requires some sort of "ongoing commitment or relationship between the user[ ]and the entity." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015). "[A] person who downloads and uses a free mobile application on his smartphone to view freely available content, without more, is not a 'subscriber' . . . under the VPPA." *Id.* at 1252 (holding that plaintiff was not a subscriber where he did not provide personal information to

defendant but merely downloaded and watched videos on an application that collected his viewing data).

Here, Plaintiff makes the conclusory statement that she "subscribed to Mindvalley," "create[ed] a Mindvalley account," and "paid for her subscription." (Compl. ¶¶ 15, 89.) Plaintiff fails to specify the nature of her paid membership, including: how she enrolled, whether her subscription was annual or monthly, how she viewed videos, and the dates of her membership. This is not enough to put Mindvalley on notice of the facts and issues central to its defenses. Indeed, since its receipt of Plaintiff's Complaint, Mindvalley has been unable to identify the account associated with Plaintiff's name and alleged facts in order to confirm or deny the allegations in her Complaint. (Živko Decl. ¶¶ 5–7.) Moreover, none of the users that Mindvalley *has* identified under Plaintiff's name are or ever were paid subscribers. (Živko Decl. ¶ 5.) Plaintiff's threadbare allegations, without any factual support, therefore fall short of basic notice pleading under federal procedural rules.

Without the paid membership she alleges, Plaintiff is left only with the "subscriber" prong under the VPPA's "consumer" definition. But Plaintiff cannot plausibly allege this either under the Eleventh Circuit's analysis in *Ellis*. Plaintiff concludes that she "subscribed" to Mindvalley but has not alleged that she supplied Mindvalley with *any* of the personal information required to satisfy this definition. She alleges that the hypothetical Mindvalley user is "required to fill out a form with their first and last name, their email, zip code, and state," among other information, but she never alleges that she herself submitted this information or took these steps to enroll in any Mindvalley service. (*See* Compl. ¶¶ 23–35.) Without connecting the story of the hypothetical user with her own allegations—more specifically, where Mindvalley cannot locate any account that conforms to Plaintiff's allegations in the complaint—Plaintiff fails to plausibly allege that she is a "consumer" entitled to relief under the VPPA.

This is the same sort of "generic" pleading "utterly devoid of factual enhancement" rejected in recent Meta Pixel cases in this Circuit. *See Doe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) ("Plaintiff's allegations . . . [are] generic and devoid of factual support. In fact, her grievances regarding the Meta Pixel are not based on particularized occurrences but are based '[o]n information and belief' rather than any factual support. Such allegations must still include facts upon which [Plaintiff's] beliefs are founded"); *Cousin v. Sharp Healthcare*, No. 22-CV-2040-MMA (DDL), 2023 WL 4484441, at *4 (S.D. Cal. July 12, 2023) ("Plaintiffs vaguely then conclude that they

entered 'sensitive personal and health information' on Defendant's appointment scheduling page when they scheduled medical appointments online. But again, this allegation is utterly devoid of factual enhancement"). Absent the factual support Plaintiff's allegations lack, she is merely someone claiming to have watched videos on a website or application that collected unspecified aspects of her viewing data. This is not enough to support a VPPA cause of action.

**2. Plaintiff Fails to Plausibly Allege the Disclosure of Her Personal Data.**

Just as she fails to connect the dots of her "consumer" allegations, Plaintiff also fails to allege *what* the Meta Pixel was tracking on the pages she allegedly visited at the times that she visited them. As a threshold issue, Plaintiff's fact pleading is unclear as to which Mindvalley pages she visited and how the Meta Pixel allegedly operates on those specific pages. She provides screenshots of what she alleges to show the Meta Pixel embedded in code on Mindvalley's members-only domain, home.mindvalley.com, on the date of her complaint (*see* Compl. ¶¶ 34, 64–65), but as to her own participation, alleges only that she "requested and watched videos on Mindvalley" (*id.* ¶ 15). More confusing, she defines the putative class as comprising persons who requested or viewed videos on Mindvalley's *public*, default domain mindvalley.com (*see id.* ¶ 71) and alleges in several paragraphs that Mindvalley collected and disclosed users' information from mindvalley.com by way of the Meta Pixel (*see id.* ¶¶ 3, 5, 88). Yet Plaintiff does not allege that she visited *either* of these domains to view Mindvalley videos. Nor does she allege whether she watched any videos on a web browser. Plaintiff has thus failed to provide the "factual enhancement" required to properly allege that she visited the Mindvalley webpages that she alleges were subject to the Meta Pixel's data tracking.

