EILEEN R. RIDLEY, CA Bar No. 151735
eridley@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507

JOHN J. ATALLAH, CA Bar No. 294116
jatallah@foley.com
COLE K. WALDHAUSER, CA Bar No. 345928
cwaldhauser@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

Attorneys for Defendant Mindvalley, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE COURTHOUSE**

| | |
|---|---|
| PATRICIA GOOIKER, WILLIAM FINLEY, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MINDVALLEY, INC.,<br><br>Defendant. | Case No. 5:24-cv-00593-BLF<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*[Request for Judicial Notice, Declaration of John J. Atallah, and [Proposed] Orders Filed Concurrently Herewith]*<br><br>Date: October 17, 2024<br>Time: 9:00 a.m.<br>Ctrm: 3<br><br>Complaint Filed: January 31, 2024<br>Corrected Complaint Filed: February 6, 2024<br>Amended Complaint Filed: April 29, 2024<br><br>District Judge: Hon. Beth Labson Freeman |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 17, 2024 at 9:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of Judge Beth Labson Freeman at the United States District Court for the Northern District of California, Courtroom 3, 5th Floor at the San Jose Courthouse located at 280 South 1st Street, San Jose, CA 95113, Defendant Mindvalley, Inc. ("Mindvalley") will and hereby does move this Court for an order dismissing, with prejudice, the First Amended Complaint ("FAC") filed by Plaintiffs Patricia Gooiker and William Finley ("Plaintiffs"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and striking the class allegations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, on the following grounds:

1. Plaintiffs' entire class claim is barred by the binding Class Action Waiver to which Plaintiffs previously agreed;

2. Plaintiffs fail to state a claim for relief under the Video Privacy Protection Act, 18 U.S.C. § 2710, ("VPPA");

3. Plaintiffs lack Article III standing to pursue their asserted claims on behalf of the putative class, as defined; and

4. Plaintiffs' claim for equitable relief under the VPPA is barred because an adequate remedy at law exists, and because they fail to plead with sufficient particularity the form of injunctive relief sought.

Mindvalley's Motion is further based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the Declaration of John J. Atallah filed in support, the Proposed Order, all filings and pleadings in this action, and on such other and further matters as the Court may consider.

DATED: June 10, 2024

**FOLEY & LARDNER LLP**
Eileen R. Ridley
John J. Atallah
Cole K. Waldhauser

*/s/ John J. Atallah*
JOHN J. ATALLAH
Attorneys for Defendant Mindvalley, Inc.

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. RELEVANT FACTUAL BACKGROUND .......... 2

III. LEGAL STANDARDS .......... 4

A. MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(F). .......... 4

B. DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM. .......... 6

C. DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF STANDING. .......... 7

IV. ARGUMENT .......... 8

A. PLAINTIFFS' CLASS CLAIMS MUST BE STRICKEN UNDER RULE 12(F). .......... 8

1. Plaintiffs are Bound by the Class Waiver in Defendant's Terms & Conditions. .......... 8

2. The Class Definition Should Be Stricken as Improperly Including Persons Who Lack Standing Under the VPPA. 11

B. THE FAC FAILS TO STATE A CLAIM UNDER THE VPPA PURSUANT TO RULE 12(B)(6). .......... 12

1. Plaintiffs Fail to Plausibly Allege the Disclosure of Their Personal Data. .......... 12

2. Plaintiffs Consented to the Disclosure of Their Personally Identifiable Information. .......... 13

C. PLAINTIFFS LACK STANDING TO SUE ON BEHALF OF ALL MINDVALLEY ACCOUNTHOLDERS. .......... 14

D. PLAINTIFFS CANNOT RECOVER IN EQUITY. .......... 16

V. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*10E, LLC v. Travelers Indem. Co. of Connecticut*,
500 F. Supp. 3d 1070 (C.D. Cal. 2020) .......... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 7

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) .......... 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 6

*Capps v. JPMorgan Chase Bank, N.A.*,
2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) .......... 10

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) .......... 14

*Clark v. LG Elecs. U.S.A., Inc.*,
2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) .......... 5, 6

*Cousin v. Sharp Healthcare,*
2023 WL 4484441 (S.D. Cal. July 12, 2023) .......... 13

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 7

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......... 15

*Doe I v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) .......... 7

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .......... 15, 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
528 U.S. 167 (2000) .......... 7

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 5

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
635 F. Supp. 3d 238 (S.D.N.Y. 2022) .......... 8

*Hooper v. Jerry Ins. Agency, LLC*,
2023 WL 3992130 (N.D. Cal. June 1, 2023) ..................... 10

*Hovsepian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ..................... 6

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..................... 7

*IntegrityMessageBoards.com v. Facebook, Inc.*,
2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ..................... 16

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ..................... 5, 11

*Karim v. Best Buy Co.*,
2023 WL 3801909 (N.D. Cal. June 2, 2023) ..................... 10

*Khoros LLC v. Lenovo (United States), Inc.*,
2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) ..................... 13

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ..................... 11

*Lejbm v. Transnat'l Foods, Inc.*,
2018 WL 1258256 (S.D. Cal. Mar. 12, 2018) ..................... 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................... 7

*Manning v. Bos. Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ..................... 5

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ..................... 16, 17

*Mort v. United States*,
86 F.3d 890 (9th Cir. 1996) ..................... 16

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..................... 8, 9, 10

