Eric S. Dwoskin, admitted *pro hac vice* (edwoskin@dwowas.com)
DWOSKIN WASDIN LLP
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Phone: 561-849-8060

Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
ERICKSON KRAMER OSBORNE LLP
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA GOOIKER, WILLIAM FINLEY, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>MINDVALLEY, INC.,<br><br>    Defendant. | Case No.: 5:24-cv-00593-BLF<br><br>PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS, MOTION TO STRIKE, AND REQUEST FOR JUDICIAL NOTICE<br><br>Date:          October 17, 2024<br>Time:          9:00 a.m.<br>Courtroom:   3<br>Judge:        Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

Statement of Issues to Be Decided ...................................................................................ix

I.     Introduction ...........................................................................................................1

II.    Factual Allegations ...............................................................................................2

III.   Legal Standards .....................................................................................................3

   A.   Motion to Dismiss for Failure to State a Claim ..............................................3

   B.   Motion to Strike Class Allegations..................................................................4

   C.   Motion to Dismiss for Lack of Standing .........................................................5

IV.    Argument ...............................................................................................................6

   A.   Plaintiffs State a VPPA Claim.........................................................................6

      1.   Plaintiffs Allege Disclosure of Their PII ...................................................6

      2.   Plaintiffs Never Consented to Disclosure of Their PII................................9

   B.   Mindvalley's Class Action Waiver Is Unenforceable ....................................14

      1.   The Hyperlinks to the Terms and Conditions Are Too Inconspicuous to Bind Plaintiffs 14

      2.   The Class Action Waiver Is Unconscionable .............................................19

   C.   Plaintiffs Can Represent the Proposed Class...................................................21

      1.   Plaintiffs and Absent Class Members Are Subscribers...............................22

      2.   Plaintiffs' Class Definition Does Not Require a "Logged in to Facebook" Condition.23

   D.   Plaintiffs' Unjust Enrichment Claim Is Consistent with *Sonner* and Injunctive Relief Is Properly Pleaded..................................................................................................24

V.     Conclusion .............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Am.'s Test Kitchen, LP*,
   680 F. Supp. 3d 31 (D. Mass. 2023)..................................................................................7

*Ade v. Viki, Inc.*,
   2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ...............................................................7, 11

*Ang v. Bimbo Bakeries USA, Inc.*,
   2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ...................................................................11

*Applebaum v. Lyft, Inc.*,
   263 F. Supp. 3d 454 (S.D.N.Y. 2017) .................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................................3

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ..........................................................................................................19

*B.D. v. Blizzard Ent., Inc.*,
   76 Cal. App. 5th 931 (2022)..................................................................................................17

*Bakersfield Coll. v. California Cmty. Coll. Athletic Assn.*,
   41 Cal. App. 5th 753 (2019)..................................................................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................3

*Belozerov v. Gannett Co.*,
   646 F. Supp. 3d 310 (D. Mass. 2022)....................................................................................8

*Beltran v. Sony Pictures Entertainment, Inc.*,
   Case No. 22-cv-04858 (N.D. Ill. Sep. 28, 2023) .................................................................21

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022).....................................................................................14, 17, 19

*Campos v. Tubi, Inc.*,
   2024 WL 496234 (N.D. Ill. Feb. 8, 2024)..............................................................................9

*Canady v. Bridgecrest Acceptance Corp.*,
   2022 WL 279576 (D. Ariz. Jan. 31, 2022) ............................................................................4

*Cappello v. Walmart Inc.*,
   2019 WL 11687705 (N.D. Cal. Apr. 5, 2019).......................................................................12

*Capps v. JPMorgan Chase Bank, N.A.*,
   2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) ......................................................................19

*Carranza v. Terminix Int'l Co. Ltd. P'ship*,
   529 F. Supp. 3d 1139 (S.D. Cal. 2021) ...................................................................5

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002) .............................................................................14

*Clough v. Highway Auto. Pros LLC*,
   2023 WL 4295348 (C.D. Cal. May 23, 2023) ......................................................23

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ..................................................................16

*Colopy v. Uber Techs. Inc.*,
   2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) ........................................................4

*Comin v. Int'l Bus. Machines Corp.*,
   2021 WL 463431 (N.D. Cal. Feb. 9, 2021) ...........................................................23

*Cullinane v. Uber Techs., Inc.*,
   893 F.3d 53 (1st Cir. 2018) ............................................................................16, 17

*Discover Bank v. Sup. Ct.*,
   36 Cal. 4th 148 (2005) .........................................................................19, 20, 21

*Doe v. Massage Envy Franchising, LLC*,
   87 Cal. App. 5th 23 (2022) ...................................................................................14

*Duguid v. Facebook, Inc.*,
   2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ......................................................11

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ..................................................................................6

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ............................................................................22

*Fan v. NBA Properties Inc.*,
   2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ..................................................8, 23

*Feldman v. Star Trib. Media Co. LLC*,
   659 F. Supp. 3d 1006 (D. Minn. 2023) ...................................................................7

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011)...................................................................10

*Freedline v. O Organics*,
   2020 WL 6290352 (N.D. Cal. Oct. 27, 2020) .......................................................23

*Fuentes v. Dish Network L.L.C.*,
   2020 WL 12044145 (N.D. Cal. Feb. 28, 2020).......................................................4

*Gentry v. Superior Court*,
   42 Cal. 4th 443 (2007) ..........................................................................................20

*Gerritsen v. Warner Bros. Entm't Inc.*,
2015 WL 4069617 (C.D. Cal. Jan. 30, 2015) ..................................................... 11

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ........................................................... 6, 7

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ............................................................... 7

*Hassell v. Uber Techs., Inc.*,
2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) ...................................................... 4

*Hooper v. Jerry Ins. Agency, LLC*,
675 F. Supp. 3d 1027 (N.D. Cal. 2023) ........................................................... 19

*In re Hulu Priv. Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .................................................. 22

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .................................................... 6

*In re Immune Response Sec. Litig.*,
375 F.Supp.2d 983 (S.D. Cal. 2005) ............................................................... 10

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) .............................................................. 5

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .................................................................... 14, 19

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) .................................................. 7, 22

*Karim v. Best Buy Co.*,
2023 WL 3801909 (N.D. Cal. June 2, 2023) ..................................................... 18

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ................................................................ 9, 10, 11

*Klussman v. Cross Country Bank*,
134 Cal. App. 4th 1283 (2005) ...................................................................... 19

*Lawrence v. Finicity Corp.*,
2024 WL 584615 (E.D. Cal. Feb. 13, 2024) ................................................ 15, 17

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ........................................................... 23

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......................................................................... 9

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ................................................................... 17

*Long v. Provide Com., Inc.*,
   245 Cal. App. 4th 855 (2016) .................................................................................14

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ...............................................................................25

*Lopez v. Thyssenkrupp*,
   2024 WL 3211492 (N.D. Cal. June 28, 2024) ........................................................20

*Lyons v. Coxcom, Inc.*,
   718 F. Supp. 2d 1232 (S.D. Cal. 2009) ....................................................................5

*Maree v. Deutsche Lufthansa AG*,
   2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .....................................................15, 16

*Martinez v. D2C, LLC*,
   2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) .....................................................7, 8, 9

*Mason v. Ashbritt, Inc.*,
   2020 WL 789570 (N.D. Cal. Feb. 17, 2020) ............................................................5

*Massel v. SuccessfulMatch.com*,
   2024 WL 802194 (N.D. Cal. Feb. 27, 2024) ..........................................................18

*McArdle v. AT & T Mobility LLC*,
   657 F. Supp. 2d 1140 (N.D. Cal. 2009) ..................................................................21

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
   2023 WL 5836976 (N.D. Cal. Sept. 8, 2023) .........................................................10

