EILEEN R. RIDLEY, CA Bar No. 151735
eridley@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507

JOHN J. ATALLAH, CA Bar No. 294116
jatallah@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

Attorneys for Defendant Mindvalley, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE COURTHOUSE**

PATRICIA GOOIKER, WILLIAM FINLEY, individually and on behalf of others similarly situated,

Plaintiffs,

vs.

MINDVALLEY, INC.,

Defendant.

Case No. 5:24-cv-00593-BLF

**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS AND REQUEST FOR JUDICIAL NOTICE**

Date: October 17, 2024
Time: 9:00 a.m.
Ctrm: 3

Complaint Filed: January 31, 2024
Corrected Complaint Filed: February 6, 2024
Amended Complaint Filed: April 29, 2024

District Judge: Hon. Beth Labson Freeman

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. PLAINTIFFS ARE BOUND BY THE CLASS WAIVER IN DEFENDANT'S TERMS & CONDITIONS AND THEIR CLASS CLAIMS SHOULD BE STRICKEN UNDER RULE 12(F). .......... 1

1. Mindvalley Provided Sufficiently Conspicuous Notice of the Class Waiver. .......... 1

2. The Class Waiver is Not Unconscionable. .......... 5

B. THE CLASS DEFINITION SHOULD SIMILARLY BE STRICKEN AS IMPROPERLY INCLUDING PERSONS WHO LACK STANDING UNDER THE VPPA. .......... 6

C. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE VPPA PURSUANT TO RULE 12(B)(6). .......... 7

1. Plaintiffs Fail to Plausibly Allege the Disclosure of Their Personal Data. .......... 7

2. Plaintiffs Consented to the Disclosure of Their Personally Identifiable Information. .......... 8

D. PLAINTIFFS LACK STANDING TO SUE ON BEHALF OF ALL MINDVALLEY ACCOUNTHOLDERS. .......... 10

1. Members of Plaintiffs' Proposed Class Are Not "Consumers" Under the VPPA. .......... 10

2. Plaintiffs' Proposed Class Includes Users Who Have Not Suffered Any Injury Under the VPPA. .......... 11

E. PLAINTIFFS CANNOT RECOVER IN EQUITY. .......... 12

F. MINDVALLEY'S REQUEST FOR JUDICIAL NOTICE IS PROPER .......... 13

III. CONCLUSION .......... 14

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Abrego Abrego v. The Dow Chemical Co.*,
443 F.3d 676 (9th Cir. 2006)........ 13

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017)........ 4

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)........ 6

*Cappello v. Walmart Inc.*,
2019 WL 11687705 (N.D. Cal. Apr. 5, 2019)........ 9

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002)........ 9

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019)........ 3, 4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)........ 7, 8

*Cullinane v. Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018)........ 4

*Dohrmann v. Intuit, Inc.*,
823 F. App'x. 482 (9th Cir. 2020)........ 3

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015)........ 10

*Ferguson v. Countrywide Credit Indus., Inc.*,
298 F.3d 778 (9th Cir. 2002)........ 5

*Fteja v. Facebook, Inc.*
841 F. Supp. 2d 829 (S.D.N.Y. 2012)........ 4

*Jackson v. Fandom*,
2023 WL 4670285........ 11

*James v. Agnew*,
No. 15-CV-409-AJB-MDD, 2016 WL 11448147 (S.D. Cal. Aug. 18, 2016)........ 13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)........ 13

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 13

*Lawrence v. Finicity Corp.*,
2024 WL 584615 (E.D. Cal. Feb. 13, 2024) .......... 2

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......... 3

*Mance v. Mercedes-Benz USA*,
901 F.Supp.2d 1147 (N.D. Cal. 2012) .......... 5

*Maree v. Deutsche Lufthansa AG*,
2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .......... 4

*N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*,
2016 WL 9046909 (C.D. Cal. Sept. 21, 2016) .......... 12

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .......... 13

*Peter v. Doordash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 3

*Prizler v. Charter Commc'ns, LLC*,
No. 3:18-CV-1724-L-MSB, 2019 WL 2269974 (S.D. Cal. May 28, 2019) .......... 9

*Quezada v. California*,
No. 120CV00959DADSAB, 2021 WL 2417119 (E.D. Cal. June 14, 2021) .......... 12

*Sellers v. Bleacher Report, Inc.*,
2023 WL 4850180 .......... 2

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 12

*Wright v. Gen. Mills, Inc.*,
No. CIV.08CV1532L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) .......... 13

**State Cases**

*Allen v. Shutterfly, Inc.*,
No. 20-cv-02448-BLF, 2020 U.S. Dist. LEXIS 167910 (N.D. Cal. Sep. 14, 2020) .......... 2

