Eric S. Dwoskin, admitted *pro hac vice* (edwoskin@dwowas.com)
DWOSKIN WASDIN LLP
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Phone: 561-849-8060

Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
ERICKSON KRAMER OSBORNE LLP
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs and the proposed Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA GOOIKER, WILLIAM FINLEY, individually and on behalf of others similarly situated, | Case No.: 5:24-cv-00593-NW |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF RULE 23(B)(2) CLASS ACTION SETTLEMENT** |
| vs. | |
| MINDVALLEY, INC., | Date:       April 16, 2025 |
| Defendant. | Time:       9:00 a.m. |
| | Courtroom: 3 |
| | Judge:      Hon. Noël Wise |

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 16, 2025, at 9:00 a.m., in Courtroom 3 of the United States District Court for the Northern District of California, San Jose Courthouse, 280 South First Street, San Jose, CA 95113, the Honorable Noël Wise presiding, Plaintiffs Patricia Gooiker and William Finley will and hereby do move for an Order pursuant to the Federal Rules of Civil Procedure granting preliminary approval of the proposed Rule 23(b)(2) settlement with Defendant Mindvalley, Inc.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Eric S. Dwoskin, the exhibits thereto, the pleadings and records on file in this action, and other relevant matters and argument as the Court may consider at the hearing of this motion.

Dated this 18th day of March 2025.

<div style="margin-left:40%">

DWOSKIN WASDIN LLP

*/s/ Eric S. Dwoskin*

Eric S. Dwoskin (admitted *pro hac vice*)
433 Plaza Real, Ste. 275
Boca Raton, FL 33432
Phone: (561) 849-8060
edwoskin@dwowas.com

Julie C. Erickson
Elizabeth A. Kramer
Kevin M. Osborne
ERICKSON KRAMER OSBORNE LLP
44 Tehama St.
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Putative Class*

</div>

NOTICE OF MOTION AND MOTION FOR PRELIMINARY        Case No.: 5:24-cv-00593-NW
APPROVAL OF RULE 23(B)(2) CLASS ACTION SETTLEMENT

i

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

  A. Plaintiffs Filed this Action to Address Defendant's Privacy Violations via the Meta Pixel, and Plaintiffs Prevailed Against Defendant's Attempt to Dismiss the Case ......................... 3

III.   THE RULE 23(B)(2) SETTLEMENT ................................................... 5

  A. The Injunctive Relief Addresses the Claims in the Complaint ............................. 5

  B. The Proposed Settlement Class .......................................................... 5

  C. The Class Release is Narrowly Limited to the Injunctive Relief Claims ................. 5

  D. The Service Award Recognizes Plaintiffs' Significant Contribution and Reasonable Attorneys Fees and Costs Reflect the Extensive Efforts and Results Achieved .................. 6

IV.   NOTICE TO THE CLASS IS NOT REQUIRED BECAUSE THE SETTLEMENT IS FOR INJUNCTIVE RELIEF ONLY ........................................................... 7

V.   THE PRELIMINARY APPROVAL STANDARD IS SATISFIED ...................... 9

  A. The Settlement Class Should Be Preliminarily Certified ................................. 9

  B. The Settlement Class Satisfies The Requirements of Rule 23(a) ......................... 10

  C. The Settlement Class Satisfies the Requirements of Rule 23(b)(2) ..................... 12

  D. The Settlement Meets the Northern District of California's Procedural Guidelines........... 12

  E. Injunctive Relief Demonstrates the Settlement is Fair, Reasonable, and Adequate........... 15

  1. The Settlement Resulted from Serious, Informed, Non-Collusive Arm's Length Negotiations ............................................................................ 15

  2. The Settlement Does Not Provide Preferential Treatment Among Class Members.............. 16

  3. The Settlement Falls Within the Range of Possible Approval ............................. 17

  4. The Settlement Has No Deficiencies .................................................... 19

  5. Plaintiffs' Decision to Prioritize Injunctive Relief Over Uncertain Damages Is Justified .... 20

VI.   CONCLUSION ............................................................................ 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
4
*Bronson v. Samsung Elecs. Am., Inc.*,
    2020 WL 1503662 (N.D. Cal. Mar. 30, 2020) ........................................................ 19

5
*Campbell v. Facebook Inc.*,
    2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F.3d 1106 (9th Cir. 2020) ............. 17

6
7
*Carr v. Tadin, Inc.*,
    2014 WL 7497152 (S.D. Cal. Apr. 18, 2014), *amended in part*, 2014 WL 7499453
    (S.D. Cal. May 2, 2014) .................................................................................... 19

8
9
*Celano v. Marriott Int'l Inc.*,
    242 F.R.D. 544 (N.D. Cal. 2007) ....................................................................... 10

10
11
*Dennis v. Kellogg Co.*,
    2013 WL 1883071 (S.D. Cal. May 3, 2013) .......................................................... 18

12
*DL v. D.C.*,
    2013 WL 6913117 (D.D.C. Nov. 8, 2013) .............................................................. 8

13
14
*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................... 11

15
*Fontes v. Heritage Operating, L.P.*,
    2016 WL 1465158 (S.D. Cal. Apr. 14, 2016) ......................................................... 9

16
17
*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ......................................................................... 9

18
19
*Gatchalian v. Atl. Recovery Solutions, LLC*,
    2023 WL 8007107 (N.D. Cal. Nov. 16, 2023) ..................................................... 15

20
*Gatchalian v. Atl. Recovery Solutions, LLC*,
    2024 WL 2112862 (N.D. Cal. May 9, 2024) ...................................................... 22

21
22
*Goldkorn v. Cnty of San Bernardino*,
    2012 WL 476279 (C.D. Cal. Feb. 13, 2012) ...................................................... 20

23
*Grant v. Capital Mgmt. Servs., L.P.*,
    2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) ...................................................... 7

24
25
*Gray v. Golden Gate Nat'l Rec. Area*,
    279 F.R.D. 501 (N.D. Cal. 2011) .................................................................... 10

26
*Green v. Am. Express Co.*,
    200 F.R.D. 211 (S.D.N.Y. 2001) ..................................................................... 7

27
28
*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................................... 17

*Hart v. Colvin*,
  2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) ........................................................ 16

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ........................................................................ 11

*I.B. v. Facebook*, Inc.,
  82 F. Supp. 3d 1115 (N.D. Cal. 2015) ................................................................ 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................. 15

*In re Ferrero Litig.*,
  2012 WL 2802051 (S.D. Cal. July 9, 2012), *aff'd*, 583 F. App'x 665 (9th Cir. 2014) ........... 18

