Eric S. Dwoskin, admitted *pro hac vice* (edwoskin@dwowas.com)
DWOSKIN WASDIN LLP
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Phone: 561-849-8060

*Class Counsel*

Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
ERICKSON KRAMER OSBORNE LLP
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA GOOIKER, WILLIAM FINLEY, individually and on behalf of others similarly situated, | Case No.: 5:24-cv-00593-NW |
|      Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF RULE 23(B)(2) CLASS ACTION SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS** |
| vs. | |
| MINDVALLEY, INC., | Date:        August 20, 2025 |
|      Defendant. | Time:        9:00 a.m. |
| | Courtroom:  3 |
| | Judge:      Hon. Noël Wise |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 20, 2025, at 9:00 a.m., in Courtroom 3 of the United States District Court for the Northern District of California, San Jose Courthouse, 280 South First Street, San Jose, CA 95113, the Honorable Noël Wise presiding, Plaintiffs Patricia Gooiker and William Finley will and hereby do move for an Order pursuant to the Federal Rules of Civil Procedure granting final approval of the proposed Rule 23(b)(2) settlement with Defendant Mindvalley, Inc., awarding service awards to Plaintiffs, and awarding attorneys' fees and costs to Class Counsel.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declarations of Eric S. Dwoskin, Julie C. Erickson, Patricia Gooiker, and William Finley, the exhibits thereto, the pleadings and records on file in this action, and other relevant matters and argument as the Court may consider at the hearing of this motion.

Dated this 27th day of May, 2025.

DWOSKIN WASDIN LLP

*/s/ Eric S. Dwoskin*

Eric S. Dwoskin (admitted *pro hac vice*)
433 Plaza Real, Ste. 275
Boca Raton, FL 33432
Phone: (561) 849-8060
edwoskin@dwowas.com

*Class Counsel*

Julie C. Erickson
Elizabeth A. Kramer
Kevin M. Osborne
ERICKSON KRAMER OSBORNE LLP
44 Tehama St.
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................... 2

III.   THE RULE 23(B)(2) SETTLEMENT ................................................ 4

A. The Injunctive Relief Addresses the Claims in the Complaint...................... 4

B. Settlement Class Definition ................................................................ 4

C. The Class Release is Narrowly Limited to the Injunctive Relief Claims............ 4

D. The Service Awards Recognize Plaintiffs' Significant Contribution and Reasonable Attorneys' Fees and Costs Reflect the Extensive Efforts and Results Achieved.................. 5

IV.    NOTICE TO THE CLASS WAS NEITHER REQUIRED NOR DIRECTED................... 6

V.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ................. 7

VI.    THE FINAL APPROVAL STANDARD IS SATISFIED ...................... 7

A. Substantial Injunctive Relief Demonstrates the Settlement Is Fair, Reasonable, and Adequate .............................................................. 8

B. Case Strength Balanced Against Litigation Risks Favors Settlement ................ 10

C. Extensive Discovery and Mediation Efforts Highlight the Settlements Informed Nature..... 11

D. Experienced Class Counsel's Views Reinforces the Settlement's Reasonableness ............ 12

E. Lack of Government Participant and Class Reaction Factors Support Approval ......... 13

VII.   THE REQUESTED FEE IS REASONABLE BECAUSE IT IS AUTHORIZED BY THE SETTLEMENT ........................................ 13

VIII.  THE REQUESTED FEE IS REASONABLE UNDER LODESTAR PRINCIPLES ...... 14

A. Class Counsel Spent a Reasonable Number of Hours on this Litigation ............... 15

B. Class Counsel Worked at Reasonable Hourly Rates.................................. 17

C. The Requested Fee Is Particularly Reasonable in Light of the Relevant Factors ......... 18

    i. Case Complexity Highlights Class Counsel's Ingenuity.......................... 18

    ii. Exceptional Representation Secured Substantial Privacy Protection.................. 19

IX.    COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED ... 20

X.     THE REQUESTED SERVICE AWARDs FOR PLAINTIFFS ARE REASONABLE ....... 21

XI.    CONCLUSION.................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015).................................................. 7

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................ 7

*Blum v. Stenson*, 465 U.S. 886 (1984) .............................................................. 18

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ................................ 12

*Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) ...................... 16

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ........................ 17

*Campbell v. Facebook, Inc.*, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) .......... 16

*Carr v. Tadin, Inc.*, 2014 WL 7497152 (S.D. Cal. Apr. 18, 2014) ......................... 9

*Carr v. Tadin, Inc.*, 2014 WL 7499453 (S.D. Cal. May 2, 2014)........................... 9

*Carter v. Anderson Merch., LP*, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ........ 12

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) ........................ 17

*City of Plantation Police Officers' Employees' Retirement System v. Jeffries*,
2014 WL 7404000 (S.D. Ohio Dec. 30, 2014) .................................................... 15

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943 (9th Cir. 2002) . 16

*Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997 (9th Cir. 2002) .................. 14

*Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496 (N.D. Cal. July 15, 2022)........... 18

*G.F. v. Contra Costa Cnty.*, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ............ 17

*Garcia v. Harkins Admin. Servs., Inc.*, 2021 WL 2792321 (C.D. Cal. Jan. 4, 2021) .......... 8

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
*aff'd*, 331 F. App'x 452 (9th Cir. 2009).......................................................... 22

*Goldkorn v. Cnty. of San Bernardino*, 2012 WL 476279 (C.D. Cal. Feb. 13, 2012) ......... 9

*Grant v. Capital Management Servs., L.P.*, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014)......... 8

*Guttman v. Ole Mexican Foods, Inc.*, 2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) ........... 16

*Hanlon v. Chrysler*, 150 F.3d 1011 (9th Cir. 1998)........................................ 7, 14

*Harbour v. Cal. Health & Wellness Plan*, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024)......... 17

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)............................................. 20

*Hartles v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011)................................... 17

*Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................. 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................................... 18

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......................... 8, 14

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................................... 11

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................. 12

*In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201 (N.D. Cal. 2007) ......................... 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) .................... 20

*In re Wireless Facilities*, 253 F.R.D. 607 (S.D. Cal. Sept. 3, 2008) ....................................... 11

*In re Yahoo Email Litig.*, 2016 WL 4474612 .................................................................... 20

*In re Yahoo Email Litig.*, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) .............................. 16

*Jermyn v. Best Buy Stores*, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ........................... 13

*Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ......................... 9

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ......................................................... 17, 19

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ...................................... 14, 18

*Kim v. Space Pencil, Inc.*, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ....................... 9, 13, 19

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ..................................................... 12

*Kline v. Dymatize Enters., LLC*, 2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) .................... 10, 12

