Eric S. Dwoskin, admitted *pro hac vice* (edwoskin@dwowas.com)
DWOSKIN WASDIN LLP
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Phone: 561-849-8060

*Class Counsel*

Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
ERICKSON KRAMER OSBORNE LLP
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

PATRICIA GOOIKER, WILLIAM FINLEY, individually and on behalf of others similarly situated,

Plaintiffs,

vs.

MINDVALLEY, INC.,

Defendant.

Case No.: 5:24-cv-00593-NW

**DECLARATION OF ERIC S. DWOSKIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF RULE 23(B)(2) CLASS ACTION SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS**

| | |
|---|---|
| Date: | August 20, 2025 |
| Time: | 9:00 a.m. |
| Courtroom: | 3 |
| Judge: | Hon. Noël Wise |

Pursuant to 28 U.S.C. § 1746, I, Eric S. Dwoskin, declare under penalty of perjury as follows:

1. I am an attorney and partner with Dwoskin Wasdin LLP, counsel for Plaintiffs. I have been admitted *pro hac vice* and appointed as Class Counsel in this action. I am co-counsel with the law firm of Erickson Kramer Osborne ("EKO") in this matter. The facts set forth herein are of my own personal knowledge.

2. I submit this declaration in support of Plaintiffs' Motion for Final Approval of Rule 23(b)(2) Class Action Settlement, Service Awards, and Attorneys' Fees and Costs. This motion has the full support of Class Representatives Patricia Gooiker and William Finley.

3. Unless otherwise defined, capitalized terms in this Declaration have the same meaning as set forth in the Parties' Settlement Agreement, executed March 11, 2025 and attached hereto as Exhibit 1.

## PRELIMINARY STATEMENT

4. Defendant Mindvalley, Inc. ("Mindvalley" or "Defendant") is essentially a wellness platform that offers online video courses on mental health and personal and professional development. Mindvalley integrated into its wellness platform online tracking technology offered by Meta Platforms, Inc. (f/k/a Facebook) ("Meta") called the Meta Pixel. The Meta Pixel captures Mindvalley subscribers' interactions with the platform, including the videos they requested or watched, and transferred the information to Meta in manner that identifiers the users as having requested or obtained Mindvalley's video services. Plaintiffs alleged this conduct violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). It continues to this day but will be cured by the Settlement.

5. The Settlement provides meaningful and important injunctive relief designed to stop the ongoing violations of the VPPA. The Settlement requires Mindvalley to (a) remove the Meta Pixel from the logged-in portion of Mindvalley's platform, www.home.mindvalley.com; and (b) disable the Meta Pixel on the logged-out portions of Mindvalley's platform, www.mindvalley.com, unless and until a user decides to enable the Meta Pixel and provides affirmative consent in a manner that complies with the strict requirements of the VPPA.

6. The Settlement was the result of hard-fought litigation, including fact and expert discovery, motion practice, two mediation sessions through the Court's ADR program, and extensive negotiations over a weeks-long period. Plaintiffs achieved a remarkable result that is certain and timely for all subscribers to Mindvalley subscribers, without the risk or delay of continued litigation against a defendant that for all practical purposes was not collectible and does not have the present ability to pay a classwide damages judgment.

7. The Settlement reflects the skill, expertise, and diligent work of Class Counsel. And Class Counsel devoted significant time, effort, and resources in prosecuting the action. Class Counsel secured a substantial benefit for the Class, in the face of considerable litigation risks against highly skilled opposing counsel.

8. On March 18, 2025, Plaintiffs filed their motion for preliminary approval of the settlement, detailing the risks of continued litigation and the benefits of the settlement given the ongoing violations of the VPPA that will be cured once the Settlement is finally approved. ECF 82. On April 10, 2025, the Court granted preliminary approval, finding the settlement was "fair, reasonable, and adequate," meriting a final approval hearing. ECF 88. The Court also determined that class notice was unnecessary, as the Settlement releases only the Class members' injunctive relief claims and the named Plaintiffs' individual monetary claims.