Absent from these allegations is sufficient detail as to *what* of Plaintiff's protected information the Meta Pixel purportedly tracked. She states in conclusory fashion that her "video viewing history was disclosed to third parties, including Facebook," without specifying what information was actually disclosed in supposed violation of the VPPA. (Compl. ¶ 15.) Other allegations in the Complaint allege that the Meta ID is PII, but Plaintiff does not allege that her Meta ID or any data linked with that identity were tracked and disclosed to third parties. (*Id.* ¶ 57.) Without any factual support describing what, if any, PII was disclosed, Plaintiff's generic allegations cannot support a claim based on the theory that her protected data was actually collected and disclosed to a third party. Plaintiff therefore cannot state a claim

upon which relief can be granted. She has effectively alleged that Mindvalley *might* disclose her information. Might is not enough and certainly not an actual injury. *See Cousin*, 2023 WL 4484441, at *4 (dismissing "all of Plaintiff's claims" for deficient pleading); *Khoros v. Lenovo (U.S.), Inc., LLC*, No. 3:20-cv-03399-WHO, 2020 WL 12655516, at *3 (N.D. Cal. Oct. 5, 2020) (claims dismissed where only a "sheer possibility" of misconduct).

**3. Plaintiff Consented to the Disclosure of Her Personal Identifiable Information.**

Plaintiff's claim under the VPPA fails because the facts alleged do not plausibly establish the absence of consent. Plaintiff's allegation that Mindvalley did not disclose the transmittal of her information to third parties is belied by the Privacy Policy displayed to her at various stages of her alleged registration. Again, Plaintiff supplies the opaque allegation that she "subscribed to Mindvalley within the last two years and watched videos on Mindvalley from that time until she ended her subscription in October 2023." (Compl. ¶ 15.) Assuming from this allegation that Plaintiff "subscribed" and "watched videos" from at least January 31, 2022—two years before she first filed her Complaint in this action—until October of 2023, she would have been armed with all of the information she claims to lack. At all operative periods, Mindvalley maintained a Privacy Policy that gave users notice of third-party data disclosures and the opportunity to opt-out at their discretion. (Atallah Decl. ¶¶ 3-4, Exs. A-B.)[4] Notably cropped out of Plaintiff's cherrypicked images is the prominent cookie consent banner that Mindvalley also displayed to its website users during the operative period. (Atallah Decl. ¶ 6, Ex. D.)

Knowing she was informed of these practices and was given a mechanism by which to withdraw, Plaintiff challenges the *form* of consent over its substance, contending that her consent was not in the form required by the VPPA. (*See* Compl. ¶ 15.) Written consent under the VPPA, including through an electronic means using the Internet, must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer[.]" 18 U.S.C. § 2710(b)(2)(B)(i). Mindvalley allows consumers to opt out of the disclosure of personal information via email or through its "Do Not Sell My

[4] The Complaint references and relies on Mindvalley's Terms & Conditions, prompts, and disclosures, which together form the basis of Plaintiff's allegations regarding Mindvalley's supposed violation of the VPPA. However, Plaintiff has failed to disclose the entirety of the Terms & Conditions, which contain Mindvalley's Class Waiver, and has cropped out relevant portions of the web pages. Mindvalley accordingly submits herewith a Request for Judicial Notice regarding these documents pursuant to the doctrine of incorporation by reference and the evidentiary doctrine of completeness under Rule 106 of the Federal Rules of Evidence.

Personal Information" webpage. (*See* Atallah Decl. ¶ 6, Ex. D.) By offering Plaintiff an opt-out procedure separate and apart from the Privacy Policy, Mindvalley provided her with a consent form dedicated solely to informing her of its intent to share her personally identifiable information. This method for obtaining consent is statutorily compliant. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002) ("A party accepts the revised contract if it does not exercise a meaningful opportunity to 'opt out' provided by the other party to reject the offer."); *see also Prizler v. Charter Commc'ns, LLC*, No. 3:18-CV-1724-L-MSB, 2019 WL 2269974, at *3 (S.D. Cal. May 28, 2019) (holding that a plaintiff's failure to opt out of Charter's Solution Channel program constituted implied consent to its terms necessary for contract formation).