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..................... 17

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ..................... 5

*Prizler v. Charter Commc'ns, LLC*,
2019 WL 2269974 (S.D. Cal. May 28, 2019) ..................... 14

*Quezada v. California*,
2021 WL 2417119 (E.D. Cal. June 14, 2021)........ 17

*Roberts v. Wyndham Int'l, Inc.*,
2012 WL 6001459 (N.D. Cal. Nov. 30, 2012)........ 6

*Route v. Mead Johnson Nutrition Co.*,
2013 WL 658251 (C.D. Cal. Feb. 21, 2013)........ 5

*Sanders v. Apple, Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009)........ 4, 5, 8, 12, 15

*Schroeder v. United States*,
569 F.3d 956 (9th Cir. 2009)........ 17

*Sellers v. Bleacher Rep., Inc.*,
2023 WL 4850180 (N.D. Cal. July 28, 2023)........ 11

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)........ 16, 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........ 7

*Spreewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)........ 7

*Stubbs v. McDonald's Corp.*,
224 F.R.D. 668 (D. Kan. 2004)........ 4

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
2014 WL 1048710 (N.D. Cal. Mar. 14, 2014)........ 6

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023)........ 16

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021)........ 7

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)........ 7, 8

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010)........ 5

**State Cases**

*B.D. v. Blizzard Entm't, Inc.*,
76 Cal. App. 5th 931 (2022)........ 10, 11

*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*,

176 Cal. App. 4th 697 (2009) ..... 11

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ..... 9, 11

**Federal Statutes**

18 U.S.C. § 2710 ..... 1

18 U.S.C. § 2710(a)(3) ..... 15

18 U.S.C. § 2710(b)(2)(B)(i) ..... 14

18 U.S.C. § 2710(c)(2)(A) ..... 17

**State Statutes**

Cal. Civ. Code § 3294 ..... 17

**Federal Rules**

Fed. R. Civ. P. 8(a)(2) ..... 6

Fed. R. Civ. P. 12(b)(1) ..... 7

Fed. R. Civ. P. 12(b)(6) ..... 6

Fed. R. Civ. P. 12(f) ..... 5, 8

Fed. R. Civ. P. 23 ..... 6

Fed. R. Civ. P. 23(c)(1)(A) ..... 6

Fed. R. Civ. P. 23(d)(1)(D) ..... 6

Fed. R. Civ. P. 106 ..... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Mindvalley, Inc. ("Mindvalley") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Patricia Gooiker and William Finley ("Plaintiffs") and to Strike the FAC's Class Allegations.

## I. INTRODUCTION

Confronted with deficiencies in the original complaint, Plaintiffs amend by substituting themselves as class representatives. But this action's infirmities run deeper than its class representatives. The fundamental defects from the original complaint remain, namely, (i) a binding class waiver, (ii) failure to plausibly allege the disclosure of personal data, (iii) Plaintiffs' consent to disclosure, and (iv) lack of class standing.

This putative class action brought under the Video Privacy Protection Act, 18 U.S.C. § 2710, ("VPPA") seeks relief for the alleged disclosure of protected data through the website tracking tool, Meta Pixel. Plaintiffs claim that Mindvalley wielded the Meta Pixel to track and disclose their personally identifiable information ("PII") without their consent, in violation of the VPPA. These allegations are plagued with ambiguity and insufficient detail. In some cases, they are roundly contradicted by the judicially noticeable evidence of Plaintiffs' consent. In all cases, they fail to state a claim under the VPPA.

Plaintiffs are barred from bringing their asserted claims on behalf of the putative class members, who lack standing as "consumers" under the VPPA. Plaintiffs' class allegations are also eclipsed by the binding class waiver to which they previously assented, and must accordingly be stricken. Plaintiffs' allegations further invite dismissal for a failure to plausibly allege core elements of their claim. For example, Plaintiffs claim that Mindvalley disclosed their protected information using the Meta Pixel, but do not actually allege which of Mindvalley's webpages they visited or the specific transactional details of their interactions with Mindvalley. Moreover, Plaintiffs cannot plausibly allege a lack of consent to Mindvalley's data privacy practices in the face of the open privacy disclosures and consent forms on Mindvalley's website.

For all of the above reasons, and as set forth more fully below, Mindvalley respectfully requests that the Court dismiss Plaintiffs' FAC in its entirety, with prejudice, and/or strike their class claims.

## II. RELEVANT FACTUAL BACKGROUND

Defendant Mindvalley is a private, global company and personal transformation learning platform that offers online and application-based video courses in self-growth, skill mastery, self-care, motivation, and mind and body. Users can browse Mindvalley programs through its website or downloadable application on the Google Play or Apple App Stores. Select programs are available at no cost, while others are accessible through a paid membership. Central to Plaintiffs' dispute is Mindvalley's use of the Meta Pixel, a common segment of website code that Plaintiffs allege Mindvalley used to "track and disclose" their video viewing history. (FAC ¶¶ 14–15, 41.)

The FAC describes the Meta Pixel as a "web beacon . . . configured to capture a substantial amount of information by default." (*Id.* ¶¶ 41, 54.) It explains that the Meta Pixel is ordinarily "embedded in a website as a first-party cookie" and collects "Pixel-specific Data," allowing Meta to "link data to a particular Meta account with a user ID" known as a Meta ID or Facebook ID. (*Id.* ¶¶ 50, 56–57.) The FAC sets forth some of the Meta Pixel's capabilities, describing how website developers "can [] choose to track actions taken on their website with the Meta Pixel, called an 'Event'" and "can [] create 'Custom Audiences' based on Events and can target ads on Meta's platforms." (*Id.* ¶¶ 62–63.)