*Muro v. Cornerstone Staffing Sols., Inc.*,
   20 Cal. App. 5th 784 (2018) .............................................................................19, 20

*N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*,
   2016 WL 9046909 (C.D. Cal. Sept. 21, 2016) .......................................................24

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .........................................................................14, 15

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ...........................................................................23

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ..................................................................................17

*Oestreicher v. Alienware Corp.*,
   322 F. App'x 489 (9th Cir. 2009) ...........................................................................20

Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.,
   783 F.3d 1045 (6th Cir. 2015) .................................................................................4

*Ott v. Mortg. Invs. Corp. of Ohio*,
   65 F. Supp. 3d 1046 (D. Or. 2014) ...........................................................................5

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014).................................................................4

*Pride v. Correa*,
  719 F.3d 1130 (9th Cir. 2013).............................................................................5

*Prizler v. Charter Commc'ns, LLC*,
  2019 WL 2269974 (S.D. Cal. May 28, 2019) .....................................................14

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
  39 F.4th 1158 (9th Cir. 2022)..............................................................................9

*Punian v. Gillette Co.*,
  2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) ...................................................11

*Quezada v. California*,
  2021 WL 2417119 (E.D. Cal. June 14, 2021) ....................................................24

*Roberts v. Corrothers*,
  812 F.2d 1173 (9th Cir. 1987)..............................................................................6

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004)..............................................................................5

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009)..................................................................5

*Schippell v. Johnson & Johnson Consumer Inc.*,
  2023 WL 6178485 (C.D. Cal. Aug. 7, 2023) .....................................................11

*Sellers v. Bleacher Rep., Inc.*,
  2023 WL 4850180 (N.D. Cal. July 28, 2023) ..................................6, 7, 13, 18

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (2021)..........................................................................14, 18

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
  666 F. Supp. 3d 1089 (C.D. Cal. 2023)..............................................................18

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)..............................................................................24

*Stiner v. Brookdale Senior Living, Inc.*,
  665 F. Supp. 3d 1150 (N.D. Cal. 2023)..............................................................24

*Suski v. Marden-Kane, Inc.*,
  2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ...................................................19

*Tawam v. Feld Ent. Inc.*,
  684 F. Supp. 3d 1056 (S.D. Cal. 2023)..............................................................22

*Thorpe v. Abbott Lab'ys, Inc.*,
  534 F. Supp. 2d 1120 (N.D. Cal. 2008)................................................................4

*Turner v. Porsche Cars N. Am., Inc.*,
    2023 WL 8788754 (C.D. Cal. Dec. 19, 2023)..........................................................................21

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ...................................................................................................3

*Varsam v. Lab'y Corp. of Am.*,
    120 F. Supp. 3d 1173 (S.D. Cal. 2015) ...................................................................................5

**Statutes**

18 U.S.C. § 2710 ..............................................................................................................passim

**Other Authorities**

Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 23 (2020)....4

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issues:

1. Whether Plaintiffs adequately plead the disclosure of personally identifiable information within the meaning of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") based on their allegations that Mindvalley, Inc. ("Mindvalley") disclosed Plaintiffs' Facebook IDs and video-viewing histories on Mindvalley's website.

2. Whether the Court should decline to take Judicial Notice of pages on Mindvalley's website that Plaintiffs do not reference in the First Amended Class Action Complaint and upon which their VPPA claims are not based.

3. Whether Mindvalley met its burden to show Mindvalley obtained Plaintiffs' consent in the separate and distinct form required by the VPPA and provided the clear and conspicuous right to opt out of the transmission of their Facebook IDs and video-viewing histories to Facebook.

4. Whether the hyperlinks on Mindvalley's "Create Account" and "Checkout" pages are sufficiently conspicuous to bind Plaintiffs to the class action waiver in Mindvalley's Terms and Conditions.

5. Whether Mindvalley's class action waiver, which is not paired with an arbitration clause, is unconscionable under California law.

6. Whether Plaintiffs, who are Mindvalley accountholders, have standing to assert VPPA claims on behalf of absent Mindvalley accountholders.

7. Whether Plaintiffs' equitable relief is properly pleaded.

8. Whether Plaintiffs should be granted leave to amend if the Court grants any part of Mindvalley's motion.

Plaintiffs Patricia Gooiker and William Finley, individually and on behalf of all others similarly situated, hereby submit their memorandum of law in opposition to Defendant Mindvalley, Inc.'s ("Mindvalley" or "Defendant") Motion to Dismiss Amended Complaint and Strike Class Allegations, ECF 28 ("Motion" or "Mot."), and Request for Judicial Notice, ECF 29 ("RJN").

## I.   INTRODUCTION

When first enacted, the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was the latest in "a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals." S. REP. 100-599, at 2 (1988). By passing the VPPA, Congress sought to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id*. at 1. Congress noted that the videos we select for consumption in our private lives:

> are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people.

ECF 24, First Amended Complaint ("FAC") ¶ 20. Accordingly, the VPPA prohibits "video tape service providers" from disclosing "information which identifies a person as having requested or obtained specific video materials or services" without informed written consent and clear opt-out rights. 18 U.S.C. § 2710.

Mindvalley is one such "video tape service provider." It incorporates technologies into its platform to track individuals' video request and viewing histories, which Mindvalley uses for marketing purposes. *E.g.*, FAC ¶¶ 3-6. Each time a user requests video content, Mindvalley discloses to third-party marketing companies information that reveals both the identity of the individual user and the specific video materials requested. *Id*. Mindvalley users do not consent to these disclosures in the form required by the VPPA, and Mindvalley does not provide Plaintiffs the right to opt out of the transmission of their protected personal information to Facebook. Mindvalley's conduct was, therefore, unlawful.

Mindvalley's arguments to the contrary—*e.g.*, that Plaintiffs fail to plausibly allege the disclosure of "personally identifiable information" and that Plaintiffs consented to the disclosures through generic privacy policies and a cookie banner—have been raised and rejected numerous times by courts in this District and around the country. Faced with plausible class-wide VPPA liability, Mindvalley points to a class action waiver buried in the terms and conditions on its website. But Plaintiffs did not agree to the waiver, as it was hidden in an inconspicuous location and Plaintiffs were not on inquiry notice. And even if Plaintiffs had adequate notice of the waiver (and they did not), it is nevertheless unconscionable, and thus unenforceable, because its sole purpose and effect is to immunize Mindvalley from liability by making it economically unworkable for Mindvalley users to pursue their claims in court.

Mindvalley's Motion should be denied in its entirety.

## II.   <u>FACTUAL ALLEGATIONS</u>

Mindvalley owns and operates an online video request and streaming platform called "Mindvalley.com" that offers a catalogue of educational courses and content for consumers to watch online for a subscription fee. FAC ¶¶ 1-2, 23-24. Mindvalley users create an account, take a personalized assessment, input their personal information (*e.g.*, first and last name, email, zip code, and state), input payment information, and verify their email address. *Id*. ¶¶ 27-31. Users then can request specific videos to watch (*id*. ¶¶ 37-39) and otherwise access other exclusive or restricted Mindvalley services (*id*. ¶ 33).

Mindvalley systematically collects a significant amount of information from its users, including the specific titles of the videos that users request on Mindvalley.com, their purchases of video and other content, and other information about their interaction with Mindvalley's videos. FAC ¶¶ 66-72. This data is collected by technologies that Mindvalley integrated into its platform. *Id*. ¶ 66. One of those technologies is the Facebook Pixel. *Id*. The Facebook Pixel is a piece of code designed to track users' activities online. *Id*. ¶¶ 41, 55-56. The Facebook Pixel sends this data to Facebook's parent company, Meta, which uses it to create "custom audiences" for Mindvalley's ads. *Id*. ¶¶ 63. The data collected and disclosed by the Facebook Pixel includes, among other things: (a) the user's Facebook ID, which is a unique and persistent numerical

identifier that can be used by anyone to identify the user in the real world; (b) HTTP header information, including the URL of each Mindvalley page visited, which expressly references the title of the video content requested; and (c) actions that the user takes on the Mindvalley platform (called "Events" or "event data"), which track the user's interaction with the content on each Mindvalley page. *Id.* ¶¶ 41-65.