*Jeong v. Nexo Capital Inc.*,
No. 21-cv-02392-BLF, 2022 U.S. Dist. LEXIS 150413 (N.D. Cal. Aug. 22, 2022) .......... 5, 6

*Junhan Jeong v. Nexo Capital Inc.*,
No. 21-cv-02392-BLF, 2023 U.S. Dist. LEXIS 54152 (N.D. Cal. Mar. 29, 2023) .......... 6

*Kuzenski v. Uproxx LLC*,
No. 2:23-cv-00945-WLH-AGR, 2024 U.S. Dist. LEXIS 111986 (C.D. Cal. June 24, 2024) ............ 11

*Lira v. Nat'l Distribution Ctrs., LLC*,
No. EDCV 21-672 JGB (KKx), 2021 U.S. Dist. LEXIS 251955 (C.D. Cal. Dec. 22, 2021) ................ 5

*Sawyer v. Bill Me Later, Inc.*,
No. CV 10-04461 SJO (JCGx), 2010 U.S. Dist. LEXIS 138098 (C.D. Cal. Oct. 4, 2010) .................. 9

**Federal Statutes**

18 U.S.C § 2710 ........................................................................................................................ 14

18 U.S.C. § 2710(b)(2)(B) ............................................................................................................ 9

18 U.S.C. § 2710(b)(2)(B)(i) ......................................................................................................... 9

18 U.S.C. § 2710(b)(2)(B)(iii) ....................................................................................................... 9

# I. INTRODUCTION

Plaintiffs' Opposition to Mindvalley's Motion to Dismiss is rife with inapposite and out-of-Circuit cases and inapplicable arguments that fail to address the clear defects in their First Amended Complaint ("FAC").

First, Plaintiffs' class claims should be stricken because Plaintiffs are bound by the Class Waiver to which they expressly agreed in signing up for a Mindvalley account and using the platform. Mindvalley's Terms and Privacy Policy were sufficiently conspicuous under the relevant caselaw and Plaintiffs have failed to plead or show that enforcement of Mindvalley's Class Waiver would be unconscionable. Plaintiffs' proposed class definition should likewise be stricken because it includes members who lack standing under the VPPA, including persons who are not "consumers" under the VPPA and/or have not suffered an injury in fact under the VPPA.

Second, the FAC should be dismissed in its entirety because it fails to state claim under the VPPA. The FAC does not plausibly allege the disclosure of Plaintiffs' own personal data, instead relying on hypothetical examples that do not satisfy the pleading requirements. Even if Plaintiffs' personal data was in fact disclosed, Mindvalley obtained Plaintiffs' express consent to such disclosure through a statutorily compliant privacy policy and opt-out procedure. Thus, Plaintiffs cannot maintain a claim under the VPPA.

Finally, Plaintiffs' claims for equitable relief are barred by the availability of legal remedies, and must also be dismissed for failure to plead with particularity the relief sought.

For the reasons set forth below and in Mindvalley's Motion (ECF No. 28), Mindvalley respectfully requests that the Court dismiss Plaintiff' FAC in its entirety, with prejudice, and strike their class claims.

# II. ARGUMENT

## A. Plaintiffs are Bound by the Class Waiver in Defendant's Terms & Conditions and Their Class Claims Should be Stricken Under Rule 12(f).

### 1. Mindvalley Provided Sufficiently Conspicuous Notice of the Class Waiver.

Plaintiffs take issue with Mindvalley's use of a "sign-in wrap" or "browsewrap" agreement format, rather than a "clickwrap" or "scrollwrap" format, with its Terms & Conditions and Privacy Policy. Opp. at 15. Contrary to Plaintiffs' arguments, there is no authority holding that the use of a "sign-in wrap" or "browsewrap" agreement renders the agreement or its underlying terms unenforceable (or

unconscionable) as a matter of law. Rather, as Plaintiffs admit, "the enforceability of a sign-up or checkout wrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id*. (internal quotations omitted). Further, *Lawrence v. Finicity Corp.*, 2024 WL 584615, at *17 (E.D. Cal. Feb. 13, 2024), cited by Plaintiff, acknowledges that "categorization is not dispositive."

The hyperlinks to the Terms & Conditions and Privacy Policy on Mindvalley's "Create Account" page were sufficiently conspicuous. *See* ECF No. 28-7. Plaintiffs argue that the hyperlinks to the Terms & Conditions and Privacy Policy were in a different color than the other hyperlinks on the page, pointing to the Google, Facebook, and Apple logos allowing users to authenticate through those websites. However, these are third-party logos that are—as a consumer would expect—presented in the color and design of the original logos. The only text hyperlinks on the Create Account page are (and were, at all relevant times) links to the Terms & Conditions and Privacy Policy, which were highlighted in bright purple and were in the same size font as other text on the page. Plaintiffs also argue that the option to subscribe to Mindvalley's newsletter features a checkbox, but this has no bearing on whether Plaintiffs would have seen and had an opportunity to click on the links and review the applicable Terms & Conditions and Privacy Policy.