*In re Heritage Bond Litig.*,
  546 F.3d 667 (9th Cir. 2008) ............................................................................... 9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................. 15

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................. 17

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................... 16

*In re Static Random Access Memory Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal. 2009) ....................................................................... 11

*In re Synoc ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ............................................................................. 9

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................. 15

*In re Wireless Facilities, Inc. Secs. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) ......................................................................... 9

*Jermyn v. Best Buy Stores*,
  2012 WL 2505644 (S.D.N.Y. June 27, 2012) ........................................................ 7

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ...................................................... 19

*Kim v. Space Pencil, Inc.*,
  2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ....................................................... 7

*Kline v. Dymatize Enters., LLC*,
  2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) ........................................................ 7

*Kurowski v. Rush System for Health*,
  683 F. Supp. 3d 836 (N.D. Ill. 2023) .................................................................. 19

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO,*
  216 F.3d 577 (7th Cir. 2000) ................................................................................ 8

*Lilly v. Jamba Juice Co.,*
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .................................................... 7

*Linquist v. Bowen,*
  633 F. Supp. 846 (W.D. Mo. Jan 31, 1986) ........................................................ 8

*Mamula v. Satralloy, Inc.,*
  578 F. Supp. 563 (S.D. Ohio Sept. 7, 1983) ...................................................... 8

*Martinez v. Blu Prod., Inc.,*
  2019 WL 12838199 (C.D. Cal. Oct. 3, 2019) ................................................... 10

*McDonald v. CP OpCo, LLC,*
  2019 WL 343470 (N.D. Cal. Jan. 28, 2019) ..................................................... 15

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC,*
  2024 WL 4868182 (N.D. Cal. Oct. 3, 2024) ....................................................... 7

*Moreno v. S.F. Bay Area Rapid Transit Dist.,*
  2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ..................................................... 15

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 21

*Parsons v. Ryan,*
  754 F.3d 657 (9th Cir. 2014) ........................................................................... 10

*Penland v. Warren Cnty. Jail,*
  797 F.2d 332 (6th Cir. 1986) .............................................................................. 8

*Rieckborn v. Velti PLC,*
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...................................................... 21

*Rodriguez v. Google LLC,*
  2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ......................................................... 10

*Rodriguez v. Hayes,*
  591 F.3d 1105 (9th Cir. 2010) ......................................................................... 12

*Stanton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ........................................................................... 17

*Stathakos v. Columbia Sportswear Co.,*
  2018 WL 582564 (N.D. Cal. Jan. 25, 2018) ...................................................... 7

*Utility Reform Project v. Bonneville Power Admin.,*
  869 F.2d 437 (9th Cir. 1989) .............................................................................. 9

*Villegas v. J.P. Morgan Chase & Co.,*
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................................................. 17

NOTICE OF MOTION AND MOTION FOR PRELIMINARY            Case No.: 5:24-cv-00593-NW
APPROVAL OF RULE 23(B)(2) CLASS ACTION SETTLEMENT

v

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................. 7

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .................................................................... 12

*White v. Experian Info. Solutions, Inc.*,
   2009 WL 10670553 (C.D. Cal. May 7, 2009) .......................................... 16

**Statutes**

18 U.S.C. § 2710(c)(3) .................................................................................. 13

28 U.S.C. § 1715 ............................................................................................. 8

28 U.S.C. § 1715(b) ........................................................................................ 9

Fed. R. Civ. P. 23(a) ....................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ................................................................................ 11

Fed. R. Civ. P. 23(a)(4) ................................................................................ 11

Fed. R. Civ. P. 23(b)(1) .................................................................................. 7

Fed. R. Civ. P. 23(b)(2) .......................................................................... passim

Fed. R. Civ. P. 23(b)(3) ................................................................ 12, 13, 14, 19

Fed. R. Civ. P. 23(c)(2) ................................................................................ 7, 8

Fed. R. Civ. P. 23(e) ....................................................................................... 9

Fed. R. Civ. P. 23(h) ....................................................................................... 6

**Other Authorities**

Newberg on Class Actions § 13:15 (5th ed. 2014) ...................................... 20

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issues:

1. Whether the proposed Settlement is fair, adequate, and reasonable;

2. Whether the proposed Settlement Class should be certified for settlement purposes;

3. Whether Dwoskin Wasdin LLP should be appointed as Class Counsel and Plaintiffs Gooiker and Finley as Class Representatives; and

4. Whether to enter the proposed order granting preliminary approval of the proposed Settlement, setting forth remaining deadlines and setting a hearing for final approval of the proposed Settlement.

1

## MEMORANDM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3       Patricia Gooiker and William Finley ("Plaintiffs") have reached a Rule 23(b)(2) class
4   settlement with Mindvalley, Inc. ("Mindvalley" or "Defendant") that requires Mindvalley to (a)
5   remove the online tracking technology at issue in this case, the Meta Pixel, from the logged-in
6   portion of Mindvalley's platform, www.home.mindvalley.com; and (b) disable the Meta Pixel on
7   the logged-out portions of Mindvalley's platform, www.mindvalley.com, unless and until a user
8   decides to enable the Meta Pixel and provides affirmative consent in a manner that complies with
9   the strict requirements of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). After
10  hotly contested litigation, this resolution provides certain and timely relief for the Class without
11  the risks or delays associated with continued litigation and addresses the lawsuit's core allegation
12  that Mindvalley discloses, via the Meta Pixel, "information which identifies a person as having
13  requested or obtained specific video materials or services" without informed consent and opt-out
14  rights—a practice that continues to this day but will be remedied by the settlement agreement
15  here.[1]

16      Plaintiffs respectfully request entry of the proposed Preliminary Approval Order, attached
17  as Exhibit 1 to the Settlement Agreement. The Preliminary Approval Order will: (i) preliminarily
18  approve the proposed Settlement and Settlement Agreement ("Settlement Agreement" or
19  "Settlement"); (ii) certify, pursuant to Rule 23(b)(2), an injunction-only class for settlement
20  purposes; (iii) appoint Plaintiffs as settlement class representatives; (iv) appoint settlement class
21  counsel; and (iv) set a final approval briefing schedule and schedule a final fairness hearing before
22  the Court.