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................... 12

*Kurowski, et al. v. Rush System for Health d/b/a Rush University System for* Health,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ................................................................................ 9

*Lilly v. Jamba Juice Co.*, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .......................... 6, 9, 14

*Matera v. Google LLC*, 2018 WL 11414641 (N.D. Cal. Feb. 9, 2018) .................................. 14

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
2024 WL 4868182 (N.D. Cal. Oct. 3, 2024) .................................................................. 8, 9, 10

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) .......................................... 15, 18

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ................................................................... 7, 8

*Nat'l Rural Telecomms. Coop. v. DIREC-TV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............... 10

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016) ..... 16

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .............................................. 21

*Rollins v. Dignity Health,* 2022 WL 20184568 (N.D. Cal. July 15, 2022)................................. 17

*Schiller v. David's Bridal, Inc.*, 2012 WL 2117001 (E.D. Cal. June 11, 2012) ......................... 18

*Stathakos v. Columbia Sportswear Co.*, 2018 WL 582564 (N.D. Cal. Jan. 25, 2018)................. 7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................................. 20

*Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016)................................................................... 15

*Thorne v. City of El Segundo*, 802 F.2d 1131 (9th Cir. 1986) ................................................. 16

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)................................................. 8

*Uphold our Heritage v. Town of Woodside*, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) . 15

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)...................................... 21

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010).................................. 11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................ 14, 18, 20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................... 6

*White v. Experian Info. Sols., Inc.*, 2009 WL 10670553 (C.D. Cal. May 7, 2009) ..................... 12

*Yeagley v. Wells Fargo & Co.*, 365 F. App'x 886 (9th Cir. 2010) .............................................. 14

*Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142 (D. N.J. 2004)................................................. 15

*Zepeda v. PayPal, Inc.*, No. 10-cv-1668-SBA, 2017 WL 1113292 (N.D. Cal. Mar. 24, 2017)..... 7

**Statutes**

28 U.S.C. § 1715.......................................................................................................................... 6

28 U.S.C. § 1715(b) ...................................................................................................................... 6

42 U.S.C. § 1983 ......................................................................................................................... 19

Fed. R. Civ. P. 23(a) ..................................................................................................................... 7

Fed. R. Civ. P. 23(b)(1)................................................................................................................. 6

Fed. R. Civ. P. 23(b)(2)............................................................................................................. 6, 7

Fed. R. Civ. P. 23(c)(2)(A) ........................................................................................................... 6

Fed. R. Civ. P. 23(e)(2)................................................................................................................. 7

Fed. R. Civ. P. 23(h) ................................................................................................................ 5, 13

**Other Authorities**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) .............. 18

Manual for Complex Litigation, § 21.632 ..................................................................................... 7

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issue:

1. Whether to enter the proposed order (a) finally approving the Settlement as fair, reasonable, and adequate to the Class; (b) awarding Plaintiffs the requested attorneys' fees, costs, and service awards; (c) directing the parties to undertake the obligations set forth in the Settlement Agreement that arise out of the Court's final approval; (d) entering Judgment; and (e) maintaining jurisdiction over this matter for purpose of enforcing the Judgment.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3    Pursuant to Rule 23(e), Plaintiffs Patricia Gooiker and William Finley move the Court for

final approval of the class action settlement, service awards to named Plaintiffs, and attorneys'

4    fees and costs to Class Counsel.

5

## I.    INTRODUCTION

6    Plaintiffs submit for final approval this Rule 23(b)(2) class settlement with Mindvalley,

7    Inc. ("Mindvalley" or "Defendant") that requires Mindvalley to (a) remove the online tracking

8    technology at issue in this case, the Meta Pixel, from the logged-in portion of Mindvalley's

9    platform, www.home.mindvalley.com; and (b) disable the Meta Pixel on the logged-out portions

10   of Mindvalley's platform, www.mindvalley.com, unless and until a user decides to enable the Meta

11   Pixel and provides affirmative consent in a manner that complies with the strict requirements of

12   the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). After hotly contested litigation,

13   this resolution provides certain and timely relief for the Class without the risks or delays associated

14   with continued litigation and addresses the lawsuit's core allegation that Mindvalley discloses, via

15   the Meta Pixel, "information which identifies a person as having requested or obtained specific

16   video materials or services" without informed consent and opt-out rights—a practice that continues

17   to this day but will be remedied by the Settlement here.[1]

18   The Court granted preliminary approval of the Settlement. ECF 88. In the preliminary

19   approval order, the Court ordered that class notice is not necessary because the Settlement releases

20   only the Class members' claims for injunctive relief and the named Plaintiffs' individual monetary

21   claims. ECF 88 at 3. The status of the Settlement remains as it was at the time the Court granted

22   preliminary approval: fair, reasonable, and adequate. Plaintiffs now request final approval of the

23   Settlement, including damages and service awards and attorneys' fees and costs.

24

25

26

---

27   [1] *See* Settlement, attached as Exhibit ("Ex.") 1 to the Declaration of Eric S. Dwoskin in Support
     of Plaintiffs' Motion for Final Approval of Rule 23(b)(2) Class Action Settlement, Service
28   Awards, and Attorneys' Fees and Costs ("Dwoskin Decl."), filed concurrently herewith. Unless
     otherwise noted, all cites to exhibits refer to the exhibits attached to the Dwoskin Decl.

The Settlement is presumptively fair. The Settlement was fully informed by discovery (obtained from Defendant and from the third-party provider of the technology at issue, Meta Platforms, Inc. (f/k/a Facebook) ("Meta")). The Settlement is also not the product of collusion: as noted below and in the Dwoskin Declaration, there is no clear sailing (Defendant has the right to be heard on any fee application, including the right to oppose) and the Plaintiffs were not informed of the amount of the proposed Service Awards until *after* they considered and approved the other terms of the Settlement. *See* Dwoskin Decl. ¶ 30.

The Settlement was reached after extensive motion practice and discovery and following arms-length negotiations facilitated by an experienced and well-respected mediator, the Honorable Ellen James, Esq. of JAMS, over multiple mediation sessions. It represents a well-informed agreement, built on expert analysis. The resolution provides an important, certain and timely outcome for the Class while avoiding additional risks and delays of continued litigation. In short, the Settlement is both procedurally and substantively fair, there have been no objections lodged including by any of the states to whom Class Action Fairness Act ("CAFA") notice was delivered, and it should therefore be approved as final.

Additionally, Class Counsel's request for attorneys' fees and costs together totaling $450,000 is justified by their extensive efforts in litigating this case and the favorable result obtained after hotly contested litigation. Plaintiffs' request for a service award of $5,000 each is also warranted, given that the VPPA provides for $2,500 in liquidated damages and the significant time and effort Plaintiffs expended in pursuing this action on behalf of the Class from the start. As part of the Settlement, Mindvalley acknowledged that Class Counsel may seek approval of these amounts.