9. Plaintiffs now move for final approval of the Settlement, which is procedurally and substantively fair, reasonable, and adequate. Because the Settlement provides an excellent result for the Class, reached through arm's-length negotiations by dedicated and experienced Class Counsel, and eliminates the risk and expense of continued litigation and lengthy appeals, Plaintiffs respectfully request the Court grant the Settlement final approval and enter Judgment.

10. Class Counsel also respectfully request the Court award a partial reimbursement of attorneys' fees and costs in the total amount of $450,000 for their efforts. This amount comprises $445,247.79 in fees and $4,752.21 in costs. The requested fee of $445, 247.79 is presumptively reasonable and well within the range of attorneys' fee amounts typically awarded in the Ninth Circuit. Class Counsel has dedicated 537.3 hours totaling a lodestar amount of $510,435.00. And the declaration of co-counsel Julie C. Erickson reflects that the EKO firm dedicated an additional

203.4 hours totaling a lodestar amount of $193,230.00. Collectively, Class Counsel and EKO dedicated 740.7 hours to this case totaling a lodestar of 703,665.00. The requested fee represents approximately 63% of the fees incurred by Class Counsel and EKO, or a (negative) multiplier of .63.

11. This conservative request does not account for time written off in the exercise of reasonable billing judgment, certain time spent finalizing the final approval papers, or the professional time to be required of Class Counsel to attend the approval hearing, address any questions or concerns raised by the Court during the approval process, and coordinate with Defendant Mindvalley to ensure timely and accurate implementation of the injunctive relief.

12. The $4,752.21 in costs represents Class Counsel's reasonable litigation expenses, which were advanced without any guarantee of reimbursement. These costs were necessary for the effective prosecution of this action and the achievement of the settlement benefit to the Class.

13. Class Counsel further seeks a $5,000 service award to each of the Class Representatives, Patricia Gooiker and William Finley, which includes $2,500 in liquidated damages available under the VPPA, in exchange for the Class Representatives' full release of monetary claims as provided in the Settlement Agreement, and an incentive award of $2,500 in recognition of their active assistance in prosecuting the Action.

## BACKGROUND AND PROCEDURAL HISTORY

14. In early 2024, I began investigating privacy violations by video tape service providers, like Mindvalley, due to the Meta Pixel. This investigation uncovered Mindvalley's VPPA violations.

15. On February 6, 2024, this complaint was filed in the Northern District of California. ECF 1.

16. Plaintiffs later filed the operative First Amended Complaint ("FAC"), asserting one cause of action for violation of the VPPA. ECF 24.

17. The FAC seeks injunctive relief "to end Defendant's practice of knowingly disclosing Mindvalley consumers' highly sensitive video viewing histories" to Meta via online

tracking technology on mindvalley.com called the Meta Pixel, as well as statutory damages. ECF 24, ¶¶ 8-9.

18. On June 10, 2024, Defendant moved to dismiss the FAC (ECF 28) and requested judicial notice of certain documents (ECF 29). On July 18, 2024, Defendant also moved to bifurcate and stay class discovery. ECF 37. Plaintiffs opposed each of these motions. ECF 38, 44. The Court denied each of these motions in their entirety. ECF 76.

19. The parties negotiated a protective order (ECF 47) and ESI protocol (ECF 53).

20. Plaintiffs spent considerable time engaging in and litigating discovery. Plaintiffs served (a) three sets of document request, collectively totaling 185 requests for production, and (b) four sets of interrogatories, collectively totaling 24 detailed factual questions to Mindvalley. Plaintiffs successfully moved to compel Mindvalley to respond to certain of their discovery requests. ECF 61. Plaintiffs responded to discovery served by Mindvalley, including (a) 47 documents requests, (b) 23 interrogatories, and (c) 23 requests for admission. Plaintiffs served Mindvalley with a comprehensive deposition notice under Federal Rule of Civil Procedure 30(b)(6) covering 16 topics related to the claims and defenses at issue. And Plaintiffs subpoenaed, collected and reviewed discovery from third party Meta.

21. Plaintiffs also engaged in expert analysis of the claims at issue. Plaintiffs retained a consulting expert to forensically examine Defendant's platform, to assist Plaintiffs with discovery, and to review Meta's data production.