**C. Plaintiff Lacks Article III Standing.**

This Court should dismiss the Complaint for lack of subject matter jurisdiction because Plaintiff pleads no facts to establish constitutional or statutory standing for her alleged claims against Mindvalley.

**1. Plaintiff Lacks Standing to Pursue Her Individual Claims.**

As set forth above, Plaintiff has failed to plausibly allege that she is a "consumer" under the VPPA. She is therefore barred from pursuing a claim as an "aggrieved" person for violation of the VPPA and has otherwise suffered no injury in connection with the allegations in the Complaint. 18 U.S.C. § 2710(c)(1); *Rodriguez v. JP Boden Servs. Inc.*, No. 23-CV-00534-L-VET, 2024 WL 559228, at *5 (S.D. Cal. Feb. 12, 2024) (finding no Article III standing because "the Complaint does not plausibly allege that Plaintiff acted as a 'purchaser' or 'subscriber' sufficient to constitute a 'consumer' under the VPPA").

**2. Plaintiff Lacks Standing to Sue on Behalf of All Mindvalley Accountholders.**

Plaintiff is also barred from asserting any injury under the VPPA on behalf of Mindvalley accountholders who have not subscribed or otherwise satisfied the "consumer" requirement of the VPPA, or who accessed Mindvalley's content without a "Meta ID." According to the Complaint, the Meta Pixel's alleged data disclosures are tied to a user's identity *only if* that user is concurrently logged into their Meta (Facebook) account. (Compl. ¶¶ 52–61.) With no associated Meta account, there is no unique "Meta ID" associated with the collected data, placing it outside of the VPPA's definition of PII. 18 U.S.C. § 2710(a)(3) (defining PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider"). Thus, if a plaintiff is not a "consumer"

or has not been subject to the disclosure of PII, they are not afforded the protections of the statute and Plaintiff lacks standing to pursue claims on their behalf.

Courts in this Circuit and others, including this District, have previously disposed of cases at the pleading stage for failure to articulate an ascertainable class with Article III standing. *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 991 ("Currently, the class definition includes all persons within the United States who own a 20–inch Aluminum iMac. This definition necessarily includes individuals who did not purchase their 20–inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages. Such individuals would lack standing to bring these claims."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing . . . . The class must therefore be defined in such a way that anyone within it would have standing.").

In contravention of this rule, Plaintiff here seeks to assert nationwide class claims on behalf of "all persons in the United States who: (1) have a Mindvalley account; and (2) requested or viewed videos mindvalley.com or through the 'Mindvalley' application." (Compl. ¶ 71.) She lacks standing to assert claims on behalf of these class members because many, if not all of them, necessarily lack Article III standing to pursue claims under the VPPA. As discussed above, the mere creation of a Mindvalley account does not render a user a "consumer" under the statute. A user can readily create an account without renting, purchasing, or subscribing to Mindvalley. (Živko Decl. ¶ 4.) As defined, the class members satisfy only one of the six factors (registration) enumerated in *Ellis* indicative of a "subscriber" relationship: payment, registration, commitment, delivery, expressed association, and/or access to restricted content. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015). Not all Mindvalley accountholders make payments or otherwise make a commitment with Mindvalley that would give them access to exclusive or restricted content. The class is thus too broadly defined to confer standing on each of its members.

The class definition also neglects entirely any requirement that the members have a Meta profile and view Mindvalley's video content while logged into that Meta profile.[5] As explained above, the Meta

[5] The class definition further neglects to deal with the consent any member would have provided through acceptance of the privacy notice provided to all members as discussed above (thus resulting in no actual injury and no standing).

Pixel's data sharing function—as alleged here—is predicated on the existence of a Meta account and associated Meta ID, without which no PII can be disclosed. With the proposed class thus having no Article III standing on these grounds, Plaintiff lacks standing to pursue VPPA claims on their behalf.

**D. Plaintiff Cannot Recover in Equity.**

Federal common law bars any claim for equitable relief if there exists an adequate legal remedy. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *5 (N.D. Cal. Nov. 6, 2020) (dismissing plaintiff's claims for injunctive relief where plaintiff had not pleaded that there was no adequate legal remedy). Therefore, a party seeking equitable remedies—including injunctive relief—under the VPPA must first show that legal remedies are unavailable or inadequate. *See IntegrityMessageBoards.com*, 2020 WL 6544411, at *5 ("The court disagrees with plaintiff's attempt to cabin the subject requirement to equitable claims for non-injunctive relief . . . the Supreme Court in *York* did not draw any distinction among the various forms of equitable relief when requiring the absence of a 'plain, adequate, and complete remedy at law' to obtain it."); *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) (No "equitable relief . . . where an adequate remedy exists at law.").