The FAC then alleges that Mindvalley integrated the Meta Pixel "throughout its website" to track users' video viewing history and then "knowingly disclosed [that information] to Meta and other third parties." (*Id.* ¶¶ 66, 68–69, 76.) Plaintiffs, both California residents, claim to have purchased Mindvalley subscriptions and allege that Mindvalley disclosed their PII without their consent. (*Id.* ¶¶ 14–15, 96–99.) Yet, rife with generalized descriptions of Mindvalley's website mechanics, the FAC remains largely devoid of Plaintiffs' own experiences on Mindvalley's website. For instance, Plaintiffs do not specify when or how they first subscribed to Mindvalley, to which paid membership(s) they subscribed, the duration or cost of their paid subscriptions, or other details of their enrollment process or the nature of their membership(s). Nor do they make any meaningful distinction in their FAC between Mindvalley's default domain (mindvalley.com) and its members-only domain (home.mindvalley.com)—each of the images in the FAC contains the latter (*see id.* ¶¶ 39, 68–69), but the class definition references the former (*see id.* ¶ 78). Plaintiffs' attempt to remedy this confusion by establishing an "inclusive" catch-all only further clouds the allegations. (*See id.* ¶ 27 n.2.) Plaintiffs also do not specify whether they watched

videos on a web browser or through Mindvalley's phone application. (*See id.* ¶ 14–15 (Plaintiffs "watched videos on Mindvalley").) There are similarly no allegations regarding how Plaintiffs navigated Mindvalley's website, what pages they visited, which of those pages used the Meta Pixel, and whether the Meta Pixel was active during all operative time periods of Plaintiffs' alleged membership.

The FAC makes a point to reference Mindvalley's terms and displays cropped images of Mindvalley webpages without introducing the *content* of those terms or providing the full picture of those webpages or the user experience. (*See id.* ¶¶ 39, 68–69, 86.) The FAC also walks through the general steps taken to create a Mindvalley account and to subscribe to Mindvalley's paid offerings but meticulously omits certain of the prompts and disclosures shown to users along the way. (*See id.* ¶¶ 27–38.) The *complete* webpages, user prompts, and terms on which Plaintiffs rely in their FAC—shown to users in various stages of their account and membership registrations—include a class action waiver ("Class Waiver"), a data privacy disclosure and consent provision ("Privacy Policy"), and a cookie consent banner ("Cookie Banner").[1] Where Plaintiffs allege they did not know about the disclosure of their viewing conduct, the Privacy Policy and Cookie Banner show otherwise. For example, a version of the Privacy Policy in effect during the relevant timeframe stated the following:

> We also may use a standard feature found in browser software called a "cookie" to enhance your experience with the Site, ***and web beacons***, to access cookies, count users who visit the Site, or open HTML-formatted email messages.
>
> ***We use the information we collect from you while you are using the Site*** in a variety of ways, including using the information to customize features; advertising that appears on the Site; and, making other offers available to you via email, direct mail or otherwise. ***We also may provide your information to third parties***, such as service providers, contractors and third-party publishers and ***advertisers*** for a variety of purposes.

(Atallah Decl. ¶ 3, Ex. A at 1 (emphasis added).) A version of the Cookie Banner in effect during the relevant timeframe stated the following:

[1] The referenced documents are attached as exhibits, alongside other supporting materials, to the Declaration of John J. Atallah in Support of Motion to Dismiss ("Atallah Decl."), which is also the subject of Mindvalley's Request for Judicial Notice filed concurrently herewith.

> This website uses cookies to enhance user experience and to analyze performance and traffic on our website. We also ***share information about your use of our site with our social media, advertising and analytics partners***.

(*Id.* ¶ 6, Ex. D (emphasis added).) Further, the express terms of the Privacy Policy in effect at all relevant times directly contradict Plaintiffs' allegations regarding lack of consent. The version of the Privacy Policy in effect before June 23, 2023 stated:

> Unless you inform us in accordance with the process described below, we reserve the right to use, and ***to disclose to third parties, all of the information collected from and about you while you are using the Site in any way and for any purpose***, such as to enable us or a third party to provide you with information about products and services.

(*Id.* ¶ 3, Ex. A at 1 (emphasis added).) Similarly, the current version reads, in pertinent part:

> **Right to opt-out.** You have the right to opt out of the sale of your personal information. We do not sell personal information. However, the service providers we partner with (for example, our advertising partners) may use technology on the Service that "sells" personal information as defined by the CCPA. If you wish to opt out of the use of your personal information for interest-based advertising purposes and these potential sales as defined under CCPA law, you may do so by following the instructions below. Please note that any opt out is specific to the browser you use. You may need to opt out on every browser that you use.

(*Id.* ¶ 4, Ex. B at 4 (emphasis in original).)

Finally, despite consenting to a Class Waiver, Plaintiffs attempt to assert claims on behalf of a broadly defined putative class of persons who "have a Facebook account," "have a Mindvalley account," and "requested or viewed videos on mindvalley.com." (FAC ¶ 78.) Of note, all persons who "have a Mindvalley account" encompasses all Mindvalley *accountholders*—without specifying paid or unpaid subscription or membership status—and includes individuals who may not be signed into a Facebook account while using the platform.