For example, if a Mindvalley user wants to watch the Mindvalley video titled *Superbrain*, they can request that video on the Mindvalley platform. FAC ¶ 68. After selecting the requested content from the search results, the user is transported to a title-specific webpage with the name of the video in the URL—in this case: Mindvalley.com/quests/en/**superbrain**. *Id.* ¶ 68. Simultaneously with directing the user to that page, Mindvalley discloses to Meta the user's Facebook ID (which identifies the user) and the URL (which includes the name of the video content requested). *Id.* ¶ 69.

Plaintiffs created accounts on Mindvalley within the last two years, paid for their subscriptions, and requested and watched videos on Mindvalley.com. FAC ¶¶ 14-15. Plaintiffs had Facebook accounts (and thus Facebook IDs) during that same time period. *Id.* Through the systematic process described above, Mindvalley disclosed to third parties information identifying Plaintiffs as having requested or obtained specific video materials or services on Mindvalley. *Id.*

### III.  LEGAL STANDARDS

#### A.  Motion to Dismiss for Failure to State a Claim

At the pleading stage, courts accept a plaintiff's allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). A motion to dismiss will be denied if the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B. Motion to Strike Class Allegations**

Courts in this District disfavor motions to strike under Rule 12(f) and "will likely summarily deny such a motion." *Hassell v. Uber Techs., Inc.*, 2020 WL 7173218, at *12 (N.D. Cal. Dec. 7, 2020) (holding that "the court disfavors issuing a decision on whether this action should proceed on a class-wide basis absent a fully briefed motion for class certification following the opportunity for discovery");[1] *see also Colopy v. Uber Techs. Inc.*, 2019 WL 6841218, at *10 (N.D. Cal. Dec. 16, 2019) ("Courts disfavor motions to strike class allegations because issues related to class allegations are generally more appropriately resolved on a motion for class certification."); *Thorpe v. Abbott Lab'ys, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) (same); Perkins *v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014) (finding that "the 'rigorous analysis' contemplated by the Supreme Court's recent class certification rulings requires discovery and development of the record"). Indeed, "courts have concluded that class allegations should be tested in the context of a motion for class certification rather than on a motion to strike." *Fuentes v. Dish Network L.L.C.*, 2020 WL 12044145, at *2 (N.D. Cal. Feb. 28, 2020). As the court in *Canady v. Bridgecrest Acceptance Corp.*, 2022 WL 279576 (D. Ariz. Jan. 31, 2022) explained:

> Not only are Rule 12(f) motions to strike 'viewed with disfavor' and 'not frequently granted,' but the text of Rule 12(f) provides that a motion to strike may only be directed at an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. These limited categories do not map neatly onto a class allegation. Such an allegation is not a defense, is not redundant, is not impertinent, and is not scandalous. At most, it might be said that a facially deficient class allegation is 'immaterial,' but even that is something of a stretch.

*Id.* at *3 (citing Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co., 783 F.3d 1045, 1050 (6th Cir. 2015) and 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 23, at 632 (2020) (characterizing as "problematic" the use of Rule 12(f) to strike class allegations)); see also Fuentes, 2020 WL 12044145, at *2 ("To the extent Defendant

---

[1] Emphasis added and internal citations omitted throughout unless otherwise noted.

1    relies on Rule 12(f), the Court concludes the class allegations are not redundant, immaterial,

2    impertinent, or scandalous").

3            Other courts in the Ninth Circuit agree. *See*, *e.g.*, *Varsam v. Lab'y Corp. of Am.*, 120 F.

4    Supp. 3d 1173, 1184 (S.D. Cal. 2015) ("It is more appropriate for such arguments to be

5    presented at the class certification stage of the litigation"); *Lyons v. Coxcom, Inc.*, 718 F. Supp.

6    2d 1232, 1235–36 (S.D. Cal. 2009) (holding that "motions to strike class allegations are

7    generally disfavored because a motion for class certification is a more appropriate vehicle"); *Ott*

8    *v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014) (holding that "motions to

9    strike class allegations are generally disfavored because a motion for class certification is a more

10   appropriate vehicle for testing the validity of class claims"). As the court cautioned in *In re Wal-*

11   *Mart Stores, Inc. Wage & Hour Litig.*, motions to strike class claims at the pleading stage "are

12   often used as a delay tactic." 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). "Before a motion to

13   strike is granted, the court must be convinced that any questions of law are clear and not in

14   dispute, and that under no set of circumstances could the claim or defense succeed." *Sanders v.*

15   *Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). As such, "the granting of motions to

16   dismiss class allegations before discovery has commenced is rare." *Carranza v. Terminix Int'l*

17   *Co. Ltd. P'ship*, 529 F. Supp. 3d 1139, 1143 (S.D. Cal. 2021) (citing *In re Wal-Mart*, 505 F.

18   Supp. 2d at 614); *see also Mason v. Ashbritt, Inc.*, 2020 WL 789570, at *4 (N.D. Cal. Feb. 17,

19   2020) ("Courts that have stricken class allegations at the pleading stage . . . have only done so in

20   rare occasions where the class definition is obviously defective in some way").

21      **C. Motion to Dismiss for Lack of Standing**

22           "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v.*

23   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Mindvalley asserts a facial attack on

24   Plaintiffs' standing because it contends that the allegations contained in the FAC are insufficient

25   on their face to invoke federal jurisdiction. In a facial jurisdictional challenge, the Court takes all

26   factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's

27   favor. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). A motion under 12(b)(1) is "not

28   appropriate for determining jurisdiction . . . , where issues of jurisdiction and substance are

intertwined," such that "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

## IV.   **ARGUMENT**

### A.   **Plaintiffs State a VPPA Claim**

1.   *Plaintiffs Allege Disclosure of Their PII*

The VPPA prohibits the disclosure of "personally identifying information concerning any consumer" without informed written consent and clear opt-out rights. 18 U.S.C. § 2710(b)(1). The term "personally identifiable information" ("PII") includes, but is not limited to, "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Thus, to qualify as PII under the VPPA, the disclosure must include: (a) "information which identifies a person," and (b) the "specific video materials or services" the person "requested or obtained." *Id.*

With respect to "information which identifies a person," a plaintiff can allege that the disclosure contained either: (a) "information that, standing alone, identifies a person," or (b) "information that *can be used* to identify an individual" (*e.g.*, information that "*cannot* identify an individual unless it is combined with other data in [the recipient's] possession"), so long as the disclosure of such information "readily permit[s] an ordinary person" to identify the individual. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984-85 (9th Cir. 2017) (emphasis in original). Facebook IDs fall into the first bucket. *See, e.g.*, *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *4–5 (N.D. Cal. July 28, 2023) (holding that a Facebook ID "is a unique identifier that is enough, on its own, to identify a person"); *cf. In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user."); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII.") (collecting cases).