Likewise, the hyperlinks to the Terms & Conditions and Privacy Policy on Mindvalley's Checkout page were sufficiently conspicuous. *See* ECF No. 28-6. They were directly under the webpage's call to action and were underlined. Further, the hyperlinks were the only underlined text on the entire webpage. Plaintiffs ignore that the hyperlinks were underlined and stood out from the rest of the text on the webpage, instead arguing that *Sellers* held that a "hyperlink near the call to action button and language that a consumer 'accepts and agrees to the terms' were alone insufficient to give rise to constructive notice. Opp. at 18 (citing *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *7). However, Mindvalley is not relying on those characteristics alone.

In fact, this Court has found that "sign-in wrap" or "browsewrap" agreements like Mindvalley's are sufficiently conspicuous to put users on notice of the terms of the contract. *See*, e.g., *Allen v. Shutterfly, Inc.*, No. 20-cv-02448-BLF, 2020 U.S. Dist. LEXIS 167910, at *18-19 (N.D. Cal. Sep. 14, 2020) (finding arbitration agreement sufficiently conspicuous where Terms and Conditions appeared in blue text, were hyperlinked, and placed directly above the "Submit Payment" button and consumers were presented with

a statement reading "by clicking 'Submit Payment' I agree to the Privacy Statement and Terms of Service.")

Courts in this Circuit have also routinely upheld the validity of agreements similar to Mindvalley's. *See Dohrmann v. Intuit, Inc.*, 823 F. App'x. 482, 484 (9th Cir. 2020) (finding sufficient notice where a user "was required to click a 'Sign In' button, directly under which the following language appeared: 'By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement,'" with light blue hyperlinks which, if clicked, directed the user to a new webpage directing the user to a copy of the terms of service which contained the arbitration clause); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (finding that the user "validly assented to Ticketmaster's Terms of Use, including the arbitration provision, each time he clicked the 'Sign In' button when signing into his Ticketmaster account, where three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use,' as well as each time he clicked the 'Place Order' button when placing an order for tickets, where directly above the button, the website displayed the phrase, 'By clicking 'Place Order,' you agree to our Terms of Use,' where in both contexts, 'Terms of Use' was displayed in blue font and contained a hyperlink to Ticketmaster's Terms."); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 584-87 (N.D. Cal. 2020) (finding sufficient notice where directly below the "Sign Up" button, a statement read: "By tapping Sign Up, [...] you agree to our Terms and Conditions and Privacy Statement" and the words "Terms and Conditions" appeared in blue text and were hyperlinked to the DoorDash's Terms and Conditions in effect at the time.).

The cases cited by Plaintiffs are readily distinguishable. In *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764 (N.D. Cal. 2019), the hyperlink to the terms and conditions in an earlier version of a sign-up page "was not a different color, underlined, italicized, or in any way visually distinct from the surrounding text" and the court found that this did not put users on inquiry notice. The later version of the page simply highlighted the hyperlinks, which the court found was not enough. *Id.* at 765-66. The court emphasized that another hyperlink on the same page was "bolded, underlined, and appear[ed] to be in a larger font size than the hyperlink at issue" and thus that a reasonable user scanning the page would not conclude that the terms and conditions hyperlinks were clickable after seeing the first hyperlink. *Id.* at 766. The court also indicated that underlining would be sufficient, even distinguishing a case cited by the

defendant on that basis. *Id*. at 765 ("In *Fteja v. Facebook, Inc.*, the hyperlink was underlined. 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012)."). Similarly, in *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021), the hyperlinks were "not highlighted, underlined, in all capital letters, or displayed inside of a conspicuous and clickable box." Rather, they appeared "on a cluttered page nestled between several lines of extraneous, colored and bolded text." *Id*.

By contrast, the hyperlinks on Mindvalley's Create Account page were in bright purple text just below the sign-up fields, and were not otherwise hidden in unrelated text. *See* ECF No. 28-7. The hyperlinks on Mindvalley's Checkout page were underlined and sat directly below the call to action. *See* ECF No. 28-6. The pages also did not include other text hyperlinks in different formatting.