23      The proposed Settlement provides for an injunction providing the full prospective relief
24  sought by Plaintiffs. The relief is not just "window dressing" for subscribers; Defendant has agreed
25  to structural changes to its websites that will (a) entirely remove the technology at issue from the

26

27  _____

[1] *See* Settlement Agreement, attached as Exhibit ("Ex.") A to the Declaration of Eric S. Dwoskin
28  in Support of Plaintiffs' Motion for Preliminary Approval of Rule 23(b)(2) Class Action
    Settlement ("Dwoskin Decl.").

logged-in portion of its platform; and (b) disable the technology on the logged-out portion of its platform unless and until a user decides to enable it through an informed and affirmative consent process that complies with the strict requirements of the VPPA. And while the Plaintiffs are personally releasing any and all money damage claims, no other class members are. The release provided by class members is narrowly limited to claims for injunctive relief related to the specific technology at issue that arose prior to the effective date of the Settlement Agreement. Thus, the class *release* carefully matches the class *relief*.

The proposed Settlement was fully informed by discovery (obtained from Defendant and from the third-party provider of the technology at issue, Meta Platforms, Inc. (f/k/a Facebook) ("Meta")). The proposed Settlement is also not the product of collusion: as noted below and in the Dwoskin Declaration, there is no clear sailing (Defendant has the right to be heard on any fee application, including the right to oppose) and the Plaintiffs were not informed of the amount of the proposed Service Awards until *after* they considered and approved the other terms of the Settlement. *See* Dwoskin Decl. ¶ 17.

The Settlement was reached after extensive motion practice and discovery and following arms-length negotiations facilitated by an experienced and well-respected mediator, the Honorable Ellen James, Esq. of JAMS, over multiple mediation sessions. It represents a well-informed agreement, built on expert analysis. The resolution provides an important, certain and timely outcome for the Class while avoiding additional risks and delays of continued litigation. Because this is an injunctive-relief-only settlement under Rule 23(b)(2), and the settlement thus preserves class members' right to pursue monetary relief, class members do not have a right to opt out and notice to the class is unnecessary.

Accordingly, the proposed Settlement is fair, adequate and reasonable, such that the Proposed Preliminary Approval Order should be entered, and a Final Fairness Hearing scheduled to finally approve the proposed Settlement.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  Plaintiffs Filed this Action to Address Defendant's Privacy Violations via the Meta Pixel, and Plaintiffs Prevailed Against Defendant's Attempt to Dismiss the Case**

In 2024, Plaintiffs' counsel began investigating and rigorously pursuing alleged privacy violations against videotape service providers, like Defendant, for their use of an online tracking technology referred to as the Meta Pixel. As described in the First Amended Complaint ("FAC"), Mindvalley is essentially a wellness platform that offers video courses on mental health and personal and professional development. The Meta Pixel is a piece of code that Defendant integrated into its platform for analytics and marketing purposes that causes data regarding Mindvalley users' interactions with the platform to be transferred to third-party Meta. That data includes information identifying the video content the user requests or obtains on the platform, alongside a unique individual identifier.

In February 2024, this litigation was commenced in the Northern District of California, and Plaintiffs later filed the operative FAC, asserting one count of violation of the VPPA, and seeking injunctive relief to put an end to Defendant's practice of disclosing Mindvalley subscribers' video request and viewing history to Meta and statutory damages. *See* FAC, Prayer for Relief, ECF No. 24. *See also id*. ¶¶ 8-9. The parties engaged in robust motions practice (including a motion to dismiss, a request for judicial notice, a motion to bifurcate and stay class discovery, and various discovery disputes), negotiated a protective order and ESI protocol, and exchanged relevant discovery. ECFs 28, 29, 37, 47, 53, 61, 76; Dwoskin Decl. ¶¶ 7-10; Ex. A, at WHEREAS clauses. Plaintiffs also sought and obtained discovery from non-party Meta, which confirmed the allegations in the FAC, and retained a consulting expert to forensically examine Mindvalley's platform. *Id*. Thus, the parties have been vigorously litigating this case on three different fronts: (1) dispositive motion practice regarding the viability of the claims at issue; (2) engaging in party, third-party and expert discovery over the merits of the claim alleged in the FAC; and (3) preparation for class certification proceedings.

Plaintiffs learned in discovery that, although Mindvalley is a Delaware corporation with its principal place of business in Palo Alto, California, its owners and operators are based in foreign countries, including in Malaysia. Dwoskin Decl. ¶¶ 12-13. When the parties began discussing a potential resolution in this case, Mindvalley's counsel informed Plaintiffs' counsel that Mindvalley did not have the financial ability to pay any meaningful class-wide damages. Dwoskin Decl. ¶ 14. *See also* Ex. A, at WHEREAS clause ("counsel for Mindvalley informed counsel for the Representative Plaintiffs that Mindvalley lacks the financial resources to fund a damages settlement in this case at the per-person amounts included in other public settlements in cases asserting claims under the VPPA"). Mindvalley's financial inability to pay class-wide damages in any meaningful amount precluded the possibility of a settlement that would include a release of Class members' individual damages claims.

Given the private and sensitive nature of the video content on Mindvalley's platform (essentially, individual wellbeing and personal development videos), and Mindvalley's ongoing use of the technology at issue (and, thus, ongoing disclosure of its users' video request and viewing histories to Meta), it was critical to investigate the possibility of achieving immediate injunctive relief for the class that included disabling the technology at issue. Thus, rather than spend additional months—and potentially years—in litigation against a Malaysian-based entity with an inability to satisfy a damages judgment, which could also involve appeals, the Parties began discussing a potential resolution that provided near-term injunctive relief for the Class. Dwoskin Decl. ¶¶ 21-25.

Plaintiffs and Mindvalley negotiated the contours of such a resolution over an approximately forty-five day period between December 2024 and February 2025, during which time the parties participated in two separate mediation sessions with Judge James as part of the Court's ADR program. On January 22, 2025, the parties participated in a four-hour mediation before Judge James, but were unable to reach an agreement that day. *Id.* ¶ 11. The parties continued negotiating the potential resolution outside of mediation, and reconvened for a second mediation session with Judge James on January 31, 2025, at which the parties reached agreement on the

essential contours of the resolution and after which the parties successfully reached a final agreement and formalized the settlement terms. *Id.*; *see also* Ex. A.

### III.  THE RULE 23(B)(2) SETTLEMENT

#### A.  The Injunctive Relief Addresses the Claims in the Complaint

The Settlement provides injunctive relief directly addressing the claims raised in the FAC: it stops the VPPA violations involving the Meta Pixel at issue in the FAC. Ex. A, § 2.1. Overall, the injunctive relief obtained is well-tailored to the claims in the FAC and represents an important victory for the Class.

#### B.  The Proposed Settlement Class

Plaintiffs seek approval of the following proposed Settlement Class:

> All persons in the United States who: (1) currently have or previously had a Mindvalley account at any point in time prior to the Effective Date; and (2) requested or viewed videos on either of the Mindvalley Websites at any point in time prior to the Effective Date.