For all of these reasons, as explained further below, Plaintiffs request that the Court grant the Settlement final approval, grant Plaintiffs' request for service awards (inclusive of their statutory damages), and grant Class Counsel's requested attorneys' fees and costs.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background were described in detail in Plaintiffs' Motion for Preliminary Approval of Rule 23(b)(2) Class Action Settlement. ECF 82.

1

2

3

4

5

6

7

8

9

To summarize, Plaintiffs asserted one count of violation of the VPPA, and sought injunctive relief to put an end to Defendant's practice of disclosing Mindvalley subscribers' video request and viewing history to Meta via an online tracking technology called the Meta Pixel and statutory damages. *See* FAC, Prayer for Relief, ECF No. 24. *See also id*. ¶¶ 8-9. The parties vigorously engaged in robust motions practice and party, third-party, and expert discovery. ECF 82 at 3. Critically, Plaintiffs learned during discovery that Mindvalley is a Malaysian-based business that did not have the financial ability to pay any meaningful class-wide damages, which precluded the possibility of a settlement that would include a release of Class members' individual damages claims. *Id*. at 4.

10

11

12

13

14

15

16

17

Nevertheless, given the private and sensitive nature of the video content on Mindvalley's platform (essentially, individual wellbeing and personal development videos), and Mindvalley's ongoing use of the technology at issue (and, thus, ongoing disclosure of its users' video request and viewing histories to Meta), Class Counsel assessed that it was preferable to achieve critical, immediate injunctive relief for the Class that included disabling the technology at issue rather than continue to litigate through a trial judgment. *Id*. Plaintiffs and Mindvalley negotiated the contours of the Settlement over a multi-week period, which included two separate mediation sessions with Judge James as part of the Court's ADR program. *Id*.

18

19

20

21

22

23

24

25

26

On March 18, 2025, Plaintiffs filed their motion for preliminary approval of the settlement, detailing the risks of continued litigation and the benefits of the settlement given the ongoing violations of the VPPA that will be cured once the Settlement is finally approved. ECF 82. On March 26, 2025, Mindvalley certified compliance with CAFA. ECF 84. On April 1, 2025, Mindvalley filed a statement of non-opposition to preliminary approval. ECF 85. On April 10, 2025, the Court granted preliminary approval, finding the settlement was "fair, reasonable, and adequate," meriting a final approval hearing. ECF 88. The Court also determined that class notice was unnecessary, as the Settlement releases only the Class members' injunctive relief claims and the named Plaintiffs' individual monetary claims. *Id*.

27

28

Plaintiffs now respectfully submit this Settlement for the Court's final approval along with a request for an award of attorneys' fees, costs, and service awards for the named Plaintiffs.

### III.   THE RULE 23(b)(2) SETTLEMENT

**A.  The Injunctive Relief Addresses the Claims in the Complaint**

The Settlement provides injunctive relief directly addressing the claims raised in the FAC: it stops the VPPA violations involving the Meta Pixel at issue in the FAC. Ex. 1, § 2.1. Overall, the injunctive relief obtained is well-tailored to the claims in the FAC and represents an important victory for the Class.

**B.  Settlement Class Definition**

The Settlement defines the "Class" as specified in the Court's Order Granting Preliminary Approval (ECF 88):

> all persons in the United States who: (1) currently have or previously had a Mindvalley account at any point in time prior to the Effective Date; and (2) requested or viewed videos on either of the Mindvalley Websites at any point in time prior to the Effective Date.

**C.  The Class Release is Narrowly Limited to the Injunctive Relief Claims**

Although Defendant denies Plaintiffs' allegations, Defendant agrees to the following Stipulated Injunction to resolve the action. Pursuant to the Settlement:

> For a period of two years following the Effective Date, Mindvalley agrees to disable the operation of the Meta Pixel on or for any and all webpages on the home.mindvalley.com domain that host video content or offer video content for purchase by users in the United States.

> For a period of two years following the Effective Date, Mindvalley agrees that, for any and all individual users in the United States, Mindvalley will not use the Meta Pixel on any webpage on the www.mindvalley.com domain unless and until the individual user provides affirmative consent by clicking "Accept All Cookies," or by clicking "Manage Settings" and thereafter selecting the option to enable tracking cookies, on a pop-up banner meeting substantially . . . the [] criteria [set forth in the Settlement].

Ex. 1 § 2.1.

The release provided by the class is narrow. The Settlement resolves and releases claims for injunctive relief only that arose prior to the Effective Date of the Settlement Agreement related to the operation of the Meta Pixel on Mindvalley's Websites. Ex. 1 § 5.2. The release does ***not*** prevent the Class from pursing: (a) claims for damages or monetary relief, including any such claims related to the operation of the Meta Pixel on any and all webpages on Mindvalley's

Websites; or (b) injunctive relief claims arising after the Effective Date of the agreement, including any such claims arising out of tracking technologies on Mindvalley's Websites after the Effective Date. *See id.*

In addition to the Class release, a separate, individual release exists between Plaintiffs and Defendant in the Settlement. Under this provision, Plaintiffs release Defendant and its related parties from all claims, including damages claims, that directly relate to or arise from the Litigation. *Id.* § 5.1. This individual release by Plaintiffs does not extend to the Class. *Id.*

**D. The Service Awards Recognize Plaintiffs' Significant Contribution and Reasonable Attorneys' Fees and Costs Reflect the Extensive Efforts and Results Achieved**

As part of the Settlement, Class Counsel requests that a service award be paid to each of the named Plaintiffs for their significant contributions, time, attention, and efforts in litigating this Action. Plaintiffs communicated regularly with Class Counsel, produced documents, and responded to written discovery. Dwoskin Decl., ¶ 70; Gooiker Decl., ¶¶ 7-9; Finley Decl., ¶¶ 7-9. Mindvalley acknowledged that Plaintiffs could seek the requested service awards to Plaintiffs as part of the Settlement. *See* Ex. 1, § 6.2.a. Class Counsel requests $5,000 for each of the two Plaintiffs, which amount, for each Plaintiff, represents (i) $2,500 in exchange for their full releases of all money damages claims, and (ii) $2,500 as a Service Award in recognition for their contributions to the case. *Id.* § 6.2.a. Given the service that Plaintiffs have provided to the Class, and absence of evidence necessary to rebut the presumption of reasonableness, the requested service award should be approved.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). To the extent approved by the Court, the Settlement provides Plaintiffs may request up to $450,000 for attorneys' fees and costs. *See* Ex. 1 § 6.2.b. Class Counsel requests that amount here, which comprises $445,247.79 in fees and $4,752.21 in costs. Class Counsel's request for $445,247.79 in attorneys' fees is substantially less than their total lodestar. As of May 23, 2025, Class Counsel and co-counsel at Erickson Kramer Osbourne ("EKO") dedicated a combined total 740.7 hours to this

case, totaling a lodestar amount of $703,665.00. Dwoskin Decl. ¶ 56. Additionally, Class Counsel incurred $4,752.21 in expenses. *Id.* ¶ 57. After excluding the $4,752.21 in costs, Plaintiffs' request of $445,247.79 in fees amounts to a reduction of $258,417.21, which equates to a request of 63% of the total fees incurred or a negative multiplier of .63. *See* Dwoskin Decl. ¶ 10.