22. During the course of the litigation, Plaintiffs confirmed that Meta maintains data showing that Plaintiffs' video request and watch history was disclosed to Meta via the Meta Pixel from Mindvalley.

23. Mindvalley is a Delaware Corporation with its principal place of business in Palo Alto, California.

24. During the course of the litigation, Plaintiffs learned that, although Mindvalley is a Delaware corporation purportedly based in Palo Alto, California, Mindvalley's operators are based in Malaysia and its owners are all based in foreign countries, including Malaysia.

25. During the course of the litigation, Mindvalley's counsel represented that Mindvalley did not have the financial ability to pay any meaningful class-wide damages and could not fund a damages settlement in this case at the per-person amounts included in other public settlements in cases asserting claims under the VPPA.

26. During the course of the litigation, Mindvalley's counsel represented that Mindvalley also could not afford to pay even several hundred thousand dollars in Plaintiffs' counsel's fees in a single lump sum, and would instead need to pay any court-approved attorneys' fees over a multi-month period.

27. Discovery in the case shows that there are tens of thousands of Mindvalley accountholders from 2022 to the present who watched video content with their Mindvalley account.

28. Mindvalley has represented Mindvalley does not believe that it has data showing (a) what videos that were requested or watched and were transmitted to Meta via the Meta Pixel or (b) whether, if such a transmission occurred, such data was accompanied with data that identifies the subscriber. Thus, such information, if it exists, would be in the possession of Meta. During the meet-and-confer process over the scope of production in response to Plaintiffs' subpoena to Meta, Meta indicated it will refuse to produce class-wide data prior to certification, and, even then, that it would only agree to produce an extremely limited sample of data for three days and only up to 300,000 rows of data per day. Plaintiffs and Meta were negotiating the scope of the subpoena at the time a settlement agreement was reached.

29. Plaintiffs and Mindvalley negotiated the proposed settlement over an approximately forty-five day period between December 2024 and February 2025, during which time the parties participated in two separate mediation sessions with the Honorable Judge Ellen James as part of the Court's ADR program. On January 22, 2025, the parties participated in a four-hour mediation before Judge James, but were unable to settle the matter that day. The parties continued negotiating the potential resolution outside of mediation, and reconvened for a focused four-hour mediation session with Judge James on January 31, 2025, at which the parties reached

agreement on the essential contours of the resolution and after which the parties successfully reached a final agreement and formalized the settlement terms.

30. The named Plaintiffs approved the terms of the proposed settlement, prior to being informed that their counsel would be seeking the proposed $5,000 Service Awards described above. This was done to avoid even the appearance of collusion. Similarly, the Settlement Agreement authorizes Plaintiffs to seek reimbursement of fees and expenses (up to the cap in Paragraph 6.2 of the Settlement Agreement) but Defendant retains the right to respond or even oppose the motion. This lack of "clear sailing" was also incorporated into the settlement process to avoid even the appearance of any collusion.

31. Mindvalley's use of the Meta Pixel on its website continues to this day but will be remedied by the settlement agreement here.

32. On March 18, 2025, Plaintiffs filed their motion for preliminary approval of the settlement, detailing the risks of continued litigation and the benefits of the settlement given the ongoing violations of the VPPA that will be cured once the Settlement is finally approved. ECF 82. On March 26, 2025, Mindvalley certified compliance with CAFA. ECF 84. To date, Class Counsel has not received any objections to the Settlement from the Attorneys General served or any other absent class member. On April 1, 2025, Mindvalley filed a statement of non-opposition to preliminary approval. ECF 85. On April 10, 2025, the Court granted preliminary approval, finding the settlement was "fair, reasonable, and adequate," meriting a final approval hearing. ECF 88. The Court also determined that class notice was unnecessary, as the Settlement releases only the Class members' injunctive relief claims and the named Plaintiffs' individual monetary claims. *Id*.

33. Plaintiffs now move for final approval of the Settlement, Service Awards, and attorneys' fees and costs.

## THE SETTLEMENT

34. **The Class Definition**. all persons in the United States who: (1) currently have or previously had a Mindvalley account at any point in time prior to the Effective Date; and (2) requested or viewed videos on either of the Mindvalley Websites at any point in time prior to the Effective Date.