Based on the allegations of the Complaint, Plaintiff fails to make such a showing. Critically, Plaintiff seeks monetary damages in the amount of $2,500 "related to [her] loss of privacy" and punitive damages and does not allege that she lacks an adequate legal remedy. (Compl. at Prayer); *Sonner*, 971 F.3d at 844 (holding that plaintiff failed to establish she lacked an adequate remedy at law because she did not plead unavailability) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law").) As in *Sonner*, Plaintiff seeks the same restoration through equitable restitution, "and all other forms of equitable monetary relief." (Compl. at Prayer.)

Equally fatal to her equitable claim, Plaintiff fails to provide any color regarding the specific

injunctive relief she seeks. (*See* Compl. ¶ 93, Prayer.) This fails to provide Mindvalley with requisite notice of the injunctive relief sought in this action and an opportunity to mount an educated defense. "[C]onclusory claims to injunctive and/or declaratory relief—without descriptions of the particular relief sought and supporting factual allegations . . . are not sufficient to state a cognizable claim upon which relief may be granted." *Quezada v. California*, No. 1:20-cv-00959-DAD-SAB, 2021 WL 2417119, at *6 (E.D. Cal. June 14, 2021). Having failed to plausibly allege that she lacks an adequate remedy at law or to plead with any specificity the type of injunctive relief sought, Plaintiff's requests for equitable relief under the VPPA must be dismissed.

**E. Plaintiff Has Not Alleged Conduct Entitling Her to Punitive Damages.**

In California, punitive damages may only be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Relevant here is the fraud definition: "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of depriving a person of property or legal rights or otherwise causing injury." *Id.* at § 3294(c)(3). The Complaint makes conclusory references to a "hidden" tracking code while simultaneously showing the Court images of the alleged code on the Mindvalley website. (*Compare* Compl. ¶ 1 *with id.* ¶¶ 34, 64–65.) This does not entitle Plaintiff to punitive damages. As an initial matter, she cannot in good faith contest that she received notice of Mindvalley's privacy practices displayed prominently across its webpages, including its Cookie Banner and Privacy Policy. (*See* Atallah Decl. ¶¶ 3-7, Exs. A-E.) This notice precludes any allegation of fraudulent concealment.

Plaintiff also fails to plausibly allege facts supporting a claim for punitive damages. "Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases." *Yeager v. Corrs. Corp. of Am.*, No. 1:12-cv-00162 AWI JLT, 2012 WL 1067209, at *4 (E.D. Cal. Mar. 28, 2012) (internal citations omitted). Thus, California district courts have dismissed punitive damages claims when a plaintiff fails to provide any factual basis supporting a finding of malice, fraud or oppression. *See, e.g.*, *Kinkade v. Trojan Express LLC*, No. SACV 08-1362 AG (ANx), 2009 WL 799390, at *5 (C.D. Cal. Mar. 23, 2009) ("Simply pleading the terms 'oppression, fraud, and malice,' without alleging sufficient facts, is conclusory and does not in

itself support a punitive award . . . because Plaintiffs do not sufficiently plead oppression, fraud, or malice, the Complaint does not support a prayer for punitive damages."). Here, plaintiff has not sufficiently alleged any facts that Mindvalley concealed the Meta Pixel or the disclosure of her data, let alone with the intention "of depriving a person of property or legal rights or otherwise causing injury." Thus, Plaintiff has not alleged an adequate factual basis to support an award of punitive damages and her request for such damages should therefore be stricken.

## V. CONCLUSION

For the foregoing reasons, Mindvalley respectfully requests that the Court issue an order dismissing Plaintiff's Complaint in its entirety, with prejudice, and/or striking Plaintiff's class allegations.

DATED: April 8, 2024

**FOLEY & LARDNER LLP**
Eileen R. Ridley
John J. Atallah
Cole K. Waldhauser

*/s/ John J. Atallah*
JOHN J. ATALLAH
Attorneys for Defendant Mindvalley, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2024, I electronically filed **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on April 8, 2024, at Los Angeles, California.

*/s/ John J. Atallah*
John J. Atallah