## III. <u>LEGAL STANDARDS</u>

### A. Motion to Strike Class Allegations Under Rule 12(f).

Federal courts are empowered to use motions to strike to "test the viability of a class at the earliest pleading stage of the litigation." *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (collecting cases); *see also Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (granting

motion to strike warranty and fraud-based claims); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166–67 (N.D. Cal. 2008).

The Court need not wait until a motion for class certification is submitted before deciding whether a matter can be maintained as a class action, particularly in cases where it is "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named Plaintiffs' claim . . ." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also, e.g.*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (Rule 12(f) motions help to avoid the unnecessary "expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . .") (quotation omitted); *Kamm v. California City Dev. Co.*, 509 F.2d 205, 212–13 (9th Cir. 1975) (affirming order striking allegations at the pleading stage); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("where the matter is sufficiently obvious from the pleadings, a court may strike class allegations" without first permitting class discovery); *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at *16 (S.D. Cal. Oct. 29, 2013).

Rule 12(f) of Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc.*, 618 F.3d at 973 (internal quotation marks omitted). The Supreme Court has recognized that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named Plaintiffs' claim." *General Telephone Co. of Southwest*, 457 U.S. at 160. Under the authority of Federal Rule of Civil Procedure 12(f), "a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained." *Clark*, 2013 WL 5816410, at *16; *see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations.") (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

Similarly, Rule 23 of Federal Rules of Civil Procedure authorizes the Court to eliminate defective

class allegations at the outset of the action. *See* Fed. R. Civ. P. 23(c)(1)(A) (the court should determine "at any early practicable time" whether to "certify the action as a class action"); Fed. R. Civ. P. 23(d)(1)(D) (the court may order that pleadings be amended to remove class allegations); *see also Roberts v. Wyndham Int'l, Inc.*, No. 12-CV-5083-PSG, 2012 WL 6001459, at *3 (N.D. Cal. Nov. 30, 2012) ("Pursuant to Rule 23(d)(1)(D), the court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained.") (citing *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009)). Courts have also dismissed nationwide class claims under Rule 12(b)(6) or 12(b)(1). *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014); *Lejbm v. Transnat'l Foods, Inc.*, No. 17-CV-1317-CAB-MDD, 2018 WL 1258256, at *4 (S.D. Cal. Mar. 12, 2018). Under each of the foregoing rules, the analysis is the same, and turns upon whether the FAC demonstrates, as a matter of law, that the proposed class is not viable. *See Clark*, 2013 WL 5816410, at *16; *Roberts*, 2012 WL 6001459, at *3; *Tasion Communications, Inc.*, 2014 WL 1048710, at *3.

**B. Dismissal Under Rule 12(b)(6) for Failure to State a Claim.**

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility requirement" requires the allegations in the complaint to "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Plaintiffs must plead "factual content that allows the court" to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, in evaluating a motion to dismiss for failure to state a claim for relief that is plausible on its face, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to

the nonmoving party." *Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*; *see also Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 683 (9th Cir. 2009) (courts "need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss"); *Iqbal*, 556 U.S. at 678–79 (modern pleading standard "does not unlock the doors of discovery for a Plaintiffs armed with nothing more than conclusions."). Similarly, the Court is not required to accept as true allegations that are so plainly contradicted by reality as to render them implausible. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court need not accept as true "allegations that contradict matters properly subject to judicial notice."); *10E, LLC v. Travelers Indem. Co. of Connecticut*, 500 F. Supp. 3d 1070, 1074 (C.D. Cal. 2020) (dismissing complaint where the Plaintiffs' claims were "implausible and contradicted in the [complaint] itself.").

### C. Dismissal Under Rule 12(b)(1) for Lack of Standing.

"To have Article III standing to sue in federal court, Plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). Article III limits the jurisdiction of federal courts to "cases" and "controversies" for which a Plaintiffs has standing to pursue his or her claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a Plaintiffs must first have suffered an "injury in fact" which is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant . . . ." *Id.* (citations and alterations omitted). Finally, it must be "likely" that the "injury will be redressed by a favorable decision." *Id.* (citations omitted). The Plaintiffs has the burden to establish these elements. *Id.* Further, "[a] Plaintiffs must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)). As the Supreme Court observed, a "Plaintiffs' injury in fact" must be "concrete—that is, real, and not abstract." *TransUnion*, 141 S. Ct. at 2204 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "Every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured Plaintiffs, class action or not." *Id.* at 2208 (citing *Tyson Foods,*

*Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)).

## IV. ARGUMENT

### A. Plaintiffs' Class Claims Must Be Stricken Under Rule 12(f).

#### 1. Plaintiffs are Bound by the Class Waiver in Defendant's Terms & Conditions.

Through their alleged engagement with Mindvalley, Plaintiffs agreed to the company's Terms & Conditions, which included waiver of their ability to bring claims on a class basis. At the time Plaintiffs allegedly first engaged with Mindvalley, the following language appeared in Mindvalley's Terms & Conditions:

> **Class Action Waiver.** You acknowledge and agree that You may only resolve disputes with us on an individual basis and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed. The arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, consolidated action or private attorney general action) unless all relevant parties specifically agree to do so following initiation of the arbitration.