With respect to whether the disclosure included the "specific video materials or services," "electronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA." *Ghanaat*, 689 F. Supp. 3d at 720-721 (citing *Feldman v. Star Trib. Media Co. LLC*, 659

F. Supp. 3d 1006, 1021 (D. Minn. 2023) (collecting cases)). Thus, a plaintiff can allege, among other things, that the information included: (a) the name or identification number of a video; (b) the subject matter of a video; or (c) the URL where the video is located online. *Sellers*, 2023 WL 4850180, at *3 ("[P]laintiff alleges that [the defendant] uses the Facebook pixel to disclose 'the content name of the video the digital subscriber watched,'" which is "enough at the pleading stage"); *Martinez v. D2C, LLC*, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) ("[T]he Court agrees with other courts that have had no difficulty concluding that alleging, generally, that a defendant disclosed the 'name of the video the digital subscriber watched' is sufficient."); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160 n.10 (S.D.N.Y. 2023) (denying motion to dismiss where "the FAC plausibly alleges that the disclosure … identifies the *subject matter* of the viewed video"); *Adams v. Am.'s Test Kitchen, LP,* 680 F. Supp. 3d 31, 42 (D. Mass. 2023) (rejecting the argument that the disclosure did not sufficiently identify the video because "a simple visit to the [disclosed] URL would provide any third party who receives the information confirmation of the specific video requested or obtained").

Applying these concepts, courts regularly deny motions to dismiss where the defendant disclosed, via the Meta Pixel, both: (a) an individual's Facebook ID, and (b) information regarding the videos the user requested or obtained. For example, in *Ade v. Viki, Inc.*, the plaintiff alleged that the defendant impermissibly "disclosed its users' identities and video-viewing preferences to [Meta] through the Meta Pixel." 2024 WL 1880153, at *1 (N.D. Cal. Mar. 28, 2024). The court held that the general allegations of PII disclosure—*i.e.*, that the defendant sent the plaintiffs' "PII, including [their] FID[s], as well as the title of each prerecorded video [they] viewed"—were sufficient at the pleading stage. *Id.* at *2; *see also Sellers*, 2023 WL 4850180, at *4-5 (similar); *Ghanaat*, 689 F. Supp. 3d at 720 (similar); *Martinez*, 2023 WL 6587308, at *3 ("[T]he Court agrees with other courts that have had no difficulty concluding that alleging, generally, that a defendant disclosed the 'name of the video the digital subscriber watched' is sufficient."); *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (PII plausibly disclosed where "Jackson alleges that Fandom shared her Facebook Profile ID and the title of the videos she watched with Meta"); *Fan v. NBA*

*Properties Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) ("Fan alleges that a Facebook ID is personally identifiable information because it "allows anybody . . . to identify the individual purchaser" and "all personal information publicly listed on that profile. The Court finds that this is sufficient as a pleading matter."); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314 (D. Mass. 2022) (same) (citing cases).

Here, the FAC alleges that Plaintiffs requested and watched videos on the Mindvalley platform. FAC ¶¶ 4, 41-77. Every time Plaintiffs did so, Mindvalley disclosed to Meta: (1) Plaintiffs' Facebook ID; and (2) information sufficient to identify the videos they requested or obtained. *Id.* These allegations are more than sufficient to plausibly allege the disclosure of PII at the pleading stage.

Mindvalley's argument that Plaintiffs fail to allege PII because Plaintiffs don't allege "*what* they believe the Meta Pixel was tracking on the pages they allegedly visited at the times that they visited them," Mot. at 12 (emphasis in original), ignores Plaintiffs' actual allegations that describe specifically "what" Mindvalley was tracking—their identity and video viewing history. FAC ¶¶66-72. Mindvalley offers no VPPA caselaw to support its argument that Plaintiffs must allege "which Mindvalley pages they visited," "how the Meta Pixel allegedly operates on those specific pages," the "date [the Meta Pixel] was operative," or whether "they watched any videos on a web browser" (or another device). Mot. at 12. Nor does Mindvalley cite any authority for its claim that Plaintiffs must plead additional "factual enhancement." *See* Mot. at 12. Plaintiffs are not aware of any authority requiring such allegations to satisfy Rule 8, which the parties agree applies to Plaintiffs' VPPA claims.

Mindvalley's argument that Plaintiffs must plead the types of details it identifies under Rule 8 has been repeatedly rejected by courts addressing similar claims—Plaintiffs have "no requirement" to "allege details such as whether he was logged into his Facebook and nbatopshot.com accounts at the same time, or that he disclose the title of the specific videos that he purchased." *Fan*, 2024 WL 1297643, at *2 (citing *Martinez*, 2023 WL 6587308, at *3 (finding "no support" for argument that VPPA plaintiffs must "identify the actual titles that they allege were disclosed" and that "the Court agrees with other courts that have had no difficulty

concluding that alleging, *generally*, that a defendant disclosed the 'name of the video the digital subscriber watched' is sufficient")). Indeed, Mindvalley would require Plaintiffs to plead "the circumstances of every alleged disclosure with particularity," but that is not required under Rule 8. *Campos v. Tubi, Inc.*, 2024 WL 496234, at *2 (N.D. Ill. Feb. 8, 2024). Plaintiffs in a VPPA case have to plead only that "specific titles were disclosed." *Martinez*, 2023 WL 6587308, at *3 (collecting cases). And that is what Plaintiffs have done. FAC ¶¶ 66-72.

Moreover, Mindvalley suggests the FAC is ambiguous because Mindvalley has "to guess which domain [*i.e.*, Mindvalley's default domain or its members-only domain] and relevant website code applies to the allegations." Mot. at 12.  The FAC alleges the Pixel operates on both domains. FAC ¶ 27 n.2. The FAC is, therefore, not ambiguous, and Mindvalley has sufficient notice to defend itself.

### 2.   *Plaintiffs Never Consented to Disclosure of Their PII*

#### a.   *The Six Extraneous Exhibits Are Not Subject to Judicial Notice*

Mindvalley argues that Plaintiffs consented to disclosure of their PII. Mindvalley bases this argument on six extraneous documents that are the subject of its Request for Judicial Notice. ECF 29. As an initial matter, the Court should not consider Mindvalley's evidence when ruling on Mindvalley's motion to dismiss.

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions to this rule: (1) the incorporation-by-reference doctrine, and (2) judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Neither exception can be used by a defendant to "present their own version of the facts at the pleading stage." *Id.* at 999. Thus, even when extrinsic documents are properly before the Court at Rule 12, they cannot be used to resolve factual disputes against Plaintiffs' allegations at the pleading stage. *Id.* at 1003, 1014; *see also Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022) (same).

Here, Mindvalley's documents were not incorporated into the FAC by reference. A document can be incorporated by reference in two ways: (1) if it is "extensively" referenced in

the complaint; or (2) if the plaintiff's claims "necessarily" depend on the document such that it "forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002-04. The FAC does not reference any of the exhibits in the RJN *at all*, let alone "extensively" reference them as it must to trigger incorporation. Mindvalley contends that the exhibits are referenced in the FAC because "Plaintiffs have presented in the FAC partial screenshots from Mindvalley's website" (Mot. at 2 (citing FAC ¶¶ 39, 68–69)) and because the FAC discusses the account-creation process (*id.* (citing FAC ¶¶ 27–32, 39, 68–69, 86)). But the screenshots in the FAC are from *different* pages of Mindvalley's website than those depicted in the exhibits Mindvalley seeks to put before the Court. The FAC may have incorporated the entirety of the specific pages screenshot therein, but it did not incorporate *other* pages created by Mindvalley that are *not* included in the FAC. *See Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 2023 WL 5836976, at *3 n.2 (N.D. Cal. Sept. 8, 2023) ("other parts of the website purportedly describing use instructions" are not "properly considered under the incorporation by reference standard when the FAC does not cite them"); *cf. Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011) (taking judicial notice of document from defendant's website that was cited in the complaint, but denying request for judicial notice as to other webpages created by the defendant).