The remaining cases cited by Plaintiffs, all of which are from outside of this Circuit, are inapposite. In *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466-67 (S.D.N.Y. 2017), the hyperlink to the Terms of Service was "the smallest font on the screen, dwarfed by the jumbo-sized pink 'Next' bar at the bottom of the screen and the bold header 'Add Phone Number' at the top," and was "colored in light blue superimposed on a bright white background," making the words even harder to read. Further, "the screen with the Box to be checked for 'Lyft's Terms of Service' was misleading" because "[t]he screen was titled in bold terms 'Add Phone Number,'" and the entire screen "was structured as part of a process to verify a phone number, not to enter a detailed contractual agreement." *Id*. at 467. The court noted that "there were no familiar indicia to inform consumers that there was in fact a hyperlink that should be clicked and that a contract should be reviewed, such as words to that effect, underlining, bolding, capitalization, italicization, or large font." *Id*. Similarly, in *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018), the court noted that the hyperlink "did not have the common appearance of a hyperlink," which are commonly blue and underlined. Rather, the "hyperlink was presented in a gray rectangular box in white bold text," "rais[ing] concerns as to whether a reasonable user would have been aware that the gray rectangular box was actually a hyperlink." *Id*. Further, "the presence of other terms on the same screen with a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's capability to grab the user's attention." *Id*. at 64.

Mindvalley's hyperlinks on its Checkout and Create Account pages were not hidden in misleading screens or highlighted in a color that make them hard to read. *See* ECF Nos. 28-6, 28-7. The hyperlinks

were either clearly underlined (a familiar indicia of a hyperlink), or colored in purple, and there was no other text on the same screen with more noticeable attributes. Clicking the hyperlink for the Terms & Conditions in turn takes a user to a webpage where the words "Class Action Waiver" are bolded and in a larger font size than the surrounding text. As set forth below, the Class Waiver term that follows expressly and unambiguously provides for a waiver of "class, consolidated, or representative action[s]" in plain terms that a layperson can readily understand.

For all of these reasons, the Class Waiver in Mindvalley's Terms & Conditions is sufficiently conspicuous and should be enforced.

**2. The Class Waiver is Not Unconscionable.**

"Unconscionability requires a showing of both procedural and substantive unconscionability, which courts approach by applying a 'sliding scale' that balances the strength of a party's showing as to each type of unconscionability." *Jeong v. Nexo Capital Inc.*, No. 21-cv-02392-BLF, 2022 U.S. Dist. LEXIS 150413, at *47-48 (N.D. Cal. Aug. 22, 2022) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002); *Mance v. Mercedes-Benz USA*, 901 F.Supp.2d 1147, 1158 (N.D. Cal. 2012)). When "the degree of procedural unconscionability of an adhesion agreement is low, then the agreement will be enforceable unless the degree of substantive unconscionability is high." *Lira v. Nat'l Distribution Ctrs., LLC*, No. EDCV 21-672 JGB (KKx), 2021 U.S. Dist. LEXIS 251955, at *13 (C.D. Cal. Dec. 22, 2021) (internal quotations omitted).

Plaintiffs argue that procedural unconscionability is present because Mindvalley's Terms are a contract of adhesion. Opp. at 20. However, the fact that the Terms "are an adhesion contract shows nothing more than a 'minimal level of procedural unconscionability.'" *Jeong*, 2022 U.S. Dist. LEXIS 150413 at *48 (citing *Lira*, 2021 U.S. Dist. LEXIS 251955 (C.D. Cal. Dec. 22, 2021)). Plaintiffs have not pleaded in the FAC that the Class Waiver is a contract of adhesion, nor have they advanced any argument that would support a finding that the Class Waiver is procedurally unconscionable for a different reason. Thus, Plaintiffs' argument on the form of contract is of minimal relevance to the unconscionability analysis.

Plaintiffs have similarly failed to plead or show that the Class Waiver is substantively unconscionable. Plaintiffs' argument that the disputes between Mindvalley and its users involve small amounts of damages should also be disregarded as conclusory and having no support in the FAC. Plaintiffs

cites only one paragraph of the FAC, ¶ 85, in support of their argument that "[t]he small actual damages available are insufficient to incentivize plaintiffs' counsel to litigate without the availability of class relief." Yet, the only relevant part of FAC ¶ 85 is a conclusory statement that "[n]umerous consumers were cheated out of small sums of money through deliberate behavior of Mindvalley that they could not practically recover in individual suits." This type of conclusory argument that a class waiver "is designed to cheat a large number of consumers out of individually small sums of money" is "indistinguishable from an argument that the Supreme Court has rejected—that a class waiver provision automatically renders a contract substantively unconscionable." *Jeong*, 2022 U.S. Dist. LEXIS 150413 at *48 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)). Plaintiffs also argue that damages in this context refers to actual damages (Opp. at 20), but the FAC and Plaintiffs' Opposition are devoid of any factual allegations regarding the amount of actual damages Plaintiffs are seeking (*i.e.*, the "sums of money" that Mindvalley supposedly "cheated" consumers out of)—presumably because their conclusory allegation at FAC ¶ 85 does not make sense in the context of this claim. Thus, Plaintiffs have not shown that the Class Waiver arises in a situation predictably involving small amounts of damages, and the Court's analysis need go no further. *See Junhan Jeong v. Nexo Capital Inc.*, No. 21-cv-02392-BLF, 2023 U.S. Dist. LEXIS 54152, at *17 (N.D. Cal. Mar. 29, 2023).