#### C.  The Class Release is Narrowly Limited to the Injunctive Relief Claims

Although Defendant denies Plaintiffs' allegations, Defendant agrees to the following Stipulated Injunction to resolve the action. Pursuant to the Settlement:

> For a period of two years following the Effective Date, Mindvalley agrees to disable the operation of the Meta Pixel on or for any and all webpages on the home.mindvalley.com domain that host video content or offer video content for purchase by users in the United States.
>
> For a period of two years following the Effective Date, Mindvalley agrees that, for any and all individual users in the United States, Mindvalley will not use the Meta Pixel on any webpage on the www.mindvalley.com domain unless and until the individual user provides affirmative consent by clicking "Accept All Cookies," or by clicking "Manage Settings" and thereafter selecting the option to enable tracking cookies, on a pop-up banner meeting substantially . . . the [] criteria [set forth in the Settlement Agreement].

Ex. A § 2.1.

The release provided by the class is narrow. The Settlement resolves and releases claims for injunctive relief only that arose prior to the Effective Date of the Settlement Agreement related to the operation of the Meta Pixel on Mindvalley's Websites. Ex. A § 5.2. The release does ***not*** prevent the Class from pursing: (a) claims for damages or monetary relief, including any such

claims related to the operation of the Meta Pixel on any and all webpages on Mindvalley's Websites; or (b) injunctive relief claims arising after the Effective Date of the agreement, including any such claims arising out of tracking technologies on Mindvalley's Websites after the Effective Date. *See id*.

In addition to the Class release, a separate, individual release exists between Plaintiffs and Defendant in the Settlement. Under this provision, Plaintiffs release Defendant and its related parties from all claims, including damages claims, that directly relate to or arise from the Litigation. *Id*. § 5.1. This individual release by Plaintiffs does not extend to the Class. *Id*.

### D. The Service Award Recognizes Plaintiffs' Significant Contribution and Reasonable Attorneys Fees and Costs Reflect the Extensive Efforts and Results Achieved

Proposed Settlement Class Counsel respectfully request that the Court appoint them as Settlement Class Counsel and appoint the Plaintiffs as Settlement Class Representatives. Under the terms of the Settlement, Class Counsel are permitted to petition this Court for an Order awarding them (i) attorneys' fees, and (ii) reimbursement of reasonable litigation expenses, so long as they are not in excess of the caps set in the Settlement Agreement, Ex. A §§ 6.1-6.2. There is no clear sailing, and Defendant retains the right to respond to (or even oppose) such petition. Proposed Settlement Class Counsel will also seek $5,000 for each of the two Plaintiffs, which amount, for each Plaintiff, represents (i) $2,500 in exchange for their full releases of all money damages claims, and (ii) $2,500 as a Service Award in recognition for their contributions to the case. *Id*. § 6.2.a. As noted above, the Plaintiffs agreed to the terms of this Settlement prior to being informed that their attorneys would seek this amount, to avoid even the appearance of collusion. Dwoskin Decl. ¶ 17.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). To the extent approved by the Court, Plaintiffs may request up to $450,000 for attorneys' fees and costs. *See* Ex. A § 6.2.b. Settlement Class Counsel will provide further detail and explanation regarding the fees

sought in their motion for final approval and petition for reimbursement of fees and expenses on a schedule set by the Court.

## IV. <u>NOTICE TO THE CLASS IS NOT REQUIRED BECAUSE THE SETTLEMENT IS FOR INJUNCTIVE RELIEF ONLY</u>

Numerous federal courts within California have held that "[w]hen a class is certified under Rule 23(b)(2) and only provides for injunctive relief, no notice is required." *Grant v. Capital Mgmt. Servs., L.P.*, 2013 WL 6499698, at *6 (S.D. Cal. Dec. 11, 2013) (citing to *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *4 (N.D. Cal. Nov. 28, 2012)); *Kline v. Dymatize Enters., LLC*, 2016 WL 6026330, at *6 (S.D. Cal. Oct. 13, 2016) (same); *Stathakos v. Columbia Sportswear Co.*, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) (collecting cases) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required"); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2024 WL 4868182, at *4 (N.D. Cal. Oct. 3, 2024) (after "carefully consider[ing] the issue of class notice in this Rule 23(b)(2) settlement . . . the Court exercises its discretion and determines that class notice is not necessary."). Although Rule 23(c)(2) provides that "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class," courts "typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members" who also lack the right to opt out. *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *8-9 (N.D. Cal. Mar. 18, 2015) (holding that because an injunctive relief settlement class lacks the legal right to opt out, class notice is unnecessary where, as here, the settlement does not release monetary claims)); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

Courts across the country likewise hold that no notice is required for an injunctive-relief only class that does not release monetary claims of class members. *See, e.g.*, *Jermyn v. Best Buy Stores*, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release the class members' monetary claims, notice to the class members is not required."); *Green v. Am. Express Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001)

(no notice is required under several circumstances, such as "when the settlement provides for only injunctive relief, and therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class"); *Penland v. Warren Cnty. Jail*, 797 F.2d 332, 334 (6th Cir. 1986) ("[T]his court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions"); *DL v. District of Columbia*, 2013 WL 6913117, at *11 (D.D.C. Nov. 8, 2013) ("[T]he district courts within these circuits that have directly considered the issue have applied the requirement 'more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief'"); *Linquist v. Bowen*, 633 F. Supp. 846, 862 (W.D. Mo. Jan 31, 1986) ("When a class is certified pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, notice to the class members is not required.") (internal citations omitted); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 572 (S.D. Ohio Sept. 7, 1983) ("This Court has certified this action as a class action under Rule 23(b)(2), and, as such, notice to class members is not required under Rule 23(c)(2)."); *Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000) ("Rule 23(b)(2) certification does not ensure personal notice or opportunity to opt out even if some or all the plaintiffs pray for monetary damages.").