Such a significant voluntary reduction and use of a negative multiplier renders the Attorneys' Fees and Costs Award presumptively reasonable and warrants approval.

## IV.    NOTICE TO THE CLASS WAS NEITHER REQUIRED NOR DIRECTED

Rule 23(c)(2)(A) permits the Court to direct appropriate notice to classes certified under Rule 23(b)(1) or (b)(2), but it does not mandate notice. In the Court's order of preliminary approval, the Court exercised its discretion by determining class notice is not necessary because the Settlement only releases Class members' injunctive relief claims and preserves their right to pursue monetary damages. ECF 88 at 3; *e.g.*, *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *8-9 (N.D. Cal. Mar. 18, 2015) (holding that because the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members, class notice is not necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). There is no reason to direct class notice now.

There are no objections to the Settlement of which Plaintiffs are aware of. Although notice to the Class was not required or directed, CAFA requires that notice be given to state and federal authorities. 28 U.S.C. § 1715. CAFA provides that "no later than ten days after a proposed settlement of a class is filed in court, each defendant shall serve upon the appropriate state official of each state in which a class member resides a notice of the proposed settlement and specified supporting documentation." *Id.* § 1715(b). CAFA also provides that an "order giving final approval a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice." *Id.* § 1715(d). Pursuant to the Settlement, Defendant served CAFA notice on March 24, 2025. ECF No. 84. As of the hearing date on August 20, 2025, 149 days will have passed since CAFA notice was

served. The Parties have not received any objections to the Settlement from the Attorneys General served, further illustrating the fairness of the Settlement. Dwoskin Decl. ¶ 32.

## V.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

Before assessing the parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. As the Court found in preliminarily approving the Settlement, the Settlement Class satisfies the requirements of Rule 23(a) and (b)(2). ECF 88. *See also* ECF 82 at 9-12. Nothing has changed that would merit a different conclusion. The Court should find, for the purposes of final approval, that settlement satisfies the requirements of Rule 23(a) and (b)(2) for the same reasons articulated in Plaintiffs' motion for preliminary approval (ECF 82 at 9-12).

## VI.   THE FINAL APPROVAL STANDARD IS SATISFIED

The Ninth Circuit maintains a "strong judicial policy" favoring class action settlements. *Zepeda v. PayPal, Inc.*, No. 10-cv-1668-SBA, 2017 WL 1113292, at *9 (N.D. Cal. Mar. 24, 2017) (citing *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). Nevertheless, district courts must evaluate whether a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon v. Chrysler*, 150 F.3d 1011, 1026 (9th Cir. 1998). A court need not address whether the settlement is ideal or the best outcome, but determine only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *Id*. at 1027. *See also Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2019 WL 343472, at *3 (N.D. Cal. Jan. 28, 2019). The Ninth Circuit in *Hanlon* identified the following factors to assess a settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed

settlement. *Id.* at 1026. [2] Not every factor needs to be satisfied. Instead, "[u]nder some circumstances, the presence of a single factor may provide sufficient grounds for court approval." *Garcia v. Harkins Admin. Servs., Inc.,* No. 518CV02314MCSJEM, 2021 WL 2792321, at *2 (C.D. Cal. Jan. 4, 2021) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). As the Court found in its order granting preliminary approval, all relevant factors support Settlement approval. ECF 88. Thus, final approval of the Settlement is warranted.

A.  **Substantial Injunctive Relief Demonstrates the Settlement Is Fair, Reasonable, and Adequate**

Plaintiffs allege that Mindvalley is disclosing its subscribers' video viewing history to third-party Meta via the Meta Pixel. The injunctive relief provided for in the Settlement directly addresses the allegedly unlawful practices Defendant engaged in and prevents Defendant from engaging in similar conduct for a period of two years by requiring changes to the website's design and functionality. The Settlement provides such impactful relief while preserving the Class's rights to seek monetary legal recourse if desired. The outcome represents a meaningful victory for Plaintiffs and the Class, as it directly confronts the central allegations of the lawsuit and provides substantial benefits to consumers. *See Grant v. Capital Management Servs., L.P.*, 2014 WL 888665, *4 (S.D. Cal. Mar. 5, 2014) (approving settlement that "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse."); *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 4:20-CV-09077-JSW, 2024 WL 4868182, at *4 (N.D. Cal. Oct. 3, 2024) ("Courts have approved similar settlements providing solely injunctive relief in consumer class actions, particularly where such relief offers direct benefits in curbing allegedly unlawful practices.").

---

[2] The Court does not need to evaluate whether the settlement is the product of collusion under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) because the class is not releasing their claim for monetary damages. *See Moreno*, 2019 WL 343472, at *3 n.2 ("the *Bluetooth* collusion analysis does not apply where, as here, the settlement is for injunctive relief purposes only and class members do not release any monetary claims.") (collecting cases). Still, as demonstrated below, the Settlement is not the product of collusion.

As the Court found in its preliminary approval order, the injunctive relief secured by Plaintiffs is fair, reasonable, and adequate, and thus, weighs strongly in favor of granting final approval to the Settlement. *See Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *6 (N.D. Cal. May 4, 2015) (approving a settlement providing solely injunctive relief where only Rule 23(b)(2) class was certified); *Goldkorn v. Cnty. of San Bernardino*, 2012 WL 476279, at *6-7 (C.D. Cal. Feb. 13, 2012) (approving settlement providing solely injunctive relief, attorneys' fees, costs, and damages to named plaintiffs); *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *10 (N.D. Cal. Nov. 28, 2012) (same).