35. **Website Design and Functionality Changes**.

> For a period of two years following the Effective Date, Mindvalley agrees to disable the operation of the Meta Pixel on or for any and all webpages on the home.mindvalley.com domain that host video content or offer video content for purchase by users in the United States.
>
> For a period of two years following the Effective Date, Mindvalley agrees that, for any and all individual users in the United States, Mindvalley will not use the Meta Pixel on any webpage on the www.mindvalley.com domain unless and until the individual user provides affirmative consent by clicking "Accept All Cookies," or by clicking "Manage Settings" and thereafter selecting the option to enable tracking cookies, on a pop-up banner meeting substantially . . . the [] criteria [set forth in the Settlement].

Ex. 1 § 2.1.

36. **The Release**. The release provided by the class is narrow. The Settlement resolves and releases claims for injunctive relief only that arose prior to the Effective Date of the Settlement Agreement related to the operation of the Meta Pixel on Mindvalley's Websites. Ex. 1 § 5.2. The release does ***not*** prevent the Class from pursuing: (a) claims for damages or monetary relief, including any such claims related to the operation of the Meta Pixel on any and all webpages on Mindvalley's Websites; or (b) injunctive relief claims arising after the Effective Date of the agreement, including any such claims arising out of tracking technologies on Mindvalley's Websites after the Effective Date. *See id*.

37. In addition to the Class release, a separate, individual release exists between Plaintiffs and Defendant in the Settlement. Under this provision, Plaintiffs release Defendant and

its related parties from all claims, including damages claims, that directly relate to or arise from the Litigation. *Id*. § 5.1. This individual release by Plaintiffs does not extend to the Class. *Id*.

**EXPERIENCE OF CLASS COUNSEL AND CO-COUNSEL**

38. Class Counsel's Firm Resume and CV is attached as Exhibit 2.

**CLASS COUNSEL'S AND CO-COUNSEL'S LODESTAR AND EXPENSES**

39. Pursuant to the terms of the Settlement, Class Counsel may apply to the Court for a Fees and Costs Award not to exceed $450,000.

40. I have reviewed all of the firm's time entries related to the prosecution of this matter. The time and descriptions displayed in these records were regularly and contemporaneously recorded by the listed timekeepers and have been maintained in the ordinary course of business. I have reviewed these records and believe that they fairly reflect the amount of time spent by each of the timekeepers that worked on this case. In fact, it is my belief that each of us spent more time on the case than is reflected in the time sheets because we often collectively strategized about the case, in person or on calls, without subsequently memorializing that time in our timekeeping system.

41. In reviewing my firm's time records, I used reasonable billing judgment to ensure that duplicative or unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included.

42. Our firm has dedicated itself to the Action, and, after reducing our hours in the exercise of billing judgment as described above, worked a combined total of 537.3 attorney hours litigating this case, representing a total lodestar of $510,435.00. Our firm dedicated this time without any assurance of success in this matter and thus without any assurance of compensation. Our firm has also incurred $4,752.21 in out-of-pocket litigation costs and expenses, without any assurance of reimbursements. In undertaking this responsibility, Class Counsel was obligated to ensure that sufficient attorney and professional resources were dedicated to the prosecution of the Action and that funds were available to pay for the costs entailed. A break-down of the fees and costs incurred by my firm follows. Copies of detailed timesheets and expenses will be made available for *in camera* review if requested by the Court.