(Atallah Decl. ¶ 5, Ex. C at 15.)

Because courts may properly determine at the Rule 12 stage that a class action cannot be maintained on the facts alleged, Mindvalley moves to strike Plaintiffs' class allegations under Rule 12(f) on the grounds that they are barred by the applicable terms of service to which Plaintiffs agreed. *Sanders*, 672 F. Supp. 2d at 990. *See Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022) ("one circumstance where striking the class allegations may be appropriate is where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis."); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 518 (9th Cir. 2023) [hereinafter *Oberstein*] ("where the authenticity of screenshots is not subject to factual dispute, courts may decide the issue [of constructive notice] as a pure question of law.") (internal quotation marks omitted).

Plaintiffs allege that they were paying Mindvalley subscribers. (FAC ¶¶ 14–15, 96.) Even if the Court takes Plaintiffs' allegations—thin and unsupported as they may be—at face value, Plaintiffs' claims nevertheless fail because they are barred by the Class Waiver. Because Plaintiffs do not state when they allegedly subscribed to Mindvalley's services, Mindvalley assumes for the purposes of this Motion that

Plaintiffs subscribed during the relevant limitations period, beginning April 29, 2022. During this period, Mindvalley's Checkout Page contained the disclosures reflected in Exhibit E and described in this Motion. Mindvalley's Terms & Conditions were thus presented to Plaintiffs when they allegedly enrolled in Mindvalley's service. Immediately beneath the "Complete My Order" button on Mindvalley's Checkout Page reads the message "By placing your order, you agree to Mindvalley's privacy policy and terms of use." (Atallah Decl. ¶ 7, Ex. E.) The policy and terms are each underlined and hyperlinked for users to readily click and read before completing their order. (*Id.*) By clicking the "terms of use" link, users are directed to the operative version of Mindvalley's Terms & Conditions, which directs users to read the terms carefully before using Mindvalley's website and states that the use of the website constitutes an acknowledgment and acceptance of the terms. The terms include in large, bold font the heading "**Class Action Waiver**" and the corresponding class waiver language excerpted above.

As in *Oberstein*, Plaintiffs assented to the Class Waiver "at three independent stages": (1) when they allegedly began using Mindvalley's website; (2) when they contend they originally created a Mindvalley account (which affirmatively requires a user's agreement to the same terms of service and privacy policy); and (3) when they allegedly entered their billing information and clicked "Complete My Order" for the purchase of a Mindvalley membership. (*See* Atallah Decl. ¶¶ 5, 7, Exs. C, E.); *Oberstein*, 60 F.4th at 515. Plaintiffs therefore had ample notice of the Class Waiver and are bound by its terms. Moreover, as explained below, the provision was sufficiently conspicuous and is thus enforceable, rendering this action unfit for class treatment and dismissible as a matter of law.

**a. Mindvalley Provided Sufficiently Conspicuous Notice of the Class Waiver.**

Mindvalley provided sufficiently conspicuous notice of the Class Waiver so as to bind Plaintiffs under *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) and its progeny. According to *Sellers*, the provider of an internet contract must present its contractual terms "to the consumer in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking on a button." *Id.* at 461. The line of federal cases following *Sellers* makes clear that notice is sufficient where the checkout page contains disclosures above or below the call to action stating, as they have here, that the consumer accepts and agrees to the terms. (*See* Atallah Decl. ¶¶ 7–8, Exs. E–F) ("By placing your order,

you agree to Mindvalley's privacy policy and terms of use." / "By signing up, you agree to our terms of services and privacy policy."); *see also, e.g.*, *Karim v. Best Buy Co.*, No. 22-CV-04909-JST, 2023 WL 3801909, at *5 (N.D. Cal. June 2, 2023); *Hooper v. Jerry Ins. Agency, LLC*, No. 22-CV-04232-JST, 2023 WL 3992130, at *4-5 (N.D. Cal. June 1, 2023); *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-00806-DAD-JDP, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023).

Perhaps most analogous is the Ninth Circuit's recent decision in *Oberstein*, where the Court found a website's terms sufficiently conspicuous because, as here, they were: (i) distinguished in bright blue from the surrounding text, (ii) located directly adjacent to the action button, and (iii) the underlying transaction required a full registration process before the transaction would proceed. 60 F.4th at 517. Like the agreement in *Oberstein*, Mindvalley's Class Waiver is a sign-in wrap agreement, meaning it includes a textual notice indicating that the user will be bound by the terms, though it does not affirmatively require the consumer to review those terms or to separately manifest their assent to those terms. "Instead, the user is purportedly bound by clicking *some other* button that they would otherwise need to click to continue with their transaction or their use of the website[.]" *B.D. v. Blizzard Entm't, Inc.*, 76 Cal. App. 5th 931, 946 (2022) (emphasis in original). Thus, "the consumer's assent is largely passive, and the existence of a contract turns on whether a reasonably prudent offeree would be on inquiry notice of the terms at issue." *Id.* (cleaned up).