Nor do Mindvalley's Privacy Policies, Terms and Conditions, Cookie Banner, Create Account page, or Checkout page "form the basis" of Plaintiffs' claims. At most, those documents create a defense to Plaintiffs' allegation that they did not consent to the disclosures (in the form required by the VPPA). But, as the Ninth Circuit has held, documents do not "form the basis" of a plaintiff's claims merely because they "create a defense to the well-pled allegations." *Khoja*, 899 F.3d at 1002. "Otherwise, [Mindvalley] could use the [incorporation-by-reference] doctrine to insert their own version of events" at the pleading stage. *Id.*; *see also In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 995–96 (S.D. Cal. 2005) (declining to incorporate numerous exhibits where defendant "offer[ed] the documents as evidence that Defendants did not commit a securities violation," but the complaint did not mention or rely on them).

Mindvalley argues that its exhibits are also subject to judicial notice because they are publicly available online and Plaintiffs cannot reasonably question their authenticity. RJN at 1.

Contrary to Mindvalley' argument, courts have unequivocally held that, where "the sole justification for judicial notice is that the information or documents appear on websites that are created and maintained by a party to the litigation, judicial notice is improper." *Schippell v. Johnson & Johnson Consumer Inc.*, 2023 WL 6178485, at *4 (C.D. Cal. Aug. 7, 2023). *See also Duguid v. Facebook, Inc.*, 2016 WL 1169365, at *2–3 (N.D. Cal. Mar. 24, 2016) (similar); *Punian v. Gillette Co.*, 2015 WL 4967535, at *5 (N.D. Cal. Aug. 20, 2015) (same, collecting cases); *Gerritsen v. Warner Bros. Entm't Inc.*, 2015 WL 4069617, at * 10 (C.D. Cal. Jan. 30, 2015) (same). Thus, the Court should decline Mindvalley's invitation to judicially notice the documents.

Finally, contrary to Mindvalley's argument, the evidentiary doctrine of completeness is not an independent basis for judicial notice (*Khoja*, 899 F.3d at 998) but rather permits a court to consider the complete version of a document already before the court. *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039, at *5 (N.D. Cal. Sept. 25, 2013). Since none of the exhibits are subject to judicial notice, the evidentiary doctrine of completeness is irrelevant. Mindvalley suggests that Plaintiffs "cropped out" its Cookie Banner from the images Plaintiffs screenshot in the FAC. Mot. at 13-14. That is not true. Even Mindvalley's image of its Cookie Banner does not contain *the rest* of any image that is screenshot in the FAC.

### b.   Mindvalley Did Not Obtain Consent in the Form Required by the VPPA or Provide Clear Opt-Out Rights

Even if Mindvalley's documents were properly before the Court (and they are not), its consent argument still fails for two reasons. First, "the issue of consent is not suitable for decision on a motion to dismiss." *Ade*, 2024 WL 1880153, at *4. Second, and in any event, the policies and cookie banner Mindvalley relies on do not comply with the VPPA's requirements.

To lawfully share users' PII, the VPPA requires the video tape service provider to: (a) obtain "informed, written consent … *in a form distinct and separate* from any form setting forth other legal or financial obligations of the consumer"; and, separately, (b) "provide[] an opportunity, in a *clear and conspicuous manner*, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. §

2710(b)(2)(B). Mindvalley's Privacy Policies or Cookie Banner (ECF Nos. 28-2, 28-3, 28-5) cover legal and financial obligations beyond the disclosure of users' video viewing history and are thus not "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," as required by the VPPA. And none of Mindvalley's documents provide clear or conspicuous opt-out rights for the Facebook Pixel (and one does not provide any opt-out rights at all).

While Mindvalley cites no VPPA caselaw in support of its consent argument, caselaw from this District that Mindvalley ignores clearly supports Plaintiffs' position. In a similar case involving the disclosure of consumers' video purchase histories to Facebook (now Meta), the court held:

> the plain language of the VPPA does indeed require video tape service providers to (1) request consumers' consent to a privacy disclosure that addresses *only* the use of personally identifiable information connected with video purchases and no other privacy topic, and (2) obtain the act of consent *separately* from the consumer's agreement to the retailer's terms of use, general privacy policy, and the commercial terms of the purchase."

*Cappello v. Walmart Inc*., 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019). As such, the *Cappello* court rejected defendant's consent defense as it could not show it "provided consumers with a consent form dedicated *solely* to informing consumers of [defendant's] intent to share their personally identifiable information with Facebook." *Id*. at *2 (emphasis in original). The same is true here. Mindvalley cannot point to a single form which *solely* informs consumers like Plaintiffs they will be sharing their video viewing history with Meta or provides clear opt-out rights. Other companies have such a distinct and separate form that provides clear opt-out rights. *See, e.g*., https://www.nbc.com/general/pages/vppa.

***Mindvalley's Privacy Policy in effect through June 23, 2023.*** (ECF 28-1, ¶ 3, ECF 28-2, Ex. A.) This Policy contains information about Mindvalley's children's privacy statement and the European Union's General Data Privacy Rights (GDPR). This Policy also includes information on other subjects, such as "Login From Integrations," "Third Party Integration," "Affiliate Links," and "Online Shopping." Mindvalley even highlighted the Policy to show the portion of the Policy it contends discloses how it uses consumer's data—and the highlighted

portion takes up a little more than a paragraph in a 6-page document. Nor does the highlighted portion state that Mindvalley shares users' video viewing history with Facebook. Moreover, this Policy does not contain clear and conspicuous opt-out rights for the Facebook Pixel that comply with the VPPA. Buried in the fine print, the Policy indicates that to opt out of the sale of personal information under the California Consumer Privacy Act ("CCPA") the user should follow the instructions through third-party browsers to "opt-out of receiving ads." ECF 28-2 at 7. That is not a right to opt out of transmitting users' information to advertisers in the first place.

***Mindvalley's Privacy Policy in effect from June 23, 2023 through the present.*** (ECF 28-1, ¶ 4, ECF 28-3, Ex. B.). This Policy likewise contains information about Mindvalley's children's privacy statement, other California legal disclosures, and the GDPR. This Policy does not contain clear and conspicuous opt-out rights that comply with the VPPA. Again buried in the fine print, this Policy contains a similar CCPA disclosure as in the Privacy Policy in effect through June 23, 2023 that does not comply with the VPPA. ECF 28-3 at 4-5.

***Mindvalley's Cookie Banner.*** (ECF 28-1, ¶ 6, ECF 28-5, Ex. D.). As an initial matter, Plaintiffs did not consent to be bound by the Cookie Banner so it cannot be a basis for VPPA consent. *Sellers*, 2023 WL 4850180, at *7 (plaintiff not bound by pop-up banner because it was "buried at the bottom of the page and did not prevent the user from accessing the site" and "Plaintiff was not required to affirmatively acknowledge the agreement in any way"). Indeed, Mindvalley does not even argue that the Cookie Banner was sufficiently conspicuous to bind Plaintiffs. Mot. at 9 (citing Mindvalley Privacy Policies, Atallah Decl. ¶¶ 7–8, Exs. E–F). In any event, this Cookie Banner does not state that Mindvalley intends to share consumers' video viewing histories with Facebook and does not contain any opt-out rights.[2]

---

[2] Mindvalley argues in a footnote that the class definition needs to exclude subscribers who consented to the disclosure. Mot. at 16 n.3. Because Mindvalley did not obtain VPPA-complaint consent for any class member, there are no class members to exclude on this basis.

Mindvalley's caselaw is irrelevant. Mindvalley's quotation to *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002) does not appear in the case. And *Prizler v. Charter Commc'ns, LLC*, 2019 WL 2269974, at *3 (S.D. Cal. May 28, 2019) involves the contract principle that continued use of a service may constitute implied consent to terms and conditions, which is irrelevant to whether Mindvalley complied with the VPPA.