Plaintiffs have further failed to show that Mindvalley has carried out a scheme to deliberately cheat a large number of consumers out of individually small sums of money. Plaintiffs' argument that Mindvalley is using the Class Waiver "to immunize Mindvalley from liability for small value claims" (Opp. at 20-21) should be rejected for the same reasons stated above. The cited portions of the FAC and Plaintiffs' arguments largely contain only conclusory or generalized statements (many of which are inapplicable to the alleged facts of this case) regarding Mindvalley's alleged scheme and the practicality of individual suits.

For these reasons, and as set forth in Mindvalley's Motion to Dismiss, Mindvalley respectfully requests that the Court enforce the Class Waiver and strike Plaintiffs' class claims.

**B. The Class Definition Should Similarly Be Stricken as Improperly Including Persons Who Lack Standing Under the VPPA.**

For the reasons set forth below in Section D, the proposed class members lack standing to pursue

claims under the VPPA. Mindvalley therefore respectfully requests that the Court exercise its discretion under Rule 12(f) to strike the nationwide class allegations, or, in the alternative, the class definition as alleged in Plaintiffs' FAC.

**C. Plaintiffs Fail to State a Claim Under the VPPA Pursuant to Rule 12(b)(6).**

**1. Plaintiffs Fail to Plausibly Allege the Disclosure of Their Personal Data.**

Plaintiffs' arguments regarding the disclosure of personal data completely miss the mark. Plaintiffs Opposition proceeds with a lengthy, abstract discussion of what information is considered PII and how the Meta Pixel may generally be used to collect and disclose PII. However, Plaintiffs have failed to point to specific allegations in the FAC showing that Mindvalley disclosed *Plaintiffs' own PII specifically*—nor can they, because the FAC is devoid of any allegations specific to the disclosure of Plaintiffs' personal information. In other words, "Plaintiffs fail to factually explain their personal participation in any of this." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (emphasis added) (dismissing all of Plaintiffs' claims because "Plaintiffs also lump together a variety of alleged activity undertaken by Defendant … with no meaningful factual support as to what activities each Plaintiff engaged in on Sharp's website and what information each Plaintiff provided."). Instead, the FAC only alleges generally how the Meta Pixel is *capable of* disclosing PII, essentially providing illustrative examples of *possible* disclosure.

Plaintiffs argue that "[e]very time Plaintiffs [requested and watched videos on the Mindvalley Platform], Mindvalley disclosed to Meta: (1) Plaintiffs' Facebook ID; and (2) information sufficient to identify the videos they requested or obtained" and cites the FAC ¶¶ 4, 41-77. However, these paragraphs contain only conclusory allegations that Mindvalley shares its customers' PII with Meta, general allegations regarding how the Meta Pixel works, and general allegations regarding Mindvalley's use of the Meta Pixel. Nowhere in the FAC do Plaintiffs include factual details alleging how their own PII was shared with Meta or how the specific videos they allegedly watched were tracked and disclosed to Meta. Other than by identifying that the Meta Pixel is part of the code on Mindvalley's website, Plaintiffs have no factual basis for their broad allegations (stated largely on information and belief) that their personal data was disclosed to Meta. Nor do they affirmatively allege that they were Facebook members and were logged into Facebook at the time they accessed Mindvalley's website—both of which are necessary conditions for the disclosure of personal data through the Meta Pixel.

In *Cousin*, the court dismissed all of the plaintiffs' claims for this very reason—the plaintiffs provided only hypothetical disclosures and failed to allege facts explaining their own personal participation in the alleged disclosure. *Cousin*, 681 F. Supp. 3d at 1123–24. More specifically, the court took issue with the plaintiffs' allegations that the defendant disclosed their personal information while simultaneously failing "to allege that these activities took place on a page of [the defendant's] website where Meta Pixel was embedded" and "[did] not explain what information they provided to Defendant." *Id*. Similarly here, Plaintiffs have alleged that Mindvalley disclosed their PII to Meta, but they have not provided any factual support as to what webpages they visited, whether the Meta Pixel was embedded on those webpages, and thus what information (if any) was actually provided to Meta.

The court in *Cousin* also took issue with the plaintiffs' argument that disclosure of their browsing activity resulted in a disclosure of protected information because "[w]hile Plaintiffs provide[d] an example of a search by a hypothetical patient, they fail[ed] to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta." *Id.* Further, while the plaintiffs alleged that they made, booked, or scheduled appointments through the defendants' website and that this information was disclosed, the plaintiffs failed to allege that they used specific buttons or links on the defendant's website. This same issue plagues Plaintiffs' FAC here: they provide an example of how a video viewed by a hypothetical user *could potentially* disclose information to Meta (FAC ¶¶ 66-76) but fail to allege facts regarding their own interactions with the Mindvalley website and thus what information regarding their viewing history was revealed to Meta. Plaintiffs also fail to allege any facts showing that they watched specific video content and that information regarding that video watching activity specifically was disclosed to Meta.