This Court may follow the same approach here because the Settlement provides injunctive relief while fully preserving Class members' rights to pursue monetary claims. *See* Ex. A § 5.2. In exercising its discretion, the Court should also consider whether "the cost of notice would risk eviscerating the settlement agreement." *Green*, 200 F.R.D. at 212 ("[C]ourts have recognized that when notice to class members would not serve the purpose of ensuring that the settlement is fair and would, in fact jeopardize the settlement, that the court may opt to forego notice."). Here, the parties agree notice is unnecessary under the law and could lead to the unraveling of the carefully negotiated Settlement and deprive the Class of the benefits it provides. *See* Ex. A, §§ 7.2-7.4. Because the Class would have no right to opt out of the injunctive relief, and their monetary claims are preserved, the Court therefore need not direct notice here. *See Lilly*, 2015 WL 1248027, at *9.[2]

---

[2] Although notice to the Class is not required, the Class Action Fairness Act ("CAFA") requires that notice be given to state and federal authorities. 28 U.S.C. § 1715. CAFA provides that "no

1

## V.  THE PRELIMINARY APPROVAL STANDARD IS SATISFIED

2  Public policy strongly favors settlement as a method to resolve litigation. *See Utility*

3  *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially

4  true in complex class actions like this one, where "substantial resources can be conserved by

5  avoiding the time, cost, and rigors of formal litigation." *Fontes v. Heritage Operating, L.P.*, 2016

6  WL 1465158, at *3 (S.D. Cal. Apr. 14, 2016) (citation omitted); *see also In re Synoc ERISA Litig.*,

7  516 F.3d 1095, 1101 (9th Cir. 2008) (Public policy "strong[ly] . . . favors settlements, particularly

8  where complex class action litigation is concerned."); *Franklin v. Kaypro Corp.*, 884 F.2d 1222,

9  1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is

10  "particularly true in class action suits." (internal quotations omitted)).

11  ### A.  The Settlement Class Should Be Preliminarily Certified

12  The Settlement Class satisfies the requirements of Rule 23(a) and (b)(2). The Rule 23(a)

13  requirements are numerosity, commonality, typicality and adequacy. Rule 23(b)(2) requires a

14  plaintiff to establish that the defendant "acted or refused to act on grounds that apply generally to

15  the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

16  the class as a whole." Fed. R. Civ. P. 23(b)(2).

17  Rule 23(e) requires Court approval before the claims, issues, or defenses of a class

18  proposed to be certified can be settled, voluntarily dismissed, or compromised. Fed. R. Civ. P.

19  23(e). The purpose of this rule "is to protect the unnamed members of the class from unjust or

20  unfair settlements affecting their rights." *In re Synoc.*, 516 F.3d at 1100. Accordingly, if a

21  settlement is "fundamentally fair, adequate, and reasonable," it must be approved. *In re Heritage*

22  *Bond Litig.*, 546 F.3d 667, 674-675 (9th Cir. 2008); *see also In re Wireless Facilities, Inc. Secs.*

23  *Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and

24  genuine arms-length negotiation are presumed fair.").

25

26  —————————————

27  later than ten days after a proposed settlement of a class is filed in court, each defendant shall serve
upon the appropriate state official of each state in which a class member resides a notice of the

28  proposed settlement and specified supporting documentation." *Id.* § 1715(b). Pursuant to CAFA,
Defendant will serve CAFA notice within ten days after this motion is filed.

**B.  The Settlement Class Satisfies the Requirements of Rule 23(a)**

Numerosity is generally satisfied when a class has at least 40 members. *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007). The proposed Settlement Class satisfies the numerosity requirement. The Settlement Class consists of "all persons in the United States who: (1) currently have or previously had a Mindvalley account at any point in time prior to the Effective Date; and (2) requested or viewed videos on either of the Mindvalley Websites at any point in time prior to the Effective Date" a class of, at a minimum, thousands of consumers. Dwoskin Decl. ¶ 16.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Dukes*, 131 S. Ct. at 2545. Common questions include:

1.  whether Defendant disclosed Class members' video request and viewing histories to Meta; and

2.  whether the information Defendant disclosed to Meta constitutes personally identifiable information under the VPPA.

Here, the determination of the above common questions "will resolve an issue that is central to the validity of each [claim] in one stroke" as to the claims of all Settlement Class members. *Id.*

In the context of Rule 23(b)(2), commonality is found when policies and practices apply to the class as a whole. *See Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011); *Parsons v. Ryan*, 754 F.3d 657, 683 (9th Cir. 2014) (same). *See also Martinez v. Blu Prod., Inc.*, 2019 WL 12838199, at *3 (C.D. Cal. Oct. 3, 2019) (common questions included whether the defendant's captured consumer's private information and whether it "violate[s] the law in the manners Plaintiffs identify"); *Rodriguez v. Google LLC*, 2024 WL 38302, at *3 (N.D. Cal. Jan. 3, 2024) (legality of defendant's collection of app data was a common issue). That criterion is easily met here. Mindvalley employed the Meta Pixel on its websites, and that technology was automatically enabled each time a user visited the website and functioned similarly for each user. In particular, each time a user visited a Mindvalley webpage containing video content, the Meta

Pixel disclosed information to Meta including, among other things: (1) a unique identifier Meta could use to identify the individual user; and (2) data describing the video content that was requested or obtained (including *e.g.*, the URL of the webpage visited). In that way, Mindvalley's practice with respect to using the Meta Pixel applied the same way to all of its users.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of Settlement Class members because they stem from the same alleged conduct—*i.e.*, the disclosure of their PII to Meta via the Meta Pixel—and seek relief under the same legal theory. *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (claims are "reasonably co-extensive" because all "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."); *In re Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) (typicality found in 23(b)(2) certification); *I.B. v. Facebook*, Inc., 82 F. Supp. 3d 1115, 1129 (N.D. Cal. 2015) (typicality found in 23(b)(2) injunctive relief).

Finally, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted). Plaintiffs and their counsel have no conflicts of interest with any Settlement Class Members and have vigorously prosecuted the case on behalf of the class, through dispositive motion briefing, discovery, and nearly two months of settlement negotiations (including multiple mediation sessions). Moreover, Class Counsel is eminently qualified and has a long history and experience with prosecuting class actions, including those involving data privacy. *See* Dwoskin Decl. ¶ 26 (CVs and Firm Resumes of Class Counsel and co-counsel).

### C. The Settlement Class Satisfies the Requirements of Rule 23(b)(2)

This Settlement Class seeks to be certified under Rule 23(b)(2). To certify a Rule 23(b)(2) class, the Defendant must have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Unlike Rule 23(b)(3), Plaintiffs do not need to show predominance of common issues or superiority of class adjudication, but only that there is a cohesiveness of class claims. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). To certify a class under Rule 23(b)(2), it is generally sufficient "that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "The key to [a Rule 23(b)(2)] class is . . . the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotation marks omitted).

Here, Plaintiffs allege that Defendant is "act[ing] or refus[ing] to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The claims of each member of the proposed class all relate to one specific practice of disclosing their video request and viewing histories to Meta via the Meta Pixel. The same issues of law pertain to each class member and the same injunctive relief is appropriate with respect to all class members. Accordingly, this Settlement Class should be certified under Rule 23(b)(2).