Moreover, the injunctive relief provided for by the Settlement represents an important outcome for the Class in light of the ongoing violations of the VPPA—and it's realistically the only fair and reasonable outcome that is possible for the Class given certain practical realities related to Defendant. Mindvalley is a Malaysian-based defendant without the financial ability to pay a classwide damages judgment. *See* Ex. 1, WHEREAS clauses; Dwoskin Decl., ¶ 59. The decision to forego pursuit of classwide damages in favor of more certain and immediate injunctive relief, however, does not impact the overall fairness, reasonableness, and adequacy of the Settlement. Instead, courts approve injunctive relief only settlements in consumer actions where, as here, class members' rights to pursue damages are not released and the injunctive relief directly benefits the class by curbing the allegedly unlawful practices. *Moore*, 2024 WL 4868182, at *4 (citing *Carr v. Tadin, Inc.*, 2014 WL 7497152, at *7 (S.D. Cal. Apr. 18, 2014), *amended in part*, 2014 WL 7499453 (S.D. Cal. May 2, 2014) (granting approval of settlement with no monetary relief, but where "the injunctive relief offered will provide the Settlement Class with the relief they most desire—a change in product labeling."); *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *5 (N.D. Cal. Nov. 16, 2015) (granting final approval, noting "[t]he Settlement affords meaningful injunctive relief" where "the labeling of the Products shall be substantially revised"). *See also Kurowski, et al. v. Rush System for Health d/b/a Rush University System for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023), ECF 160 (order granting final approval of injunctive relief only settlement in online tracking privacy case that hated unlawful tracking). The Court found in the order preliminarily approving the Settlement that the injunctive relief secured—the crux of the

Settlement—addresses the core issues of the case in a fair and reasonable manner by curbing the allegedly unlawful practices and does not release the Class members' monetary claims. ECF 88 at 1-1. *See also Moore*, 2024 WL 4868182, at *3. No reason exists to depart from this earlier conclusion.

### B. Case Strength Balanced Against Litigation Risks Favors Settlement

Despite Plaintiffs' belief that they could prove to a jury the VPPA violations at issue, Plaintiffs recognize that proceeding to trial poses serious risks.

As detailed in the motion for preliminary approval, continued litigation presented significant risks. ECF 82 at 13-14. Moving forward posed substantial risks, including litigating that enforceability of the class action waiver contained in Mindvalley's online terms and conditions, facing contested expert reports, addressing other anticipated challenges from Defendant, and the likelihood of appellate review if Plaintiffs achieved a favorable judgment. These factors underscored the uncertainty and complexity of pursuing further litigation. Dwoskin Decl. ¶ 61 (detailing risks of continued litigation). Even with a certified class, a favorable liability verdict is not guaranteed. Plaintiffs would face the risk of unpredictable jury responses to expert testimonies, and potential challenges by Defendant related to class member's purported consent to the disclosures at issue. Plaintiffs avoid the risks of trial through the Settlement while guaranteeing relief to themselves and the Class by requiring Defendant to change its website design and functionality to cease the alleged VPPA violations and protect all subscribers going forward. The considerable risks of proceeding to trial favors Settlement approval. *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIREC-TV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'") (citations omitted).

The expense, complexity, duration, and risk involved in further litigation strongly favor resolution through the Settlement. *See Kline v. Dymatize Enters., LLC*, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016) ("[W]hile confident in the merits of their case, Plaintiffs are cognizant

of the inherent risks of lengthy litigation . . . The proposed settlement adequately accounts for these risks."); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (internal quotation marks omitted). The prompt injunctive relief the Settlement provides is preferable to the attendant costs associated with paying additional experts, continuing motion practice and discovery, facing possible decertification motions, the risk of a motion for summary judgment granted against Plaintiffs, the risk of the Court or a jury disagreeing on consent, or that, after resolution, the Action would be appealed. And, even if Plaintiffs overcame those hurdles, there remains the risk that any meaningful class-wide damages award would be difficult or impossible to collect against Defendant.

Because of these factors and the parties' joint desire to resolve this matter by the terms outlined in the Settlement, the Court should grant final approval of the Settlement. The Court further found in its order granting preliminary approval that the risks of continued litigation support approval of the Settlement. ECF 88 at 2. The same is true here as to final approval.

### C. Extensive Discovery and Mediation Efforts Highlight the Settlements Informed Nature

Courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). This action spanned over a year, which included dispositive motion briefing, the exchange of written discovery, the production and review of documents, third-party discovery from Meta, and consulting expert analysis. Dwoskin Decl. ¶¶ 6, 20-21. Class Counsel have therefore had a meaningful opportunity to consider the Court's various rulings, take and review discovery, including both party and third-party discovery, and gauge the feasibility and benefits of settlement versus continued litigation. *See In re Wireless Facilities*, 253 F.R.D. 607, 610 (S.D. Cal. Sept. 3, 2008) (settlements that follow sufficient discovery and genuine arms-length

negotiation are presumed fair); *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009) (same).

As found in the Court's preliminary approval order, the Settlement's arms-length nature through the help of an experienced mediator, the Hon. Ellen James, weighs in favor of approval. *See Kline*, 2016 WL 6026330, at *5 ("That the settlement was reached with the assistance of an experienced mediator further suggest that the settlement is fair and reasonable.") (citation omitted); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("[The] presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness."). Where, as here, a settlement is negotiated at arms-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This factor therefore weighs in favor of final approval of the Settlement.

### D.  Experienced Class Counsel's Views Reinforces the Settlement's Reasonableness

"The recommendations of plaintiff['s] counsel should be given a presumption of reasonableness" when contemplating the approval of a proposed settlement. *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citation omitted). Here, the opinion of Class Counsel supporting the Settlement "is accorded considerable weight" because Class Counsel have substantial experience in class action litigation and, in particular, with class action litigation specific to privacy claims. Dwoskin Decl. ¶ 38; *id.*, Ex. 2; Declaration of Julie C. Erickson In Support of Motion for Final Approval ("Erickson Decl."), Ex. 1 (filed concurrently herewith); *Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010); *see Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

Based on their experience and reasoned judgment, the information learned through extensive fact and expert discovery, and, in particular, the practical impossibility of collecting against Mindvalley on a classwide damages judgment, Class Counsel concluded that the Settlement provides important near term relief, and an exceptional results for the Class, while avoiding the uncertainties of continued and protracted litigation. Dwoskin Decl. ¶¶ 61-66.

### E.  Lack of Government Participant and Class Reaction Factors Support Approval

Here, "no government participant is involved, so the court does not weigh this factor." *See Lilly*, 2015 WL 2062858, at *3. Similarly, because notice is "not necessary, the reaction of the class is not considered in weighing the fairness factors." *See id*.; *Jermyn v. Best Buy Stores*, 2012 WL 2505644, at *6 (S.D.N.Y. June 27, 2012) ("[B]ecause class members' monetary claims are not being released and instead remain intact, no notice is required. Therefore, this factor is not relevant to the settlement approval analysis."); *Kim*, 2012 WL 5948951, at *6 ("[T]he reaction of class members is not relevant here because notice [is] not required under Federal Rule of Civil Procedure 23(e) and there is no binding effect on the class nor is there a release being provided."). Even so, Plaintiffs are unaware of any negative reaction to the Settlement as there are no objections from Class members that Plaintiffs are aware of, and the Parties have not received any objections stemming from CAFA notice. Dwoskin Decl. ¶ 32.