43. The following chart lists each of my firm's main timekeepers who billed to this matter, disaggregated by number of hours billed, billing rate, and total fees.

| Name | Status | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Eric S. Dwoskin | Co-Managing Partner | $950.00 | 459.6 | $436,620.00 |
| Nicholas F. Wasdin | Co-Managing Partner | $950.00 | 77.7 | $73,815.00 |
| **TOTAL:** | | | 537.3 | $510,435.00 |

44. The hours spent working on this case break down by attorney and category as follows:

| Category | Eric S. Dwoskin | Nicholas F. Wasdin | Total |
|---|---|---|---|
| Investigation and pleadings, including amended pleadings | 51.5 | 6 | 57.5 |
| Motion practice and other court filings | 129.1 | 9.9 | 139 |
| Hearings, including preparation for hearings | 22.8 | 4.4 | 27.2 |
| Case management | 7.6 | 4 | 11.6 |
| Discovery | 117.6 | 21.2 | 138.8 |
| Research | 29.5 | 0 | 29.5 |
| Settlement negotiation outside of mediation, including drafting and revise term sheet and settlement agreement | 44.2 | 10.3 | 54.5 |
| Mediation, including mediation briefs and preparing for and attending mediation sessions | 31.5 | 14.2 | 45.7 |
| Preliminary approval | 9.4 | 7.7 | 17.1 |
| Final approval | 16.4 | 0 | 16.4 |

45. Class Counsel will also continue to incur fees throughout the remaining approval process. For example, Class Counsel will move the case through the final approval process and monitor the implementation of the injunctive relief.

46. Of all hours worked on this case by attorneys at my firm, there was little to no duplication of effort, as we divided up the work as noted into discrete tasks. I believe this division of effort contributed to efficiently prosecuting the case and obtaining the settlement reached between the parties.

47. The hourly rates for the attorneys in my firm, as listed herein, represent our current billing rates in class action contingency fee matters, and are in line with rates for attorneys of comparable skill, experience, and qualifications that have been approved by federal courts within the Ninth Circuit, including this District, and other actions in California state courts.[1]

48. Based on my knowledge and experience, the hourly rates charged by Class Counsel are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise. I have personal knowledge of the range of hourly rates typically charged by counsel in our field in South Florida and Chicago, Illinois, and throughout the United States, both on a current basis and in the past. In determining my firm's hourly rates from year to year, we have consciously taken market rates into account and have aligned our rates with the market.

49. Through my practice, we have become familiar with the market rates charged by attorneys in California, Florida, and Illinois and the United States generally. This familiarity has been obtained in several ways: (1) by discussing fees with other attorneys; and (2) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorneys' fees in legal newspapers and treatises. The information we have gathered shows that Class Counsel's rates are in line with the market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable class action work. In fact, comparable hourly rates have been found reasonable by various courts in this district for reasonably comparable services, including:

---

[1] In accordance with standard industry practices, Dwoskin Wasdin adjusts the billing rates of its attorneys annually to reflect market trends.

a. *Harbour v. Cal. Health & Wellness Plan*, No. 5:21-cv-03322-EJD, 2024 WL 171192, at *8 (N.D. Cal. Jan. 16, 2024): consumer class action in which the court in 2024 found reasonable billing rates ranging from $660-$1,200 for partners, $425-$725 for associates, and $150-$335 for litigation support.

b. *Rollins v. Dignity Health*, No. 13-CV-01450-JST, 2022 WL 20184568, at *6 (N.D. Cal. July 15, 2022): consumer class action in which the court in 2022 found reasonable hourly billing rates ranging from $625 to $1,060 for partners, and from $215 to $625 for associates, litigation assistants, and document analysists.

c. *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022): consumer class action in which the court in 2022 found hourly rates reasonable within the ranges of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates.

d. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018): consumer class action in which the court in 2018 found hourly billing rates ranging from $650 to $1,250 for partners and senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals to be reasonable.

e. I*n re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017): consumer class action in which the court in 2017 found reasonable hourly billing rates for plaintiffs' counsel within the range of $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals.

f. *Cottle v. Plaid Inc.*, Case No. 4:20-cv-03056-DMR, 2022 WL 2829882, at *11 (N.D. Cal. July 20, 2022) (finding partner hourly rates of $850 to $1,025 to be reasonable);

50. The reasonableness of my firm's hourly rates is also supported by several surveys of legal rates, including the following:

a. On June 9, 2022, Bloomberg Law published an article examining the rapid rise in billing rates for law firms in recent years, finding that rates rose by roughly 40% from 2007 to 2020. This increase includes a surge of more than 6% in 2020, followed

by another 5.6% through November of 2021 among the nation's largest firms. The article noted that several top law firms are currently billing at hourly rates in excess of $2,000, with individual attorneys billing at rates as high as $2,465 per hour. A true and correct copy of this article is attached hereto as Exhibit 3.