Here, Mindvalley's agreement provides sufficiently conspicuous notice of its Class Waiver to consumers, including Plaintiffs. It requires an affirmative click by consumers like Plaintiffs signing up for an ongoing account. (*See* Atallah Decl. ¶ 8, Ex. F.) It is thus "reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship governed by the terms and conditions." *B.D.*, 76 Cal. App. 5th at 951 (finding "no trouble concluding" that the defendant's agreement provided sufficiently conspicuous notice that a user who clicked a "continue" button at the bottom of a pop-up would be bound by its terms) (cleaned up). The notice in *B.D.* was also a sign-in wrap agreement and included an underlined hyperlink to the defendant's dispute resolution policy just as Mindvalley does for its Terms & Conditions. *Id.* at 952. The *B.D.* court found that this made the terms "easily available" to consumers and that the "clear and unequivocal reference to the extrinsic document and the contemporaneous availability of its terms shows that, at the time of

contracting, the parties consented to those terms." *Id.* at 953 (citing *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 714 (2009)). In distinguishing from *Sellers*, which found notice insufficient because it required users to "ferret out hyperlinks to terms and conditions," *B.D.* noted that defendant's policy was only "one click away" as opposed to the two clicks in *Sellers*. *Id.* at 953.

As in *B.D.*, Mindvalley's notice was not "extremely small print, lacking contrast, or outside the area where the consumer's attention would necessarily be focused." *Id.* (cleaned up). To the contrary, it was immediately below the webpage's call to action, was set off by underlined text, and provided the unmistakable warning to consumers that "[b]y placing your order, you agree to Mindvalley's privacy policy and terms of use." (*See* Atallah Decl. ¶ 7, Ex. E.) From this notice, users could make one click to read Mindvalley's Terms & Conditions, which boldly displayed the heading "**Class Action Waiver**" with the applicable policy. Mindvalley is aware of only one case applying California law to analyze the application of a class waiver to a VPPA class action. In *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *7 (N.D. Cal. July 28, 2023), the court declined to strike class allegations on the basis of a class waiver because the website at issue failed to put users on notice of the terms of use containing the waiver. Critically, the *Bleacher* court distinguished from *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) because, unlike in *Ticketmaster*, the notice in dispute was "buried at the bottom of the page and did not prevent the user from accessing the site" and "Plaintiffs was not required to affirmatively acknowledge the agreement in any way." *Bleacher Rep., Inc.*, 2023 WL 4850180, at *7. In making this distinction, the court acknowledged that the notice in *Ticketmaster*—like here—was "sufficient to put users on notice" because it "was placed in close proximity to a button the user had to click on to sign in or buy tickets." *Id.*

The notice of class waiver is sufficiently conspicuous and thereby enforceable. As such, Mindvalley's Class Waiver forecloses Plaintiffs' class claims.

**2. The Class Definition Should Be Stricken as Improperly Including Persons Who Lack Standing Under the VPPA.**

Class definitions that are plainly not ascertainable or otherwise deficient may be stricken on the pleadings. *See Kamm*, 509 F.2d at 207 (striking class allegations because state action with respect to the same controversy had already commenced and relief had been obtained such that the alleged class action

would not meet the superiority requirement). This includes where, as here, the class definition necessarily includes those lacking standing to pursue claims under the claims alleged. *Sanders*, 672 F.Supp.2d at 990–91 (striking class allegations because class was not ascertainable in a fraud claim where class definition included people who lacked standing).

For the reasons set forth below in Section C., the proposed class members lack standing to pursue claims under the VPPA. The Court should thus exercise its discretion under Rule 12(f) to strike the nationwide class allegations, or, in the alternative, the class definition as alleged in Plaintiffs' FAC.

**B. The FAC Fails to State a Claim Under the VPPA Pursuant to Rule 12(b)(6).**

The elements of Plaintiffs' VPPA claim are negated by the very contents of the FAC and the judicially noticeable facts. Plaintiffs cannot plausibly allege that Mindvalley disclosed their personal data. Nor can they plausibly allege lack of consent in light of the Privacy Policy and the various disclosures they had to have read and agreements to which they assented by allegedly having an account/membership. Dismissal is appropriate on these grounds alone.

**1. Plaintiffs Fail to Plausibly Allege the Disclosure of Their Personal Data.**

Plaintiffs fail to allege *what* they believe the Meta Pixel was tracking on the pages they allegedly visited at the times that they visited them. As a threshold issue, Plaintiffs' fact pleading is unclear as to which Mindvalley pages they visited and how the Meta Pixel allegedly operates on those specific pages. They provide screenshots of what they allege to show the Meta Pixel embedded in code on mindvalley.com (without specifying the date that this code was operative) (*see* FAC ¶ 69), but as to their own participation, allege only that they "requested and watched videos on Mindvalley" (*id.* ¶¶ 14–15). More confusing, amendments to the complaint now claim that references to Mindvalley's default domain, mindvalley.com, are "inclusive of Mindvalley's members-only domain, home.mindvalley.com." (*See id.* ¶ 33.) This does not remedy the ambiguity plaguing the original complaint; it simply bundles both domains together under one umbrella, leaving Mindvalley to guess which domain and relevant website code applies to the allegations. Nor do Plaintiffs allege whether they watched any videos on a web browser. Plaintiffs have thus failed to provide the "factual enhancement" required to properly allege that they visited the Mindvalley webpages that they allege were subject to the Meta Pixel's data tracking.