**B. Mindvalley's Class Action Waiver Is Unenforceable**

Mindvalley argues that Plaintiffs' claims are barred by the class action waiver buried in the terms and conditions on its website. That class action waiver is unenforceable here for two reasons. First, Plaintiffs did not agree to Mindvalley's terms and conditions, as the hyperlinks purportedly directing Plaintiffs to that agreement were too inconspicuous to put them on inquiry notice. Second, and in any event, the class action waiver is unconscionable (and thus unenforceable) under California law.

1. *The Hyperlinks to the Terms and Conditions Are Too Inconspicuous to Bind Plaintiffs*

On the internet, a consumer is often ambushed by fleeting contractual hyperlinks "without any forewarning that he or she should also be on the lookout for a reference to 'Terms of Use' somewhere on the Web site's various pages." *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 866 (2016). Whether any particular hyperlink is sufficient to bind the consumer to the underlying agreement depends on conspicuousness of the hyperlink when viewed in "*the full context of [the] transaction.*" *Doe v. Massage Envy Franchising, LLC*, 87 Cal. App. 5th 23, 31 (2022) (emphasis in original) (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 454 (2021)). When judging whether a particular hyperlink is sufficiently conspicuous, courts applying California law must put themselves in the shoes of the consumer and ask, whether, in full context, the consumer is "likely to be on the lookout for fine print." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 869 (9th Cir. 2022) (Baker, J., concurring); *accord Sellers*, 73 Cal. App. 5th at 476; *Massage Envy*, 87 Cal. App. 5th at 34. After all, "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Jackson v. Amazon.com, Inc*., 65 F.4th 1093, 1100 (9th Cir. 2023) (quoting *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1179 (9th Cir. 2014)).

1
2
3
4
5
6
7
8

Website operators can display their terms and conditions in a variety of different formats. On one end of the spectrum are "clickwrap" and "scrollwrap" agreements, which require users to affirmatively assent to the agreement's terms (either by clicking on a box stating they agree or scrolling through the agreement in its entirety before using the service). On the other end of the spectrum, "browsewrap" agreements (including "sign-up," "sign-in," or "checkout" wraps) merely display a hyperlink to the terms and conditions on the bottom of a page, and do not require the consumer to take any action demonstrating they even noticed the hyperlinks, let alone agreed to the terms of the underlying agreement.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Here, Mindvalley buried a standalone class action waiver in its Terms and Conditions ("T&Cs"). Rather than using a "clickwrap" or "scrollwrap" format, Mindvalley instead opted to use a "sign-up" and "checkout" wrap format by merely placing hyperlinks to its T&Cs on the bottom of the sign-in and checkout screens. Mot. at 9-12. "[W]ebsite designers who knowingly choose sign-in wrap . . . over clickwrap and scrollwrap designs practically invite litigation over the enforceability of their sites' terms and conditions." *Lawrence v. Finicity Corp.*, 2024 WL 584615, at *17 (E.D. Cal. Feb. 13, 2024). The enforceability of a sign-up or checkout wrap agreement "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177. "To determine whether a user has inquiry notice of the contract terms, courts assess the design and content of the website and the agreement's webpage." *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *3 (C.D. Cal. Jan. 26, 2021). Numerous courts have held that sign-up or checkout wrap agreements that merely place a hyperlink to the terms and conditions below a sign-in or check-out button are insufficiently conspicuous to put consumers on inquiry notice of the underlying agreement, including each of the following examples:

24
25
26
27
28

| *Colgate* | *Applebaum* | *Culliane* | *Maree* |
|---|---|---|---|

*Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019) (sign-up wrap design in which below the large blue button which stated "SIGN UP" and text in much smaller letters stated: "By registering with JUUL Labs, Inc., you agree to our Terms and Conditions and Privacy Policy," was insufficient to put plaintiff on inquiry notice of JUUL's terms and conditions); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 458 (S.D.N.Y. 2017) (Lyft app did not alert reasonable consumers that checking the Terms of Service box and clicking the pink "Next" bar at the bottom of the screen constituted acceptance of a contract, including an arbitration agreement); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 58 (1st Cir. 2018) (holding Terms of Service box was not reasonably conspicuous); *Maree*, 2021 WL 267853, at *4 (hyperlink was insufficient for inquiry notice where it was not displayed inside of a conspicuous and clickable box and appeared on a cluttered page nestled between several lines of extraneous, colored and bolded text).

**Mindvalley's "Create Account" sign-up (or sign-in) wrap (ECF 28-7).** The hyperlink in Mindvalley's sign-up wrap—which was inconspicuously buried under the buttons regarding alternative means to authenticate the user—was not presented in the ubiquitous blue and underline format that typically signifies a hyperlink. Rather, Mindvalley formatted the hyperlink to appear in: (a) a *different* color than the other hyperlinks on the page (*e.g.*, the links to authenticate through Google, Facebook, or Apple); and (b) the *same* color as other non-hyperlink content on the page (*e.g.* Mindvalley's logo). Worse, other, more visible agreements on the same page (*e.g.*, to "[s]ubscribe" to "Mindvalley's email newsletter") were presented in a prominent

"clickwrap" format, but the sign-in wrap hyperlink to the terms and conditions was not. ECF 28-7. This format left consumers with the impression that any agreement will be done via clickwrap and downplayed the existence and significance of the separate (and far more important) "sign-up" wrap agreement lurking at the bottom of the page. *Berman*, 30 F.4th at 857 ("Far from meeting the requirement that a webpage must take steps to capture the user's attention and secure her assent, the design and content of [defendant's] webpages draw the user's attention away from the most important part of the page.") (cleaned up); *Cullinane*, 893 F.3d at 63 ("The inclusion of the additional payment option and the placement of a large blue PayPal button in the middle of the screen were more attention-grabbing and displaced the hyperlink to the bottom of the screen.").

The sign-in wrap here is materially different from the wrap in *Oberstein* that Mindvalley contends is "most analogous." Mot. at 10 (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023)). There, the wrap was "directly above" the "Sign in" button in the traditional blue of a hyperlink. *Id*. The wrap in *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) had substantially similar design features as *Oberstein*. Moreover, the sign-in "pop-up" at issue in *B.D. v. Blizzard Ent., Inc.* "consisted primarily of a scrollable text box that contained the entire" agreement with the at-issue dispute resolution provision and the user could *not* continue using the service *without* clicking continue. Mot. at 10-11 (citing 76 Cal. App. 5th 931, 936, 951 (2022)).

***Checkout wrap (ECF 28-6).*** The checkout wrap is even less conspicuous than the sign-up wrap. This wrap (a) appears in the smallest font on the page; (b) is not in a contrasting color but in a grey that bleeds into the background; and (c) is paired with a sentence that reads, "[y]ou'll receive the latest course updates, Mindvalley news, and daily lessons," distracting consumers from the gravity of the class action waiver lurking within the T&Cs. Moreover, a user that had *already* signed up would have "no reason to be *on the lookout* for contractual terms" on the checkout page when she had "already entered into a separate transaction" to sign up for Mindvalley's video services earlier in the registration process. *Lawrence*, 2024 WL 584615, at *18 (emphasis in original).

Courts have refused to enforce sign-in wraps agreements that were far more conspicuous than Mindvalley's checkout wrap here.  For example, in *Massel v. SuccessfulMatch.com*, 2024 WL 802194, at *1 (N.D. Cal. Feb. 27, 2024) and *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1092 (C.D. Cal. 2023), the courts found the following wraps inconspicuous:



Mindvalley's lead authority—*Sellers v. JustAnswer LLC*—does more to support Plaintiffs' case than Mindvalley's. 73 Cal. App. 5th 444. Mindvalley argues that the primary reason the wraps are sufficiently conspicuous is because "[t]he line of federal cases following *Sellers* makes clear that notice is sufficient where the checkout page contains disclosures above or below the call to action stating, as they have here, that the consumer accepts and agrees to the terms." Mot. at 9. But that is not what *Sellers v. JustAnswer LLC* or that line of cases held. Indeed, both of those design features that Mindvalley argues are sufficient—hyperlink near the call to action button and language that a consumer "accepts and agrees to the terms"—are actually alone "insufficient to give rise to constructive notice." *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *7.