Plaintiffs' arguments that Mindvalley does not "cite any authority for its claim that Plaintiffs must plead additional 'factual enhancement'" and that Plaintiffs do not have to plead the specific details identified by Mindvalley show that Plaintiffs have failed to even review the cases cited by Mindvalley. *See* Mot. at 13 (citing *Cousin*, 2023 WL 4484441, at *4, which states, "this allegation is utterly devoid of factual enhancement").

**2. Plaintiffs Consented to the Disclosure of Their Personally Identifiable Information.**

As an initial matter, Plaintiff's argument that "the issue of consent is not suitable for decision on a motion to dismiss" (Opp. at 11) is contradicted by other cases it cites, including *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019). Further, Mindvalley's Privacy Policy and Cookie Banner satisfy the consent requirements of the VPPA at 18 U.S.C. § 2710(b)(2)(B).

Mindvalley's Privacy Policy has, at all relevant times, satisfied the requirement that the consent "is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). Contrary to Plaintiffs' arguments, Mindvalley's Privacy Policy does not impose on the user any "obligations" outside of consent to the use of data—those separate obligations are covered in Mindvalley's Terms & Conditions, which are available on a different webpage. The Privacy Policy sets forth, in straightforward terms, how data is managed and potentially disclosed. Plaintiffs point out that Mindvalley's Privacy Policy includes information on subjects such as "children's privacy rights," the GDPR, "Login From Integrations," and "Affiliate Links," but does not explain how these render the Privacy Policy noncompliant with the statute or contend that these set forth any obligations on the user.

Further, Plaintiffs do not cite any authority to support their argument that Mindvalley's opt-out procedure is not statutorily compliant. Instead, Plaintiffs hide their argument in their discussion of the *Cappello* case, which itself does not discuss opt-out procedures at all. *See* Opp. at 12 (citing *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019)). Mindvalley clearly provided opt-out rights. Mindvalley users were able to opt out of the disclosure of personal information via email or through its "Do Not Sell My Personal Information" webpage. *See* ECF No. 28-5. Thus Mindvalley "provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B)(iii); *see also Sawyer v. Bill Me Later, Inc.*, No. CV 10-04461 SJO (JCGx), 2010 U.S. Dist. LEXIS 138098, at *9 (C.D. Cal. Oct. 4, 2010) ("A party accepts the revised contract if it does not exercise a meaningful opportunity to 'opt out' provided by the other party to reject the offer." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002)); *Prizler v. Charter Commc'ns, LLC*, No. 3:18-CV-1724-L-MSB, 2019 WL 2269974, at *3 (S.D. Cal. May 28, 2019). Plaintiffs have not provided any authority holding that this type of opt-out option is not statutorily compliant. Nor do Plaintiffs cite any authority for their

argument that Mindvalley must provide opt-out rights specifically related to the Meta Pixel.

**D. Plaintiffs Lack Standing to Sue on Behalf of All Mindvalley Accountholders.**

**1. Members of Plaintiffs' Proposed Class Are Not "Consumers" Under the VPPA.**

Plaintiffs lack standing to assert claims on behalf of any putative class member who would not be considered a "consumer" under the VPPA, and their arguments to the contrary are inapposite. Plaintiffs fail to address which of the six *Ellis* factors all of their proposed class members satisfy (payment, registration, commitment, delivery, expressed association, and/or access to restricted content). *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015). Mindvalley has shown that there are class members who can only satisfy the "registration" factor (Mot. at 15-16), at most, which is insufficient to render them "consumers" under the VPPA.

Plaintiffs first argue that consumers can be "subscribers" under the VPPA even if they do not pay Mindvalley for goods or services. However, this mischaracterizes Mindvalley's argument: Mindvalley has not asserted that a person can be a "consumer" or "subscriber" under the VPPA *only* if he or she pays for services. Mindvalley argued in its Motion to Dismiss, "[n]ot all Mindvalley accountholders make payments *or otherwise make a commitment with Mindvalley that would give them access to exclusive or restricted content*," citing Eleventh Circuit precedent that lays out the six factors indicative of a "subscriber" relationship. Mot. at 15 (emphasis added).