### D. The Settlement Meets the Northern District of California's Procedural Guidelines

This District's Procedural Guidance for Class Action Settlements identifies seven topics about the settlement itself that should be addressed in this Motion, only four of which are applicable to a Rule 23(b)(2) settlement.[3] Plaintiffs address those topics herein.

---

[3] *See* Procedural Guidance for Class Action Settlements, available at: https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. The fifth, sixth, and seventh topics are not applicable to an injunctive relief only settlement proposed under Rule 23(b)(2).

Regarding the first topic, differences in class definition and explanation thereof, the operative complaint defines the class as "During the fullest period allowed by law, all persons in the United States who: (1) have a Facebook account; (2) have a Mindvalley account; and (3) requested or viewed videos on mindvalley.com." FAC ¶ 78. The proposed Settlement Class definition is not limited to Facebook accountholders and includes those who previously had a Mindvalley account. *See* Ex. A., § 1.22. While the definition of the Settlement Class is broader than the definition of the proposed class in the operative complaint, that is appropriate under the circumstances. First, the Facebook account condition is superfluous given the proposed class release, which is limited to injunctive relief claims "related to the operation of the Meta Pixel on any and all webpages on Mindvalley's Websites." Ex. A. § 5.2. And, second, because the VPPA discovery rule permits Plaintiffs to seek relief from the start of Mindvalley's use of the Meta Pixel [18 U.S.C. § 2710(c)(3)], it is appropriate to include previous accountholders within the proposed Settlement Class whose injunctive relief claims can properly be extinguished here in exchange for the proposed stipulated injunctive relief.

The second and third topics focus on the differences in the release and the differences in class recovery had Plaintiffs fully prevailed on their claim. The release is narrower than the claims asserted in the FAC because the FAC sought injunctive relief *and* statutory damages. But the Class is not releasing claims for damages, and thus the release is narrowly tailored to the injunctive relief obtained. The difference here is amply justified.

- No Rule 23(b)(3) class has been certified, and thus the viability of a damages class remains unknown and subject to risk.

- Defendant does not have the financial ability to pay a damages judgment nor would any such judgment be readily collectable, as the owners and operators of Mindvalley's website are based in foreign countries, including in Malaysia. Dwoskin Decl., ¶ 25.

- Mindvalley has asserted a consent-defense based on the privacy disclosures on its website, and the viability of that defense has not been tested in this litigation. *Id.*, ¶ 22.

- Mindvalley has asserted that the class-action waiver contained in the terms of use on its platform will defeat any attempted Rule 23(b)(3) certification here, and the viability of that defense has not been tested in this litigation. *Id*., ¶ 22.

- Beyond Mindvalley's class-waiver and consent defenses, certifying a damages class under Rule 23(b)(3) is uncertain and presents significant risks, including because of the availability of class-wide data. Mindvalley has represented that it does not believe it has data showing (a) what videos that were requested or watched were transmitted to Meta via the Meta Pixel, or (b) whether, if such a transmission occurred, such data was accompanied with data that identifies the subscriber. Such information, if it exists, would be in the possession of Meta. During the meet-and-confer process over the scope of production in response to Plaintiffs' subpoena to Meta, Meta indicated it will refuse to produce class-wide data prior to certification, and that it would only agree to produce an extremely limited sample of data for three days and only up to 300,000 rows of data per day. Plaintiffs and Meta were negotiating the scope of a subpoena at the time this settlement agreement was reached. Dwoskin Decl. ¶ 19. Certification could be impacted by what data Meta ultimately produces (or is compelled to produce, if any) and whether that data can be used to satisfy the requirements of Rule 23. While Plaintiffs believe that Meta's data would help with certification, obtaining data from Meta presents significant litigation risk.

- Defendant already indicated its plan to file a summary judgment motion, including based on its consent and class-waiver defenses (*e.g.*, ECF 63 at 5).

- The injunctive relief brings great value to the settlement class now and class members are still able to pursue their monetary claims in full.

The fourth topic focuses on the impact on other cases. Plaintiffs are not aware of any other cases impacted by this settlement.

### E. Injunctive Relief Demonstrates the Settlement is Fair, Reasonable, and Adequate

Courts within this District grant preliminary approval where the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Moore*, 2024 WL 4868182, at *3 (quoting *McDonald v. CP OpCo, LLC*, 2019 WL 343470, at *5 (N.D. Cal. Jan. 28, 2019) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Gatchalian v. Atl. Recovery Solutions., LLC*, 2023 WL 8007107, at *7 (N.D. Cal. Nov. 16, 2023)).[4]

### 1. The Settlement Resulted from Serious, Informed, Non-Collusive Arm's Length Negotiations

As an initial matter, the Court does not need to address this factor because this is an injunction-only settlement under Rule 23(b)(2). *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *3 n.2 (N.D. Cal. Jan. 28, 2019) ("the *Bluetooth* collusion analysis does not apply where, as here, the settlement is for injunctive relief purposes only and class members do not release any monetary claims.") (collecting cases). But Plaintiffs satisfy it anyway.

Courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). This action spanned over a year, which included dispositive motion briefing, the exchange of written discovery, the production and review of documents, third-party discovery from Meta, and consulting expert analysis. Dwoskin Decl. ¶¶ 7-10. Class Counsel have therefore had a meaningful opportunity to consider the Court's various rulings, take and review discovery, including both party and third-party discovery, and gauge the feasibility and benefits of settlement

---

[4] In *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), the Ninth Circuit enumerated eight factors for a district court to consider at final approval. Because "the Court cannot fully assess such factors until the final approval hearing, . . . a full fairness analysis is unnecessary" at preliminary approval. *Gatchalian*, 2023 WL 8007107, at *6–7. That said, the below analysis shows Plaintiffs satisfy the relevant applicable *Bluetooth* factors anyway.

versus continued litigation. *See In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *White v. Experian Info. Solutions., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009) (same). Furthermore, the Settlement was reached only after the parties participated in multiple mediations and arms-length negotiations over the course of nearly two months. Dwoskin Decl., ¶ 11; *see Kline*, 2016 WL 6026330, at *5 ("That the settlement was reached with the assistance of an experienced mediator further suggest that the settlement is fair and reasonable.") (citation omitted).

As a result of the parties' efforts, the Court's rulings, and the mediator's input, the claims have been substantially investigated and are substantially understood so that Class Counsel had a reasonable opportunity to candidly assess the merits and weaknesses of the claims and the defenses. Given the injunctive relief secured, the Settlement provides relief that directly addresses the claims asserted on behalf of the Class. The parties worked closely with Judge James, an experienced and well-respected mediator, who ultimately assisted the parties in reaching a fair and reasonable resolution. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 946 ("[The] presence of a neutral mediator [is] a factor weighing in favor of a finding of noncollusiveness.").