In sum, because the Settlement involves only injunctive relief and requires no notice, the information supporting its approval remains the same as at the preliminary approval stage, which the Court granted. ECF 88. As with preliminary approval, all relevant factors warrant final approval.

### VII.  <u>THE REQUESTED FEE IS REASONABLE BECAUSE IT IS AUTHORIZED BY THE SETTLEMENT</u>

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In coming to an agreement on the terms of settlement, Class Counsel and Mindvalley jointly acknowledged that Class Counsel may seek attorneys' fees of up to $450,000, and Mindvalley has agreed to pay that amount if approved by the Court. Dwoskin Decl., Ex. 1, § 6.2.b. Even in the absence of Mindvalley's agreement, the VPPA awards attorneys' fees to a prevailing plaintiff and thus supports awarding attorneys' fees in this case and the amount requested is reasonable under lodestar principles. As described below, Class Counsel respectfully requests that the Court award a partial reimbursement of attorneys' fees and costs in the total amount of $450,000 for their efforts. This amount comprises $445,247.79 in fees and $4,752.21

1  in costs. The $445,247.79 in fees is a material discount relative to the time Class Counsel and co-
2  counsel dedicated to prosecuting this action.

## VIII.  THE REQUESTED FEE IS REASONABLE
## UNDER LODESTAR PRINCIPLES

5      In the Ninth Circuit, a court may award attorney's fees based on the "lodestar" method
6  where there is no formal common fund, taking into account the factors discussed below. *Fischel*
7  *v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon*, 150 F.3d 1011, 1029
8  (affirming choice of lodestar method where calculation of value of common fund was uncertain).
9  Thus, in cases where the primary benefit is injunctive relief, courts apply the lodestar method. *See,*
10  *e.g.*, *Hanlon*, 150 F.3d at 1029; *Yeagley v. Wells Fargo & Co*., 365 F. App'x 886, 886 (9th Cir.
11  2010) (holding that the lodestar method ought to have been used to calculate attorneys' fees where
12  injunctive relief was sought and no common fund was created); *Lilly*, 2015 WL 2062858, at *5.

13      The lodestar figure is calculated by multiplying the hours reasonably spent on the case by
14  appropriate hourly rates based on the locale and attorney experience. *See, e.g.*, *In re Bluetooth*
15  *Headset Prods. Liab. Litig*., 654 F.3d at 941-42; *Hanlon*, 150 F.3d at 1029. A multiplier may be
16  used to adjust the resulting lodestar figure upward or downward to account for factors including,
17  but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii)
18  the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150
19  F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975). Courts
20  typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that
21  plaintiffs' counsel undertook by accepting a case where no payment would be received if the
22  lawsuit did not succeed. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1051 (9th Cir. 2002). Indeed,
23  the Ninth Circuit has held that "a district court 'must apply a risk multiplier to the lodestar when
24  (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail,
25  (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure
26  to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Matera v.*
27  *Google LLC*, 2018 WL 11414641, at *5 (N.D. Cal. Feb. 9, 2018) (awarding lodestar multiplier for
28  injunctive-only class settlement) (quoting *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir.

2016)). Multipliers are common even in early case resolutions. *See, e.g.*, *Uphold our Heritage v. Town of Woodside*, 2008 WL 4868816, at *6 (Cal. Ct. App. Nov. 12, 2008) (discussing and affirming a 2.0 multiplier in a non-monetary settlement); *City of Plantation Police Officers' Employees' Retirement System v. Jeffries*, 2014 WL 7404000, at *19 (S.D. Ohio Dec. 30, 2014) (awarding a 3.0 multiplier based on a settlement that led to "changes to executive compensation," citing the importance of "rewarding attorneys for the benefits secured."); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D. N.J. 2004) (2.15 multiplier resulting in an award of $3.3 million). Plaintiffs are not seeking a positive multiplier here, even though each of the risk multiplier factors is met. Thus, a fee that approximates lodestar is considered presumptively reasonable. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64, n.8 (9th Cir. 1996) ("There is a strong presumption that the lodestar figure represents a reasonable fee.").

## A.  Class Counsel Spent a Reasonable Number of Hours on this Litigation

Class Counsel's declaration describes the extensive work performed in connection with this litigation. Dwoskin Decl. ¶¶ 14-33. Class Counsel's diligent litigation efforts resulted in Plaintiffs winning their damages and important classwide injunctive relief that mandates changes to Mindvalley's website design and functionality. Because Plaintiffs sought a change in Defendant's website design and functionality as to the use of the Meta Pixel on behalf of a Rule 23(b)(2) class, Defendant's agreement to change its website design and functionality is an exceptional result for the Class. Class Counsel's and EKO's collective expended hours of 740.7 are reasonable given the technical nature of the litigation, the pleadings challenge, the contested discovery, multiple contested motions, the third-party and expert discovery, multiple mediation sessions, and the lengthy settlement negotiation process before, during and after the mediation sessions. *See id*. Moreover, Class Counsel and EKO have exercised reasonable billing judgment in their requested fee award. Dwoskin Decl., ¶ 41; Erickson Decl., ¶ 9.

Class Counsel's reductions and exclusions amount to a discount of 37% or $258,417.21 off the total fees incurred. This equates to a total negative multiplier of .63. Dwoskin Decl., ¶ 10. Class Counsel's use of an inverse multiplier strongly supports an inference of reasonableness thereby further warranting approval of the requested fee amount. *See, e.g.*, *In re Yahoo Email*

*Litig.*, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (finding that the lodestar multiplier of .97 "is within the range of reasonableness" and granting a request for $4 million in attorney's fees); *Guttman v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *6 (N.D. Cal. Aug. 1, 2016) (finding that a fee request was "especially" reasonable because counsel voluntarily applied a multiplier of .59); *Campbell v. Facebook, Inc.*, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (approving a $3.89 million fee award where plaintiffs applied a negative multiplier of .497).