b. Bloomberg Law article dated June 13, 2024, reported that the nation's largest law firms by revenue increased their rates by 9.2%. The article also highlighted that some associates at top firms are billing as much as $850 per hour, while partners with eight years of experience are charging up to $1,695 per hour. A true and correct copy of this article is attached hereto as Exhibit 4.

c. An article published in the Wall Street Journal on October 4, 2024, reported that "lawyers at the nation's largest firms billed between $500 to more than $1,300 per hour for litigation in 2023, according to the National Association of Legal Fee Analysis." And in more expensive markets, "firms have partner rates that exceed $2,000 an hour, and can be as high as $1,000 for associates." The article also notes that the most sought-after attorneys can command hourly rates of $2,500 or more. A true and correct copy of this article is attached hereto as Exhibit 5.

d. Similarly, an April 3, 2023 article in the ABA Journal shows that second-, third-, and fourth-year associates are charging hourly rates between $960 and $1,035 per hour. A true and correct copy of this article is attached hereto as Exhibit 6.

e. The hourly rates in contingency fee class action matters for all billing attorneys from my firm are comparable to the rates reflected in the current Laffey Index. *See* Laffey Matrix, http://www.laffeymatrix.com/see.html (listing hourly rate of $948 for attorneys with similar years of experience as the Dwoskin Wasdin partners listed above). A true and correct copy of the Laffey Index is attached hereto as Exhibit 7. The methodology of calculation and benchmarking for the Laffey Matrix has been approved in a number of cases. *See, e.g.*, *McDowell v. Gov't of D.C.*, No. CIV A. 02-1119RWRJMF, 2006 WL 1933809, at *2 (D.D.C. July 11, 2006); *Salazar v. Dist. of Col.*, 123 F. Supp. 2d 8 (D.D.C. 2000).

51. My firm undertook this representation on a wholly contingent basis recognizing that the risk of non-payment has been high throughout this litigation. There were uncertainties in the viability of this case as a class action, as well as uncertainties in the ultimate merits.

52. Our firm also maintains an itemized listing of the primary out-of-pocket expenses incurred in this case disaggregated by date, description, and amount. Our firm's total litigation costs and expenses of $4,752.21 were reasonably incurred in this case.

53. These expenses are reflected in the records of Class Counsel and were necessary to prosecute this litigation. All expenses were carefully and reasonably expended, and they reflect market rates for various categories of expenses incurred. Most of these expenses were incurred for consulting expert opinions obtained in connection with investigating the case and assisting counsel with analyzing the party and third-party discovery. Expense items were recorded separately, and such charges were not duplicated in my firm's billing rates. Below is a summary chart of the litigation expenses by category:

| **Category of Litigation Expenses** | **Total** |
|---|---|
| *Pro hac vice* fees | $328.00 |
| Expert Fees | $3,375.00 |
| Travel | $972.04 |
| Printing | $46.72 |
| Mailing | $30.45 |
| **TOTAL** | **$4,752.21** |

54. Class Counsel's request for costs should be granted because all of the costs and expenses were reasonably incurred and necessary given the complex nature and scope of this case.

55. As described in the declaration of co-counsel Julie C. Erickson, EKO has also dedicated itself to the Action, incurring to date a lodestar based on current billing rates of $193,230.00 in billable professional time, receiving no compensation for their time and effort to date. In undertaking this responsibility, co-counsel was obligated to ensure that sufficient attorney and professional resources were dedicated to the prosecution of the Action.

56. The total collective lodestar incurred by Class Counsel and EKO to date is $703,665.00. The total out-of-pocket litigation costs and expenses incurred to date by Class Counsel and co-counsel are $4,752.21.

57. Class Counsel is seeking a total of $450,000 in attorneys' fees and costs. This amount comprises $445,247.79 in fees and $4,752.21 in costs.