Also absent from these allegations is sufficient detail as to *what* of Plaintiffs' protected information

the Meta Pixel purportedly tracked. Plaintiffs state in conclusory fashion that their "video viewing history was disclosed to third parties, including Facebook," without specifying what information was actually disclosed in supposed violation of the VPPA. (FAC ¶¶ 14–15.) Other allegations in the FAC allege that the Meta ID is PII (*id.* ¶ 61) and describe in general terms the various "events" of "other pixels" (*id.* ¶ 71), but Plaintiffs do not allege that their Meta ID or any data linked with those identities were tracked and disclosed to third parties, or that those events were applied to their specific activity. Without any factual support describing what, if any, *of Plaintiffs' specific PII* was disclosed, Plaintiffs' generic allegations cannot support a claim based on the theory that their protected data was actually collected and disclosed to a third party. Plaintiffs therefore cannot state a claim upon which relief can be granted. They have effectively alleged that Mindvalley *might* disclose their information. Might is not enough and certainly not an actual injury. *See Cousin*, 2023 WL 4484441, at *4 (dismissing "all of Plaintiffs' claims" for deficient pleading); *Khoros v. Lenovo (U.S.), Inc., LLC*, No. 3:20-cv-03399-WHO, 2020 WL 12655516, at *3 (N.D. Cal. Oct. 5, 2020) (claims dismissed where only a "sheer possibility" of misconduct).

**2. Plaintiffs Consented to the Disclosure of Their Personally Identifiable Information.**

Plaintiffs' claims under the VPPA fail because the facts alleged do not plausibly establish the absence of consent. Plaintiffs' allegation that Mindvalley did not disclose the transmittal of their information to third parties is belied by the Privacy Policy displayed to them at various stages of their alleged registration. Again, Plaintiffs supply the opaque allegation that they "subscribed to Mindvalley within the last two years and watched videos on Mindvalley during that time period." (FAC ¶¶ 14–15.) Assuming from these allegations that Plaintiffs "subscribed" and "watched videos" from at least April 29, 2022—two years before they filed the FAC in this action—until April 29, 2024, they would have been armed with all of the information they claim to lack. At all operative periods, Mindvalley maintained a Privacy Policy that gave users notice of third-party data disclosures and the opportunity to opt out at their discretion. (Atallah Decl. ¶¶ 3–4, Exs. A–B.)[2] Notably cropped out of Plaintiffs' cherrypicked images is

[2] The FAC references and relies on Mindvalley's Terms & Conditions, prompts, and disclosures, which together form the basis of Plaintiffs' allegations regarding Mindvalley's supposed violation of the VPPA.

the prominent cookie consent banner that Mindvalley also displayed to its website users during the operative period. (Atallah Decl. ¶ 6, Ex. D.)

Knowing they were informed of these practices and were given a mechanism by which to withdraw, Plaintiffs challenge the *form* of consent over its substance, contending that their consent was not in the form required by the VPPA. (*See* FAC ¶¶ 14–15.) Written consent under the VPPA, including through an electronic means using the Internet, must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer[.]" 18 U.S.C. § 2710(b)(2)(B)(i). Mindvalley allows consumers to opt out of the disclosure of personal information via email or through its "Do Not Sell My Personal Information" webpage. (*See* Atallah Decl. ¶ 6, Ex. D.) By offering Plaintiffs an opt-out procedure separate and apart from the Privacy Policy, Mindvalley provided them with a consent form dedicated solely to informing them of Mindvalley's intent to share their personally identifiable information. This method for obtaining consent is statutorily compliant. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002) ("A party accepts the revised contract if it does not exercise a meaningful opportunity to 'opt out' provided by the other party to reject the offer."); *see also Prizler v. Charter Commc'ns, LLC*, No. 3:18-CV-1724-L-MSB, 2019 WL 2269974, at *3 (S.D. Cal. May 28, 2019) (holding that a Plaintiffs' failure to opt out of Charter's Solution Channel program constituted implied consent to its terms necessary for contract formation).

### C. Plaintiffs Lack Standing to Sue on Behalf of All Mindvalley Accountholders.

Plaintiffs are barred from asserting any injury under the VPPA on behalf of Mindvalley accountholders who have not subscribed or otherwise satisfied the "consumer" requirement of the VPPA, or who accessed Mindvalley's content without a "Meta ID." According to the FAC, the Meta Pixel's alleged data disclosures are tied to a user's identity *only if* that user is concurrently logged into their Meta

---

However, Plaintiffs have failed to disclose the entirety of the Terms & Conditions, which contain Mindvalley's Class Waiver, and has cropped out relevant portions of the web pages. Mindvalley accordingly submits herewith a Request for Judicial Notice regarding these documents pursuant to the doctrine of incorporation by reference and the evidentiary doctrine of completeness under Rule 106 of the Federal Rules of Evidence.

(Facebook) account. (FAC ¶¶ 56–65.) With no associated Meta account in use at the time the content is accessed, there is no unique "Meta ID" associated with the collected data, placing it outside of the VPPA's definition of PII. 18 U.S.C. § 2710(a)(3) (defining PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider"). Thus, if a Plaintiff is not a "consumer" or has not been subject to the disclosure of PII, they are not afforded the protections of the statute and Plaintiffs lack standing to pursue claims on their behalf.

Courts in this Circuit and others, including this District, have previously disposed of cases at the pleading stage for failure to articulate an ascertainable class with Article III standing. *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 991 ("Currently, the class definition includes all persons within the United States who own a 20–inch Aluminum iMac. This definition necessarily includes individuals who did not purchase their 20–inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages. Such individuals would lack standing to bring these claims."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing . . . . The class must therefore be defined in such a way that anyone within it would have standing.").