The rest of Mindvalley's cases are distinguishable based on the design of those pages that made them more conspicuous than the designs here. In two, the wrap had the traditional design of a hyperlink. *See Karim v. Best Buy Co.*, 2023 WL 3801909, at *3 (N.D. Cal. June 2, 2023) (wrap "directly above a yellow button that reads 'Place Your Order' . . . the hyperlinks are in blue with no other emphasis, indicating that they are active hyperlinks that the consumer could

1  click to be directed to the T&C"); *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990, at

2  *4 (E.D. Cal. Apr. 21, 2023) (wrap "directly above the 'Create Your Account' button and set off

3  in standard bright blue font"). And in *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027,

4  1035 (N.D. Cal. 2023), the bright pink hyperlink was on a webpage that was "uncluttered . . . as

5  it consist[ed] *only* of a field for a phone number, the 'Continue' button, and the text referring to

6  the Terms of Use" unlike here.

7      Mindvalley bears the burden of proving both "notice and assent." *Jackson*, 65 F. 4th at

8  1100. "Because 'online providers have complete control over the design of their websites, 'the

9  onus must be on website owners'" to clearly and explicitly "bind consumers." *Berman*, 30 F. 4th

10  at 857. Mindvalley has not met its burden here.

11      2.  *The Class Action Waiver Is Unconscionable*

12      Prior to the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

13  1740 (2011), "[c]ourts in California" did "not hesitate[] to invalidate class action waivers in the

14  appropriate circumstances." *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1293

15  (2005). Indeed, the "unavailability of class action relief" in consumer litigation was "sufficient in

16  and by itself to preclude enforcement[.]" *Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148, 159 (2005)

17  ("*Discover Bank*"). *Concepcion* may have changed the enforceability analysis with respect to

18  arbitration provisions that include a class action waiver.  But "where, as here, a class action

19  waiver is not coupled with an arbitration provision, California law on unconscionability applies."

20  *Suski v. Marden-Kane, Inc*., 2022 WL 3974259, at *4 (N.D. Cal. Aug. 31, 2022) (explaining that

21  *Concepcion* merely held that the Federal Arbitration Act preempted the *Discover Bank* rule);

22  *Muro v. Cornerstone Staffing Sols., Inc*., 20 Cal. App. 5th 784, 792-93 (2018) (same). Under

23  California law, class action waivers are unconscionable and therefore unenforceable when (1) the

24  waiver is found in a consumer contract of adhesion, (2) in a setting in which disputes between

25  the contracting parties predictably involve small amounts of damages, and (3) when it is alleged

26  that the party with the superior bargaining power has carried out a scheme to deliberately cheat

27  large numbers of consumers out of individually small sums of money. *Discover Bank*, 36 Cal.

28

4th at 162-63. The Court should have no hesitation declining to enforce Mindvalley's class action waiver because it is unconscionable under *Discover Bank*.

***Consumer contract of adhesion.*** "When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Bakersfield Coll. v. California Cmty. Coll. Athletic Assn.*, 41 Cal. App. 5th 753, 762 (2019). Here, there can be no dispute that consumers were presented the Mindvalley's T&Cs without the opportunity to negotiate. The T&Cs are a consumer contract of adhesion.

***Predictably small amount of damages.*** Under *Discover Bank*, damages are properly understood to refer to actual damages. *Discover Bank*, 36 Cal. 4th at 168 n.6 ("there is no reason to believe that attorney fee and minimal statutory damages remedies, in cases in which the amount of individual damages are slight, are adequate substitutes for class actions in vindicating consumer rights and deterring misconduct"). Mindvalley does not (and will not) contend that Plaintiffs' actual damages for a VPPA violation are large. Moreover, even if the $2,500 in statutory damages [18 U.S.C. § 2710(c)(2)A)] were relevant, *that* amount is "predictably small" under the caselaw too. *See, e.g.*, *Lopez v. Thyssenkrupp*, 2024 WL 3211492, *1 (N.D. Cal. June 28, 2024) (individual recovery of $10,000 was sufficiently "modest" to support invalidating class action waiver under California law); *Gentry v. Superior Court*, 42 Cal. 4th 443, 457-58 (2007) (reasoning that individual claims, even for an average of $6,000 each, still weighed against the enforcement of a class action waiver); *Muro*, 20 Cal. App. 5th at 792 ($26,000 predictably small amount); *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 492 (9th Cir. 2009) ($4,000 small amount). The small actual damages available are insufficient to incentivize plaintiffs' counsel to litigate without the availability of class relief; hence a class action is superior to individual suits, which would not practically go forward otherwise. FAC ¶ 85.

***Scheme that causes willful injury.*** A VPPA violation requires knowledge (18 U.S.C. § 2710(b)(1)), and it causes injury in the form of damage to Plaintiffs' privacy rights (*e.g.*, FAC ¶¶ 1, 99). Mindvalley's class action waiver is part of a scheme to invade consumers' privacy rights because its purpose and effect is to immunize Mindvalley from liability for small value claims.

*See Discover Bank*, 36 Cal. 4th at 159; *McArdle v. AT & T Mobility LLC*, 657 F. Supp. 2d 1140, 1145 (N.D. Cal. 2009) ("while customers may be able to recover the fees they were charged individually, most customers will not bother with arbitration over such a small amount of money, and thus Defendants will be able to keep the vast majority of their ill-gotten profits"). The waiver allows Mindvalley to keep its ill-gotten profits obtained by violating Plaintiffs' and the class's privacy rights, while avoiding the threat of litigation. *McArdle*, 657 F. Supp. 2d at 1145; FAC ¶¶ 74, 76, 85. Thus, the Court should conclude that it would be unconscionable to enforce the standalone class action waiver or, at the very least, that it is premature for the Court to decide this issue at the pleading stage. *See Turner v. Porsche Cars N. Am., Inc.*, 2023 WL 8788754, at *9 (C.D. Cal. Dec. 19, 2023) (citing cases).

### C. Plaintiffs Can Represent the Proposed Class

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Mindvalley contends that Plaintiffs lack standing to sue on behalf of other Mindvalley accountholders for two reasons: (a) some accountholders may not be "subscribers" because some content may be available on mindvalley.com for free and (b) some accountholders may have accessed Mindvalley video content without a "Meta ID" because they were not logged in to Facebook at the time they viewed videos on the Mindvalley platform. Mot. at 14-16. Mindvalley is wrong because Plaintiffs' class definition: (a) tracks the VPPA caselaw for "subscriber" in this District; and (b) is similar to the class definitions approved by other courts addressing class-wide resolution of similar VPPA claims, *see Beltran v. Sony Pictures Entertainment, Inc.*, Case No. 22-cv-04858 at ECF 49 ¶ 4 (N.D. Ill. Sep. 28, 2023) (approving class-wide resolution of VPPA claims based on a Meta Pixel theory on behalf of a settlement class defined as "all persons in the United States who: (1) were registered users of an online website, mobile app, or any video-on-demand service or app owned, controlled, and/or operated by [defendant]; and (2) who viewed videos on an online website, mobile app, or any video-on-demand service or app owned, controlled, and/or operated by [defendant] during the Class Period").