Next, Plaintiffs argue that Mindvalley users who never paid for Mindvalley's services are still considered "subscribers" under the VPPA because they take actions "that demonstrate an ongoing commitment or relationship with the platform, including creating an account, becoming a registered user, providing Mindvalley with PII, including their name and email address, taking a personalized assessment, watching videos on the platform, and accessing exclusive and restricted video content, networking and motivational events." Plaintiffs cite the FAC at ¶¶ 14-15, 28, 29, 31-36, which explains, step-by-step, how a user would go about creating a Mindvalley account to access exclusive and/or restricted content. Notably missing from Plaintiffs' citations is a reference to their own paragraph 30, which describes the payment step required for users to access Mindvalley's exclusive and/or restricted content, products, and services. Thus, without making a payment, users can only access content through the "Free Courses" page

on the Mindvalley website, contradicting Plaintiffs' argument that these steps "demonstrate an ongoing commitment or relationship" with Mindvalley. Further, the court in *Kuzenski v. Uproxx LLC*, No. 2:23-cv-00945-WLH-AGR, 2024 U.S. Dist. LEXIS 111986, at *10-11 (C.D. Cal. June 24, 2024) declined to find the "commitment" factor satisfied based on creation of an account, explaining that "Plaintiff [did] not elaborate on any of the terms or conditions in Defendant's Use Policy or even explain what the alleged 'commitment' would entail." Similarly here, Plaintiffs' core argument is that a user's act of simply registering for a Mindvalley account "demonstrate[s] an ongoing commitment or relationship" with Mindvalley—but Plaintiffs entirely fail to allege what that commitment or relationship entails.

The case cited by Plaintiffs, *Jackson v. Fandom*, 2023 WL 4670285, at *3-4, is distinguishable. There, all of the materials on the defendant's website were free. Thus, merely registering for an account would give a user access to everything on the website. While this may have been sufficient to create an ongoing commitment or relationship between the user and the defendant in *Jackson*, the court did not address a situation where more was required to access exclusive and/or restricted content (truly the lion's share of video content on Mindvalley's website) or discuss what more would be required to create an ongoing commitment in such a situation.

Plaintiffs also cite an unpublished, out-of-Circuit case to support the argument that their proposed class definition "is similar to the class definitions approved by other courts addressing class-wide resolution of similar VPPA claims." Opp. at 21, citing *Beltran v. Sony Pictures Entertainment, Inc.*, Case No. 22-cv-04858 at ECF 49 ¶ 4 (N.D. Ill. Sep. 28, 2023). However, *Beltran* is a preliminary approval order, does not provide any reasoning for why the proposed class was preliminarily approved, and does not discuss any standing issues.

### 2. Plaintiffs' Proposed Class Includes Users Who Have Not Suffered Any Injury Under the VPPA.

Rather than addressing Mindvalley's arguments regarding lack of injury directly, the bulk of Plaintiffs' responses focus on delaying any determinations relating to the standing of putative class members. *See* Opp. at 23. Plaintiffs instead focus on decisions involving the denial of motions to strike under Rule 12(f), rather than addressing Mindvalley's standing arguments under Rule 12(b)(1).

Plaintiffs devote one sentence to their argument that logging into Facebook is not required for data

transmission through the Meta Pixel. This argument is apparently based on the lack of a specific allegation in the FAC stating that the Meta Pixel can only track PII while the user is simultaneously logged into Facebook. In that instance, Plaintiffs' FAC fails to allege how the Meta Pixel or the c_user cookie identifies the user's Meta ID number (in the absence of an active Facebook login) and thus fails to plausibly allege that Mindvalley's use of the Meta Pixel actually resulted in the disclosure of PII across the entire population of persons who have ever accessed Mindvalley's website.

**E. Plaintiffs Cannot Recover in Equity.**

Plaintiffs attempt to distinguish *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), by arguing that it "does not apply to federal statutes that authorize equitable relief because the jurisdictional basis for the relief is the federal statute, not state law." However, the cited portion of *Sonner*, 971 F.3d at 844 n.7, does not stand for this proposition. Rather, the court in *Sonner* simply found that the intent of a state legislature could not qualify federal equitable *principles*. Further, Plaintiffs fail to address the numerous additional cases cited by Mindvalley in support of the argument that a party seeking equitable remedies must first show that legal remedies are unavailable or inadequate.

Plaintiffs' attempt to distinguish *Quezada v. California* fails to support the argument that they need not plead the specific injunctive relief they seek. In granting the plaintiff leave to amend his complaint, the court in *Quezada* specifically stated, "plaintiff is cautioned that in any amended complaint he may elect to file, conclusory claims to injunctive and/or declaratory relief—without descriptions *of the particular relief sought* and supporting factual allegations to demonstrate that he is entitled to that relief under applicable law—are not sufficient to state a cognizable claim upon which relief may be granted." *Quezada v. California*, No. 120CV00959DADSAB, 2021 WL 2417119, at *6 (E.D. Cal. June 14, 2021) (emphasis added). Thus, Plaintiffs' conclusory allegation regarding the need for unspecified "equitable remedies" (FAC ¶ 9, Prayer) is not sufficient to state a claim upon which relief may be granted.