Where, as here, a settlement is negotiated at arms-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This factor therefore weighs in favor of approving the Settlement.

## 2.    The Settlement Does Not Provide Preferential Treatment Among Class Members

The Settlement does not provide for monetary relief to class members, and so it lacks the potential for preferential treatment in this regard. Instead, the Settlement mandates changes to the function and design of Mindvalley's platform that will benefit all Class members the same. *See Moore*, 2024 WL 4868182, at *3 ("The injunctive relief . . . applies equally to all class members without preferential treatment."); *Hart v. Colvin*, 2016 WL 6611002, at *9 (N.D. Cal. Nov. 9, 2016) ("When . . . the settlement provides for only injunctive relief . . . there is no potential for the named plaintiffs to benefit at the expense of the rest of the class") (quotation and citation omitted).

Plaintiffs intend to request $2,500 in statutory damages and an incentive award of $2,500 for each Plaintiff. Neither indicates unfair preferential treatment. Statutory damages are appropriate because "unlike the class, the named representatives are waiving their claims for damages." *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F.3d 1106 (9th Cir. 2020). *See also Gatchalian*, 2023 WL 8007107, at *8 (no preferential treatment, even though plaintiffs awarded statutory damages). Moreover, the "Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)); *see also Campbell*, 2017 WL 3581179, at *4 ("Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives.") (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)).

As discussed above, Plaintiffs cooperated with Class Counsel throughout the litigation, including in responding to voluminous discovery requests, and were otherwise in regular contact with Class Counsel. The injunctive relief secured for the Class reflects significant efforts, and the requested incentive award, if approved, is commensurate with those efforts. *See, e.g.*, *Moreno*, 2019 WL 343472, at *7 ("In this district, a $5,000 payment is presumptively reasonable."). The absence of any unfair preferential treatment further supports granting preliminary approval of the Settlement.

### 3. The Settlement Falls Within the Range of Possible Approval

"To determine whether a settlement 'falls within the range of possible approval,' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) (citing *In re Tableware*, 484 F. Supp. 2d at 1080). Here, the injunctive relief Plaintiffs secured directly addresses the claims in a fair and reasonable manner. Plaintiffs allege that Defendant violated the VPPA by disclosing their video-viewing history to Meta via the Meta Pixel. The injunctive relief addresses these allegedly unlawful

practices and prevents Defendant from engaging in similar conduct for a period of two years, while also preserving the Class's right to seek monetary legal recourse. *See Grant v. Capital Management Servs., L.P.*, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) (approving settlement that "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse."); *Moore*, 2024 WL 4868182, at *4 ("Courts have approved similar settlements providing solely injunctive relief in consumer class actions, particularly where such relief offers direct benefits in curbing allegedly unlawful practices").

Moreover, the parties achieved the agreed-upon relief, which was the result of extensive litigation and discovery, through arms-length negotiations with Judge James's assistance. These efforts led to an injunction providing relief to Plaintiffs and the Class by directly addressing the core claims of VPPA violations and preventing Defendant from continuing the challenged practices for a period of two years. *See Dennis v. Kellogg Co.*, 2013 WL 1883071, at *5 (S.D. Cal. May 3, 2013) ("[P]roposed settlement appears to fall within the range of possible approval" where "it appears to be the product of arms-length negotiations by experienced counsel, was reached after considerable litigation and discovery into the asserted claims, and provides . . . relief"). While this relief does not include monetary compensation, it preserves the Class's right to seek damages in future claims. Given the absence of a certified Rule 23(b)(3) class, the challenges of obtaining data from Meta, Defendant's stated intention to file a motion for summary judgment, the ongoing nature of the violations, and the practical realities of litigating against a small Malaysia-based defendant that lacks the financial ability to satisfy a potential class-wide damages judgment, the Settlement offers a reasonable resolution in light of the challenges and risks of further litigation.

Courts have approved similar settlements, particularly where injunctive relief offers direct benefits in curbing allegedly unlawful practices. *See, e.g.*, *In re Ferrero Litig.*, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012), *aff'd*, 583 F. App'x 665 (9th Cir. 2014) ("Defendant agreed to modify the product label to address the fundamental claim raised in Plaintiffs' complaint . . . The Court concludes that the proposed settlement provides an appropriate remedy to class members. It both takes into account the strength of Defendant's defenses and obstacles to class-wide recovery,

while also addressing the concerns in Plaintiff's complaint"); *see also Carr v. Tadin, Inc.*, 2014 WL 7497152, at *7 (S.D. Cal. Apr. 18, 2014), *amended in part*, 2014 WL 7499453 (S.D. Cal. May 2, 2014) (granting approval of settlement with no monetary relief, but where "the injunctive relief offered will provide the Settlement Class with the relief they most desire—a change in product labeling."); *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *5 (N.D. Cal. Nov. 16, 2015) (granting final approval, noting "[t]he Settlement affords meaningful injunctive relief" where "the labeling of the Products shall be substantially revised"); *Bronson v. Samsung Elecs. Am., Inc.*, 2020 WL 1503662, at *3 (N.D. Cal. Mar. 30, 2020) (finding that, in light of the risks of continued litigation, "the settlement provides sufficient relief to the class" even though "class counsel chose to abandon certification of a damages class under Rule 23(b)(3) in favor of an injunctive-only class under Rule 23(b)(2)"); *Kurowski v. Rush System for Health*, 683 F.Supp.3d 836 (N.D. Ill., 2023), (Order Granting Preliminary Approval of Class Action Settlement) (N.D. Ill. Oct. 4, 2024), ECF 152 (recent order granting preliminary approval for a similar injunctive relief-only settlement in the context of online tracking technologies).

### 4. The Settlement Has No Deficiencies

A court is likely to find a settlement agreement free from obvious deficiencies when it provides immediate injunctive relief while at the same time mitigates the potential uncertainties in continuing litigation. *See Stathakos*, 2018 WL 582564, at *5 (approving settlement where "continued litigation could not result in any greater injunctive relief to the class and would only deprive the class of immediate relief"); *In re Tableware*, 484 F. Supp. 2d at 1080 ("Based on th[e] risk and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient"). Here, the injunctive relief provided for in the Settlement reflects a favorable resolution.