No reduction would be warranted because Plaintiffs did not recover a classwide damages settlement. That reflects a strategic decision given the realities of Mindvalley's business, not a merits determination. And the time spent litigating the case was equally applicable to the injunctive relief claim as to any claim for damages. In any event, even if some aspect of the work had been principally dedicated to a damages award (and it was not), courts have recognized that "even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (quoting *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991)). The Court's decision in *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016), is particularly instructive here. There, Judge Wilken declined to reduce a fee award even though she had denied plaintiffs' request to certify a damages class, certified only an injunctive relief class, and a portion of the injunctive relief ordered by the court was later reversed. 2016 WL 1255454, at *3-4. Accordingly, where the unsuccessful claims are related to the successful ones and "the plaintiff obtained excellent results," full compensation may still be appropriate. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). Thus, Plaintiffs' fee calculation related to all time spent on the case is reasonable.

Class Counsel conservatively calculated the requested fees and factored in a negative multiplier to ensure the fees are commensurate with the results achieved for the Class while still reflecting the substantial time and effort invested in this complex litigation. Therefore, Class Counsel respectfully requests $445,247.79 in lodestar to compensate them for the time spent prosecuting the case and achieving an excellent result for the benefit of the Class. Because Class Counsel is already voluntarily reducing the fees sought, no further reduction is warranted.

**B.    Class Counsel Worked at Reasonable Hourly Rates**

Class Counsel utilized reasonable hourly rates for each lawyer who staffed the case that are commensurate with rates approved in other class actions litigated in this district. *See* Dwoskin Decl. ¶¶ 47-50. The hourly rate of $950 for senior partners at both Dwoskin Wasdin and EKO falls well within the range that courts within this district have determined to be reasonable. *Id*. A "reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *see also Hartles v. Clorox Co*., 273 F.R.D. 630, 644 (S.D. Cal. 2011) (stating that rates are "reasonable where they [are] similar to those charged in the community and approved by other courts"). Here, the "relevant community" is the Northern District of California. *See, e.g.*, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) ("The relevant community is the forum in which the district court sits.") (quoting *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008)).

Class Counsel's hourly rates are consistent with the prevailing market rates in the Northern District of California for attorneys of comparable skill, experience, and reputation. These rates have been repeatedly accepted by courts in this District as reasonable for complex class action litigation. Dwoskin Decl. ¶¶ 49-50; *id.*, Exs. 3-7. For example, in *Harbour v. Cal. Health & Wellness Plan*, the court determined that the charged hourly rates ranging from $425 to $1,200 fell "within the range of those approved in other similar cases . . . ." 2024 WL 171192, at *8 (N.D. Cal. Jan. 16, 2024). In *Rollins v. Dignity Health*, the court found that billing rates between $215 and $1,060 were "reasonable in light of prevailing market rates in this district . . . ." 2022 WL 20184568, at *6 (N.D. Cal. July 15, 2022). And *in G.F. v. Contra Costa Cnty.*, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015), the court found that hourly rates between $175 and $975, which included "an hourly rate of $845-$975 for two of the most senior and experienced litigators," were "in line with the overall range of market rates for attorneys and for litigation support staff of similar abilities and experience" in the Northern District of California between 2013 and 2014. *Id*. at *14; *see also Hefler v. Wells Fargo & Co*., 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals to be reasonable); *Fleming v. Impax Lab'ys Inc*., 2022 WL 2789496, at *9

1  (N.D. Cal. July 15, 2022) (approving hourly rates ranging from $760 to $1,325 for partners, $895

2  to $1,150 for counsel, and $175 to $520 for associates).

3     **C.    The Requested Fee Is Particularly Reasonable in Light of the Relevant Factors**

4        The lodestar analysis is not limited to the simple mathematical calculation of Class

5  Counsel's base fee. *See Morales*, 96 F.3d at 363-64. Rather, Class Counsel's actual lodestar may

6  be enhanced according to those factors that have not been "subsumed within the initial calculation

7  of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9

8  (1983) (citation omitted); *see also Morales*, 96 F.3d at 364. In a historical review of numerous

9  class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6

10 to 19.6, with most (83%) falling between 1 and 4. *See Vizcaino*, 290 F.3d at 1051, n.6; *see also*

11 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) (recognizing

12 that multipliers of 1 to 4 are frequently awarded). In considering the reasonableness of attorneys'

13 fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time

14 and labor required, the novelty and complexity of the litigation, the skill and experience of counsel,

15 the results obtained, and awards in similar cases. *Kerr*, 526 F.2d at 70; *Blum v. Stenson*, 465 U.S.

16 886, 898-900 (1984). These factors further support the reasonableness of the requested fee award,

17 especially as class counsel in comparable cases have pursued positive multipliers. *Vizcaino*, 290

18 F.3d at 1051. Here, however, Class Counsel is seeking a negative multiplier, underscoring the

19 reasonableness of the fee request. *See In re Portal Software, Inc. Sec. Litig*., 2007 WL 4171201,

20 at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the percentage-

21 based amount is reasonable and fair based on the time and effort expended by class counsel.");

22 *Schiller v. David's Bridal, Inc*., 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012) ("An implied

23 negative multiplier supports the reasonableness of the percentage fee request.").

24     **i.    Case Complexity Highlights Class Counsel's Ingenuity**

25        The novelty and complexity of this case strongly supports the requested fee. Class Counsel

26 faced difficult legal and factual issues to establish that the VPPA violations at issue here, including

27 pursuing technically complex class claims against a Malaysia-based defendant with a class action

28 waiver in its publicly available website terms and conditions, where the primary data necessary to

prove the claim at issue is in the possession of third-party Meta, which is incredibly well-resourced and notoriously stingy with the production of its internal data. Class Counsel worked to obtain data from Meta and retained and collaborated with experts to prove the disclosures at issue. Dwoskin Decl. ¶¶ 20-22. Ultimately, Class Counsel achieved a settlement that requires Defendant to change the website's design and functionality to stop going-forward VPPA violations. In light of the novelty and complexity of this case, and concomitant risks to counsel, a higher fee request would be justified. *See, e.g.*, *Kim*, 2012 WL 5948951, at *8 (applying a multiplier of 1.18 based on "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment" in a case awarding injunctive relief for claims under federal and California consumer and privacy law); *Cf. Kelly*, 822 F.3d at 1093-94 (affirming application of multipliers of 2.0 and 1.3 in a case awarding injunctive relief for violations of 42 U.S.C. § 1983). Thus, Class Counsel's request for a fee award with a negative .63 multiplier is particularly reasonable.

### ii. Exceptional Representation Secured Substantial Privacy Protection

The Settlement provides substantial relief for the Class as it directly addresses the core claims of the lawsuit. Through Class Counsel's litigation efforts, the parties reached an agreement that will protect consumers from ongoing VPPA violations involving the Meta Pixel. The terms of the Settlement require changes to the design and functionality of the website after the Settlement is effective. Ex. 1 § 2.1. The elimination of these privacy violations will ensure that subscribers can pursue individual wellbeing and personal development videos through the video offerings without the disclosure of their video request and viewing history via the Meta Pixel to Meta.