58. The fee amount sought represents 63% of Class Counsel's and co-counsel's total lodestar (or negative multiplier of .63), which is well within the range approved by courts in in other cases obtaining similar relief. *E.g.*, *Uphold our Heritage v. Town of Woodside*, 2008 WL 4868816, at *6 (Cal. Ct. App. Nov. 12, 2008) (discussing and affirming a multiplier in a non-monetary settlement and staring "multipliers can range from 2 to 4 or even higher"); *City of Plantation Police Officers' Employees' Retirement System v. Jeffries*, 2014 WL 7404000, at *19 (S.D. Ohio Dec. 30, 2014) (3X multiplier in injunctive relief resolution); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (2.15 multiplier resulting in an award of $3.3 million); *Kurowski, et al. v. Rush System for Health d/b/a Rush University System for Health*, Case No. 1:22-cv-5380, (N.D. Ill.) ECF 161 (1.17 multiplier resulting in an award of 2.8 million). And courts in this District have found that a negative lodestar multiplier, such as the one sought here, supports an inference that the fee request is reasonable. *See In re Yahoo Email Litig.*, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (finding that the lodestar multiplier of .97 "is within the range of reasonableness" and granting a request for $4 million in attorney's fees); *Guttman v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *6 (N.D. Cal. Aug. 1, 2016) (finding that a fee request was "especially" reasonable because counsel voluntarily applied a multiplier of .59). Moreover, the fees, costs and expenses requested are reasonable in light of the risks assumed by Class Counsel by taking on an important but difficult case with no assurance of compensation for their work, and by achieving an outstanding result.

59. Class Counsel's decision to settle for injunctive relief under Rule 23(b)(2), rather than pursuing class-wide damages, was strategic. While Plaintiffs were confident in proving the VPPA violations at issue, Plaintiffs' counsel assessed that there was significant risk in the class's ability to collect a judgment against a Malysia-based Defendant that had no present ability to pay

even a small fraction of the class-wide statutory damages. Pursuing damages would have required protracted litigation with significant costs relative to the limited potential relief, making injunctive relief a more reasonable and effective remedy for the Class, particularly, where, as here, the alleged VPPA violations were ongoing and the video content at issue relates to the sensitive and private topics of individual wellness and professional development.

60. The costs of additional expert testimony, depositions, and motion practice would be considerable compared to the potential recovery. Plaintiffs have already invested significant time in this litigation, and invested in expert analysis, and continuing litigation would demand even more resources, potentially outweighing the benefits of pursuing these claims further.

61. Continued litigation would be complex, uncertain, and costly when weighed against the low potential to collect any class-wide damages judgment. Even if Plaintiffs succeeded in certifying a Rule 23(b)(3) class, this would not guarantee damages relief. Achieving such relief would require overcoming additional obstacles, including possible motions for reconsideration, summary judgment, and decertification—tactics commonly employed by defendants post-certification. These challenges would put the Class's ability to recover any damages at substantial risk. And if Plaintiffs won a judgment, Plaintiffs' counsel's assessment is that it would be extremely challenging to collect on such a judgment given the location of Mindvalley's owners and operators are based in foreign countries, including in Malaysia, and its present financial position. Indeed, in light of Mindvalley's current financial position, Plaintiffs' counsel agreed to an 8-month payment plan in the event the Court approves a payment of attorneys' fees.

62. Although we believed the case to be meritorious, a realistic assessment shows that the risks inherent in the resolution of the liability issues, protracted litigation in this Action as well as the probable appeals process, were great. Indeed, as a result of taking on Plaintiffs' case, my firm turned down other potentially profitable matters, including hourly work, and devoted resources to this case that could have been devoted to other potentially income-generating matters.

63. Had we not resolved this matter through settlement, we would have vigorously prosecuted the case through class certification, summary judgment, trial, and appealed any determinations that may have been adverse to the Class's interests. We were therefore at great risk

for non-payment. In addition, as described above, we have advanced significant expenses that would have continued to grow and would not have been reimbursed absent a successful result.

64. Due to the commitment of time and capital required to litigate this Action, my firm had to forego significant other work from 2024 through the present.