In contravention of this rule, Plaintiffs here seek to assert nationwide class claims on behalf of "all persons in the United States who: (1) have a Facebook account; (2) have a Mindvalley account; and (3) requested or viewed videos on mindvalley.com." (FAC ¶ 78.) Plaintiffs lack standing to assert claims on behalf of these class members because many, if not all of them, necessarily lack Article III standing to pursue claims under the VPPA. As discussed above, the mere creation of a Mindvalley account and "request[ing] or view[ing] videos" does not render a user a "consumer" under the statute. (*Id.*) A user can readily create an account and view certain video content without renting, purchasing, or subscribing to Mindvalley, including through the "Free Courses" page on its website. As defined, the class members satisfy only one of the six factors (registration) enumerated in the Eleventh Circuit's guiding precedent *Ellis v. Cartoon Network, Inc.* indicative of a "subscriber" relationship: payment, registration, commitment, delivery, expressed association, and/or access to restricted content. 803 F.3d 1251, 1256 (11th Cir. 2015). Not all Mindvalley accountholders make payments or otherwise make a commitment with Mindvalley that would give them access to exclusive or restricted content. *See Tawam v. Feld Ent.*

*Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023) ("While Plaintiffs allegedly signed up for Defendant's email mailing list, not everything that can conceivably be labeled a 'subscription' automatically triggers the protections of the VPPA."). The class is thus too broadly defined to confer standing on each of its members.

The class definition also fails to properly capture the requirement that the members have a Meta profile and view Mindvalley's video content *while logged into that Meta profile*.[3] As explained above, the Meta Pixel's data sharing function—as alleged here—is predicated on the existence of a Meta account and associated Meta ID in use while the user consumes the subject content, without which no PII can be disclosed. With the proposed class thus having no Article III standing on these grounds, Plaintiffs lack standing to pursue VPPA claims on their behalf.

**D. Plaintiffs Cannot Recover in Equity.**

Federal common law bars any claim for equitable relief if there exists an adequate legal remedy. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *5 (N.D. Cal. Nov. 6, 2020) (dismissing Plaintiffs' claims for injunctive relief where Plaintiffs had not pleaded that there was no adequate legal remedy). Therefore, a party seeking equitable remedies—including injunctive relief—under the VPPA must first show that legal remedies are unavailable or inadequate. *See IntegrityMessageBoards.com*, 2020 WL 6544411, at *5 ("The court disagrees with Plaintiffs' attempt to cabin the subject requirement to equitable claims for non-injunctive relief . . . the Supreme Court in *York* did not draw any distinction among the various forms of equitable relief when requiring the absence of a 'plain, adequate, and complete remedy at law' to obtain it."); *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) (No "equitable relief . .

---

[3] The class definition further neglects to deal with the consent any member would have provided through acceptance of the privacy notice provided to all members as discussed above (thus resulting in no actual injury and no standing).

. where an adequate remedy exists at law.”).

Based on the allegations of the FAC, Plaintiffs fail to make such a showing. Critically, Plaintiffs seek monetary damages under 18 U.S.C. § 2710(c)(2)(A) and do not allege that they lack an adequate legal remedy. (FAC at Prayer);[4] *Sonner*, 971 F.3d at 844 (holding that Plaintiff failed to establish she lacked an adequate remedy at law because she did not plead unavailability) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law").)

Equally fatal to their equitable claims, Plaintiffs do not provide any color regarding the specific injunctive relief they seek. (*See* FAC ¶ 100, Prayer.) This fails to provide Mindvalley with requisite notice of the injunctive relief sought in this action and an opportunity to mount an educated defense. "[C]onclusory claims to injunctive and/or declaratory relief—without descriptions of the particular relief sought and supporting factual allegations . . . are not sufficient to state a cognizable claim upon which relief may be granted." *Quezada v. California*, No. 1:20-cv-00959-DAD-SAB, 2021 WL 2417119, at *6 (E.D. Cal. June 14, 2021). Having failed to plausibly allege that they lack an adequate remedy at law or to plead with any specificity the type of injunctive relief sought, Plaintiffs' requests for equitable relief under the VPPA must be dismissed.

Plaintiffs appear in their Prayer for Relief to have abandoned their claims for restitution and punitive damages. However, to the extent they continue to seek such relief, there is no basis for either restitution, (for the foregoing reasons), or for punitive damages, because the FAC fails to plead supporting facts showing "oppression, fraud, or malice." Cal. Civ. Code § 3294.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Mindvalley respectfully requests that the Court issue an order dismissing Plaintiffs' FAC in its entirety, with prejudice, and/or striking Plaintiffs' class allegations.

---

[4] That Plaintiffs deleted any express reference to the code section's $2,500 liquidated damages language does not remove that language from the statute Plaintiffs continue to invoke.

DATED: June 10, 2024

**FOLEY & LARDNER LLP**
Eileen R. Ridley
John J. Atallah
Cole K. Waldhauser

*/s/ John J. Atallah*
JOHN J. ATALLAH
Attorneys for Defendant Mindvalley, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed **NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on June 10, 2024, at Los Angeles, California.

*/s/ John J. Atallah*
John J. Atallah