1

2

### 1. *Plaintiffs and Absent Class Members Are Subscribers*

Consumers can be VPPA "subscribers" even if they do not pay for the goods or services. *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012) ("*Hulu I*"). Rather, "subscriber" status requires only some sort of "ongoing commitment or relationship between the user[ ]and the entity." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015). A user is a subscriber under the VPPA where they plausibly allege: they "created a[n] account; became a registered user; provided [the service provider] with her PII, including her name and email address"; and then used [the service provider] to watch videos." *Jackson v. Fandom*, 2023 WL 4670285, at *4 (citing *Hulu I*, 2012 WL 3282960 at *7 (holding that plaintiffs were subscribers even though they did not pay money for Hulu's video streaming service, where they signed up for accounts, became registered users, and used the service)).

Here, Plaintiffs paid for Mindvalley's good and services (FAC ¶¶ 14-15), and Mindvalley concedes that Plaintiffs have standing to bring their individual VPPA claims. However, even without that payment, they would still qualify as subscribers because the FAC alleges numerous actions Mindvalley users take that demonstrate an ongoing commitment or relationship with the platform, including creating an account, becoming a registered user, providing Mindvalley with PII, including their name and email address, taking a personalized assessment, watching videos on the platform, and accessing exclusive and restricted video content, networking and motivational events. *Id*. ¶¶ 14-15, 28, 29, 31-36. Thus, regardless of whether they paid for Mindvalley's services, every absent class member within Plaintiffs' class definition is a "subscriber" under the VPPA. *Id*. ¶ 78. In its argument to the contrary, Mindvalley ignores this Court's holding in *Jackson v. Fandom* that, if the three conditions—account creation, registration, and use of platform—are satisfied, as they are here, then that satisfies the *Ellis* standard, even if a subscriber is accessing free content on the platform. 2023 WL 4670285, at *3-4 ("all of the materials on its website for free," but finding subscriber status based on account creation, registration, and use of platform).

Mindvalley's out-of-District authority, *Tawam v. Feld Ent. Inc.*, is distinguishable because it required a nexus between the subscription and the actionable video content and held

there was not one there: "Plaintiffs signed up for an email mailing list provided by Defendant and *separately* viewed videos on Defendant's website." Mot. at 15-16 (citing 684 F. Supp. 3d 1056, 1062 (S.D. Cal. 2023)). Unlike *Tawam*, other courts interpreting *Ellis* do not require a nexus between the subscription and the actionable video content. *See Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1341 (N.D. Ga. 2022). In any event, here, the nexus between the subscription and the video content is clear because the only reason Mindvalley users sign up is to view *videos* on the Mindvalley platform.

> 2.  *Plaintiffs' Class Definition Does Not Require a "Logged in to Facebook" Condition*

Mindvalley also argues that Plaintiffs do not have standing to represent absent class members under the current definition because there is no condition requiring that class members be logged into Facebook at the time of requesting or viewing videos on Mindvalley.com.

Mindvalley states courts have disposed of cases "for failure to articulate an ascertainable class with Article III standing." Mot. at 15. Even though Mindvalley uses the word "ascertainable," Plaintiffs do not understand Mindvalley to be making an "ascertainability" argument, which primarily focuses on whether the conditions in the class definition are objective (which they are here). *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Mindvalley's argument fails for two additional reasons.

*First*, this Court should decline Mindvalley's request "to get into class definition issues at the pleadings stage," because Rule 12(f) is "a poor fit" relative to Rule 23 for resolving such issues. *Comin v. Int'l Bus. Machines Corp.*, 2021 WL 463431, at *4 (N.D. Cal. Feb. 9, 2021) (citing *Freedline v. O Organics*, 2020 WL 6290352, at *1 (N.D. Cal. Oct. 27, 2020)). Indeed, "[c]ourts in this circuit repeatedly have denied motions to strike class allegations prior to discovery as premature." *Clough v. Highway Auto. Pros LLC*, 2023 WL 4295348, at *2 (C.D. Cal. May 23, 2023).

*Second*, Mindvalley's argument illustrates why this is not one of the "rare" circumstances where striking is appropriate because (a) even the named plaintiffs are not required to plead that they logged in to Facebook, *see Fan*, 2024 WL 1297643, at *2, so it cannot be a basis to strike the class definition on the pleadings; (b) the Rule 12 record does not show that logging in to

Facebook is required for Pixel transmission (as Mindvalley's argument assumes); and (c) if appropriate after discovery, any issues could be "solved by refining the class definition rather than by flatly denying class certification on that basis," *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1196 (N.D. Cal. 2023).

### D. Plaintiffs' Unjust Enrichment Claim Is Consistent with *Sonner* and Injunctive Relief Is Properly Pleaded

The VPPA specifically authorizes the Court to award "equitable relief." 18 U.S.C.A. § 2710(c)(2)(D). Mindvalley seeks dismissal of Plaintiffs' request for equitable relief under *Sonner* and its progeny. Mot. at 16 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) and progeny case). *Sonner* held that, under *Erie*, "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA")." *Id.* at 837. As such, *Sonner* does not apply to federal statutes that authorize equitable relief because the jurisdictional basis for the relief is the federal statute, not state law. *Id.* at 844 n.7 ("The cases Sonner cites apply when equitable relief is sought under a federal statute, not a state statute"). *Sonner* and its progeny are inapplicable.

Mindvalley also seeks to dismiss Plaintiffs' claim for equitable relief on the grounds that Plaintiffs did not plead "any color regarding the specific injunctive relief they seek." Mot. at 17. Mindvalley does not suggest what pleading rule applies to requests for equitable relief or the "color" it believes is required. Rule 8 does not apply to requests for relief. *See N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*, 2016 WL 9046909, at *5 (C.D. Cal. Sept. 21, 2016). Still, Plaintiffs allege that they seek equitable remedies "to end Defendant's practice of knowingly disclosing Mindvalley consumers' highly sensitive video viewing histories to third parties" (*e.g.*, to stop disclosing Mindvalley users' video viewing histories to Meta via the Meta Pixel). FAC ¶ 9. That is sufficient color to put Mindvalley on notice.

*Quezada v. California* is inapposite because it was unclear whether the plaintiff was seeking equitable relief at all and hadn't sufficiently alleged factual support for the relief. Mot. at 17 (citing 2021 WL 2417119, at *6 (E.D. Cal. June 14, 2021)). *Quezada* does not purport to

impose a pleading standard on requests for relief. In any event, Plaintiffs here plead (a) they are seeking equitable relief (FAC ¶ 100, Prayer); and (b) the factual support for the relief requested (*i.e.*, ongoing violations of the VPPA) (*Id.* ¶ 9).

## V.  <u>CONCLUSION</u>

For all the foregoing reasons, the Court should deny Mindvalley's Motion to Dismiss, Motion to Strike, and Request for Judicial Notice. If the Court dismisses any part of the Complaint, it "should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). If the Court agrees with any portion of Mindvalley's arguments, Plaintiffs request leave to amend.

Dated this 18th day of July 2024.                    DWOSKIN WASDIN LLP

                                       */s/ Eric S. Dwoskin*

                                       Eric S. Dwoskin (admitted *pro hac vice*)
                                       433 Plaza Real, Ste. 275
                                       Boca Raton, FL 33432
                                       Phone: (561) 849-8060
                                       edwoskin@dwowas.com

                                       Julie C. Erickson
                                       Elizabeth A. Kramer
                                       Kevin M. Osborne
                                       ERICKSON KRAMER OSBORNE LLP
                                       44 Tehama St.
                                       San Francisco, CA 94105
                                       Phone: 415-635-0631
                                       Fax: 415-599-8088
                                       julie@eko.law
                                       elizabeth@eko.law
                                       kevin@eko.law

                                       *Attorneys for Plaintiffs and the Putative Class*

## E-FILING ATTESTATION

I, Kevin M. Osborne, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Kevin M. Osborne*
Kevin M. Osborne