Plaintiffs further cite *N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*, 2016 WL 9046909, at *5 (C.D. Cal. Sept. 21, 2016), for the proposition that "Rule 8 does not apply to requests for relief." That decision does not support Plaintiffs' argument. Instead, the court in *N. Star* denied dismissal because the defendant failed to cite any authority for the argument that a specific pleading standard applies to requests for injunctive relief. *Id*. Numerous courts have found that the Rule 8 pleading standard applies to requests

for relief. *See,* e.g., *James v. Agnew*, No. 15-CV-409-AJB-MDD, 2016 WL 11448147, at *2 (S.D. Cal. Aug. 18, 2016), report and recommendation adopted, No. 15-CV-409-AJB-MDD, 2016 WL 5662073 (S.D. Cal. Oct. 3, 2016) ("The TAC contains no allegations to support the request for injunctive relief. The TAC does not identify any prospective threat to Plaintiff, much less one that is substantial and immediate. Plaintiff's request for injunctive relief fails to satisfy the pleading standard set by Rule 8 and Twombly."); *Wright v. Gen. Mills, Inc.*, No. CIV.08CV1532L(NLS), 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009) ("This sparse allegation of injury-in-fact does not meet the Twombley[sic] and Iqbal pleading standard.…Similarly, plaintiff's request for injunctive relief fails to meet the current pleading standard."). For these reasons, Plaintiffs' request for equitable relief should be dismissed.

**F. Mindvalley's Request for Judicial Notice Is Proper**

Plaintiffs argue Mindvalley's Request for Judicial Notice should be denied because they did not mention Mindvalley's Privacy Policy, Terms and Conditions, Cookie Banner, Create Account page, or Checkout page in their Complaint. Plaintiffs have cherry-picked portions of Mindvalley's website that they believe are favorable to their claims while deliberately omitting portions that directly undercut them and provide valid defenses at the pleading stage. Plaintiffs do not take issue with the authenticity of Mindvalley's exhibits or the fact that they exist on Mindvalley's website—their argument is simply that the Court should ignore Mindvalley's exhibits because they were not explicitly referenced in the FAC.

The cases cited by Plaintiffs recognize that "there are those rare instances when assessing the sufficiency of a claim requires that the document at issue be reviewed, even at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The court in *Khoja* discussed two such instances where it "affirmed the incorporation of materials that the complaint did not reference at all." *Id*. In *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005), the Court incorporated photos and captions of surrounding pages because the claim required viewing the statement at issue in context, and in *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds, as stated in *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 681-82 (9th Cir. 2006) (per curiam), the Court incorporated an employee health plan where the claims were premised upon coverage under the plan.

Here, Plaintiffs' claims are expressly premised upon the contents and functionality of the Mindvalley website, as well as Plaintiffs' alleged lack of "informed, written consent" to the disclosure of

their PII. FAC ¶ 90 (citing 18 U.S.C § 2710). Plaintiffs intentionally omit from their complaint any mention of the portions of the Mindvalley website that squarely address these issues. To understand Plaintiffs' allegations in context, the Court should properly consider Mindvalley's Privacy Policy, Terms and Conditions, Cookie Banner, Create Account page, and Checkout page, upon which Plaintiffs' allegations of lack of consent are based.

Further, Mindvalley's exhibits are not offered to dispute any well-pled facts in the FAC. Plaintiffs do not explain which of their factual allegations or which factual disputes Mindvalley is attempting to resolve with its exhibits, nor can they because Plaintiffs did not make any *factual* allegations regarding their consent to Mindvalley's policies or any *factual* allegations regarding why Mindvalley's policies do not comply with the VPPA. Instead, they alleged only conclusory statements that they did not provide consent or legal conclusions that Mindvalley's policies do not comply with the VPPA. The same is true with respect to the Class Wavier in Mindvalley's Terms and Conditions: the existence of the Class Waiver does not create a dispute over Plaintiffs' allegations—instead, it concerns whether Plaintiffs are allowed to pursue relief on behalf of a putative class in the first instance.

For these reasons, and as set forth in Mindvalley's Request for Judicial Notice, Mindvalley respectfully requests that the Court take judicial notice of the exhibits attached to the Declaration of John J. Atallah in support of Mindvalley's Motion to Dismiss.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Mindvalley respectfully requests that the Court issue an order dismissing Plaintiffs' FAC in its entirety, with prejudice, and/or striking Plaintiffs' class allegations.

DATED: August 1, 2024

**FOLEY & LARDNER LLP**
Eileen R. Ridley
John J. Atallah

*/s/ John J. Atallah*
JOHN J. ATALLAH
Attorneys for Defendant Mindvalley, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2024, I electronically filed **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS AND REQUEST FOR JUDICIAL NOTICE** with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on August 1, 2024, at Los Angeles, California.

*/s/ John J. Atallah*
John J. Atallah