Under the Settlement terms, Defendant will remove the Meta Pixel from Mindvalley's logged-in website, and disable the same technology on the logged-out website unless and until a user affirmatively consents to its use through VPPA-compliant consent banner. Ex. A § 2.1. This relief is consistent with the purpose of the certified Rule 23(b)(2) class, and the changes to the website function and design directly address Plaintiffs' allegations that Mindvalley was violating

the VPPA through its unauthorized use of the Meta Pixel. Because the injunctive relief fully addresses these core claims, the Settlement is fair, reasonable, and adequate, and strongly supports preliminary approval. *See Lilly v. Jamba Juice Co*., 2015 WL 2062858, at *7 (N.D. Cal. May 4, 2015) (approving a settlement providing solely injunctive relief where only Rule 23(b)(2) class was certified); *Goldkorn v. Cnty of San Bernardino*, 2012 WL 476279, at *6-7 (C.D. Cal. Feb. 13, 2012) (approving settlement providing solely injunctive relief, attorneys' fees, costs, and damages to named plaintiffs); *Kim*, 2012 WL 5948951, at *10 (same). Crucially, the release is limited to the injunctive relief specified in the Settlement and specifically carves out any request for monetary relief. The Settlement therefore has no "obvious substantive defects such as . . . overly broad releases of liability." Newberg on Class Actions § 13:15 (5th ed. 2014). The absence of any deficiencies supports preliminary approval.

### 5.    Plaintiffs' Decision to Prioritize Injunctive Relief Over Uncertain Damages Is Justified

Plaintiffs' decision to settle this case by securing injunctive relief under Rule 23(b)(2), rather than continuing to pursue class-wide damages, was a strategic choice based on a comprehensive assessment of the litigation risks, the collectability of Defendant, and the important need to secure certain, near-term relief for the Class in light of the ongoing VPPA violations. Dwoskin Decl. ¶¶ 21-25. While Plaintiffs are confident in their ability to prove the violations at issue, it is highly unlikely that a class-wide damages judgment would ultimately be collectible. *Id*. Indeed, as part of the proposed settlement, Plaintiffs' counsel agreed to an 8-month payment plan for any approved fee award because of Mindvalley's stated inability to pay even several hundred thousand dollars (*i.e.*, a tiny fraction of a potential damages judgment) in the near term. Dwoskin Decl. ¶¶ 23-25. *See also* Ex. A, § 6.3

Moreover, pursuing damages would have required protracted litigation, over the course of several years, with significant costs relative to the limited relief the Class might ultimately obtain, *all while the VPPA violations at issue continued to occur on Mindvalley's websites*. As noted above, Mindvalley is essentially a wellness platform that offers courses on individual mental health and personal and professional development. Given the private and sensitive nature of the video

content on the platform, Mindvalley's ongoing use of the technology at issue (and, thus, ongoing disclosure of its users' video request and viewing histories to Meta), and the unlikelihood that Mindvalley would be able to later satisfy any damages judgment after several additional years of litigation, it was critically important to pivot to obtaining immediate injunctive relief for the class that included disabling the technology at issue in the manner described in the settlement agreement. For those reasons, immediate injunctive relief is a reasonable and effective way to guarantee relief for the Class. *Id*.

Finally, recovery of damages is uncertain and expensive. The risks of continuing litigation were significant, including the potential for Defendant to prevail on summary judgment on its consent-defense or to defeat class certification based on the putative class-action waiver contained in its website terms and conditions. Plaintiffs are not blind to these risks. And, were Plaintiffs ultimately able to overcome these hurdles, the lengthy process of trial, potential appeals, and motions for reconsideration would consume significant time and resources, all while the VPPA violations continued on Mindvalley's website. *See Kline*, 2016 WL 6026330, at *5 ("[W]hile confident in the merits of their case, Plaintiffs are cognizant of the inherent risks of lengthy litigation . . . The proposed settlement adequately accounts for these risks").

In contrast, the Settlement ensures nationwide injunctive relief that addresses the core issue in this litigation—VPPA violations via the Meta Pixel—while preserving the Class's right to pursue individual damages claims if they choose. The value of guaranteed injunctive relief now as compared to the uncertain promise of any future recovery after protracted and unpredictable litigation further supports approval. See *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (citations omitted); *Stathakos*, 2018 WL 582564, at *4 (discussing how injunctive relief provides certain relief to the class that would not be guaranteed if litigation continued); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *5 (N.D. Cal. Feb. 3, 2015) (finding that the guarantee of a certain recovery "outweighs

the uncertainties of pursuing a possibly more favorable outcoming by continuing to litigate");

*Gatchalian v. Atl. Recovery Solutions., LLC*, 2024 WL 2112862, at *5 (N.D. Cal. May 9, 2024) ("Given the risks posed by continuing to litigate Plaintiff's claims, the certainty of [] recovery under the settlement weighs in favor of granting final approval."). Consequently, despite the lack of monetary relief, the balance of risks, expenses, and the unpredictability of trial outcomes strongly favors prelimina1y approval of the Settlement.

## VI.  **CONCLUSION**

For the reasons set forth in this motion, Plaintiffs respectfully request the Court preliminarily approve the Settlement and find, consistent with the numerous cases cited herein, that class notice is not required. If the Court grants preliminary approval, Plaintiffs further request the Court schedule a final approval hearing to determine whether the Court should grant final approval of the Settlement and to determine the appropriateness of Plaintiffs' attorneys' fees and costs as well as the incentive payment to Plaintiffs. Plaintiffs also ask the Court to set the date by which Class Counsel must file all papers in support of the final approval of the Settlement, request for incentive award, and application for attorneys' fees and costs as no later than 45 days prior to the final approval hearing. Plaintiffs also ask the Court to set the date by which Class Members may file objections, together with any briefs, papers, statements, or other materials the Class Member or other person wishes the Court to consider, within sixty (60) calendar days following the Preliminary Approval Date.

Dated this 18th day of March, 2025.          DWOSKIN WASDIN LLP

 */s/ Eric S. Dwoskin*
Eric S. Dwoskin (admitted *pro hac vice*)
433 Plaza Real, Ste. 275
Boca Raton, FL 33432
Phone: (561) 849-8060
edwoskin@dwowas.com

Julie C. Erickson
Elizabeth A. Kramer
Kevin M. Osborne
ERICKSON KRAMER OSBORNE LLP
44 Tehama St.

San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Putative Class*

## **E-FILING ATTESTATION**

I, Kevin M. Osborne, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Kevin M. Osborne*
Kevin M. Osborne

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March 2025, the foregoing N**OTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF RULE 23(B)(2) CLASS ACTION SETTLEMENT** was filed and served using the CM/ECF system, which will serve as notification of such filings on all counsel of record.

/s/ Kevin M. Osborne

Kevin M. Osborne
ERICKSON KRAMER OSBORNE LLP
44 Tehama St.
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088
kevin@eko.law

*Attorneys for Plaintiffs and the Putative Class*