These changes represent an important victory for the Class. Class Counsel avoided considerable burden and expense to the parties and the judicial system by conducting a thorough investigation and achieving a favorable settlement. The results achieved by Class Counsel in this case fully justify the requested fee.

### iii. Significant Risk of Non-Payment Underscores Class Counsel's Commitment

1    The level of risk of nonpayment faced by Class Counsel at the inception of the litigation is

2    an important factor bearing on fee petitions in the Ninth Circuit. *See, e.g.*, *Vizcaino*, 290 F.3d at

3    1048. In *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, the Ninth Circuit recognized that: "It is

4    an established practice in the private legal market to reward attorneys for taking the risk of non-

5    payment by paying them a premium over their normal hourly rates for winning contingency cases

6    . . . [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation

7    of a class client given the investment of substantial time, effort, and money, especially in light of

8    the risks of recovering nothing." 19 F.3d 1291, 1299-1300 (9th Cir. 1994) (citations omitted); *see*

9    *also In re Yahoo Email Litig.*, 2016 WL 4474612, at *11 (approving a $4 million fee award where

10   it was "possible that, absent settlement, Class Counsel would not have been paid for their efforts

11   in this litigation").

12    Here, Class Counsel expended substantial time and costs to prosecute the case with no

13   guarantee of compensation or reimbursement in the hope of prevailing against a sophisticated

14   defendant based in Malaysia represented by high-caliber attorneys at one of the top law firms in

15   the United States. *See* Dwoskin Decl. ¶¶ 7, 51 59, 61-64. Class Counsel prosecuted the case

16   knowing that if their efforts were ultimately unsuccessful, they would receive no compensation or

17   reimbursement for their costs. Class Counsel prosecuted the case with the type of vigor and skill

18   required to ensure justice for the Class. This risk assumption and substantial effort supports the

19   finding that Class Counsel's requested fee is fair and reasonable.

20   ## IX.    COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED

21    The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of a class

22   action settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Class Counsel is

23   entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily

24   bill a fee-paying client. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Class

25   Counsel incurred costs for the following: court fees, expert fees, travel costs, and printing and

26   mailing costs. See Dwoskin Decl. ¶ 53. Each of these costs was necessarily and reasonably

27   incurred to bring this case to a successful conclusion, and they reflect market rates for the various

28   categories of expenses incurred.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL         Case No.: 5:24-cv-00593-NW
OF RULE 23(B)(2) CLASS ACTION SETTLEMENT

To date, Class Counsel has incurred out-of-pocket costs and expenses totaling $4,752.21 in prosecuting this litigation on behalf of the Class. *Id*. These costs and expenses were necessary for the effective prosecution of this case and the achievement of the settlement benefits for the Class. *Id*. The costs incurred reflect the complex nature of this litigation and the formidable resources required to prosecute this action. Importantly, Class Counsel bore the entire financial risk of this litigation with no guarantee of reimbursement. *Id*. ¶ 51. The successful outcome achieved justifies these expenses and validates Class Counsel's strategic decisions throughout the Action. The Court should therefore find that these costs were reasonably and necessarily incurred by Class Counsel in the prosecution of this Action and should be reimbursed in full.

## X.    THE REQUESTED SERVICE AWARDS FOR PLAINTIFFS ARE REASONABLE

Plaintiffs seek a service award of $5,000 each in recognition of their effort on behalf of the Class and their damages release. Dwoskin Decl. ¶¶ 67-72. Half of this amount represents the Plaintiffs' full release of their liquidated damages of $2,500 under the VPPA, plus a modest $2,500 each for their commitment and willingness to prosecute this case on behalf of the Class and assist Class Counsel during the pendency of the litigation. Service awards are typical in class actions and are intended to compensate representatives for their work, risk, and willingness to act as private attorneys general. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs have been actively involved in the proceedings since the Action's filing. Dwoskin Decl. ¶¶ 67-72; Gooiker Decl., ¶¶ 7-9; Finley Decl., ¶¶ 7-9. Throughout the litigation, Plaintiffs worked closely with Class Counsel to ensure the efficient and effective prosecution of the Action. *Id*. They routinely communicated with Class Counsel concerning this Action; remained fully informed about case developments; reviewed various documents filed in this Action and other documents related to the case; responded to Defendant's discovery requests; and carefully reviewed the Settlement in order to understand and approve the terms of the Settlement and the

benefits to the Class. *Id*. These efforts were critical to the case's success and the ultimate benefit secured for the Class.

In this District, service awards of $5,000 are typically considered presumptively reasonable. *See Campbell*, 2017 WL 3581179, at *4, *8 (approving an incentive award of $5,000 in injunctive relief only class settlement); *see also In re Yahoo Email Litig*., 2016 WL 4474612, at *11 (approving an incentive award of $5,000 where the class settlement included declaratory and injunctive relief).

The requested amount is modest compared to awards in other cases. *See, e.g.*, *Van Vraken*, 901 F. Supp. at 299-300 (incentive award of $50,000); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (awarding $100,000 divided among four plaintiffs in overtime wages class action); *Harris*, 2012 WL 381202, at *8 (awarding $12,500 service award).

Given Plaintiffs' significant involvement and the critical role they played in achieving this favorable outcome for the Class, *and* their individual releases of their $2,500 VPPA damages claims, Plaintiffs respectfully request that the Court approve service awards of $5,000 each.

## XI.  **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement; (2) grant Plaintiffs' request for service awards of $5,000 each; (4) grant Class counsel's request for attorneys' fees and costs of $450,000; (5) grant such other relief as the Court deems just and proper, and (6) enter final judgment and order.

Dated this 27th day of May, 2025.          DWOSKIN WASDIN LLP

*/s/ Eric S. Dwoskin*
Eric S. Dwoskin (admitted *pro hac vice*)
433 Plaza Real, Ste. 275
Boca Raton, FL 33432
Phone: (561) 849-8060
edwoskin@dwowas.com

*Class Counsel*

Julie C. Erickson
Elizabeth A. Kramer
Kevin M. Osborne
ERICKSON KRAMER OSBORNE LLP
44 Tehama St.
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs*

1

## **E-FILING ATTESTATION**

    I, Julie C. Erickson, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                          */s/ Julie C. Erickson*
                                          Julie C. Erickson

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2025, the foregoing **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF RULE 23(b)(2) CLASS ACTION SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS** was filed and served using the CM/ECF system, which will serve as notification of such filings on all counsel of record.

/s/ Julie C. Erickson
Julie C. Erickson
ERICKSON KRAMER OSBORNE LLP
44 Tehama St.
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088
julie@eko.law

*Attorneys for Plaintiffs*