**CLASS COUNSEL CONFERRED SIGNIFICANT BENEFITS TO THE CLASS**

65. The Settlement secured by Class Counsel delivers substantial benefits to the Class and accomplishes the primary purpose of the video privacy law at issue. By obtaining an agreement from Mindvalley to change its website design and functionality, the injunctive relief directly addresses the alleged violations of the VPPA on Mindvalley's platform and protects consumer privacy and safeguards informed consent for all subscribers to Mindvalley's platform.

**THE STRENGTH OF PLAINTIFFS' CASE AND THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION**

66. Class Counsel achieved this benefit for the Class despite significant litigation risks and opposition from skilled counsel. Defendant was prepared to vigorously contest any motion for class certification by arguing, for instance, that a class-action waiver barred certification, Plaintiffs consented to the disclosures at issue via the privacy disclosures on Mindvalley's website, individual questions predominate, a class action is not superior, and a class trial would be unmanageable. Even if a damages class were certified, Defendant might have moved for decertification, requiring extensive briefing and increasing risk, expense, and delay for all parties. The Settlement avoids these risks while securing injunctive relief that directly targets the core issues raised in the FAC.

**PLAINTIFFS' IMPORTANT ROLE IN THE ACTION**

67. Plaintiffs request approval of $5,000 service awards for each of the Class Representatives, which includes: (a) $2,500 in damages in exchange for the release of the Class Representatives' individual damages claims; and (b) and incentive awards of $2,500 for their service as Class Representatives. In light of their efforts, this request is exceedingly reasonable.

68. Plaintiffs' involvement was critical to the prosecution of the case. Plaintiffs took time away from work and personal activities to initiate and litigate the Action. And they were

prepared to litigate this case to a verdict if necessary. Plaintiffs' dedication and efforts have conferred a significant benefit on tens of thousands of subscribers in the United States.

69. Plaintiffs also faced significant reputational risk in pursuing this matter. Indeed, in commencing suit against Defendant, Plaintiffs took the risk associated with attaching their name to a matter very much in the public eye. This required a great deal of courage, given that Mindvalley provides wellness content, and the issues of this matter dealt with sensitive privacy claims. In light of the personal nature of the subject matter at the heart of this lawsuit and the reputational perils, a reasonable incentive award is further warranted by the prominent risk of embarrassment facing Plaintiffs.

70. Plaintiffs have been involved in the Action as the named Plaintiffs since the FAC was filed. Plaintiffs have remained heavily and personally involved in the litigation. Plaintiffs' efforts were instrumental in reaching the settlement. Plaintiffs have devoted meaningful time to this case, including assisting Class Counsel in investigating Defendant and discussing with Class Counsel the basis and nature of the claims averred before initiating the Action; routinely communicating with Class Counsel concerning the Action; remaining fully informed about case developments; routinely reviewing the various pleadings and motions filed in the Action; reviewing other documents related to the case; responding to Defendant's voluminous discovery requests; and carefully reviewing the settlement documents in order to understand and approve the terms of the settlement and the benefits to the class.

71. The VPPA provides the Court may award $2,500 in statutory damages. 18 U.S.C.A. § 2710(c)(2)(A).

72. Based on their significant involvement and time spent in this case, Plaintiffs' contributions and efforts and the damages available under the VPPA for which Plaintiffs have released their damages claims (unlike the Class), Plaintiffs apply to the Court for a Service Award of $5,000 for each Class Representative. The requested service award is appropriate and should be approved for Plaintiffs.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on May 27, 2025 in Boca Raton, Florida.

/s/ *Eric S. Dwoskin*
Eric S. Dwoskin

**E-FILING ATTESTATION**

I, Julie C. Erickson, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Julie C. Erickson*
Julie C. Erickson

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May 2025, the foregoing **DECLARATION OF ERIC S. DWOSKIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF RULE 23(b)(2) CLASS ACTION SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS** was filed and served using the CM/ECF system, which will serve as notification of such filings on all counsel of record.

*/s/ Julie C. Erickson*

Julie C. Erickson
ERICKSON KRAMER OSBORNE LLP
44 Tehama St.
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088
julie@eko.law

*Attorneys for Plaintiffs*